Consolidated Appeal Nos. 24-6006 and 24-6033

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Avon Capital, LLC, a Wyoming limited liability company
Intervenor/Appellant

v.

Universitas Education LLC,
Petitioner/Judgment Creditor/Appellee

On appeal from the United States District Court for
the Western District of Oklahoma
Civil Case No. 5:14-fj-00005-HE
Judge Joe L. Heaton, United States District Judge

APPELLANT AVON CAPITAL, LLC, A WYOMING LIMITED
LIABILITY COMPANY'S CONSOLIDATED OPENING BRIEF

Alan L. Rupe
Francis M. Schneider
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone: (316) 609-7900
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com
ATTORNEYS FOR APPELLANT AVON

ORAL ARGUMENT REQUESTED

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**SDM Holdings, LLC, an Oklahoma limited liability company**
**Respondent/Garnishee/Appellant, and**
**Avon Capital, LLC, a Wyoming limited liability company**
**Intervenor/Appellant**

**v.**

**Universitas Education LLC,**
**Petitioner/Judgment Creditor/Appellee**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Tenth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made for the judges of this Court to evaluate possible disqualification or recusal.

Gerald P. Green
Pierce Couch Henrickson
Baysinger & Green, LLP
P.O. Box 26350
Oklahoma City, Oklahoma 73126
jgreen@piercecouch.com

*Counsel for Appellant Avon Capital, LLC,*
*a Wyoming limited liability company*

Lysbeth George, Esq.
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson, Suite 100
Oklahoma City, Oklahoma 73102
lysbeth.george@crowedunlevy.com

*Former counsel for Appellee Universitas Education, LLC*

Paula Colbath, Esq.
Loeb & Loeb, LLP
345 Park Avenue
New York, NY 10154
pcolbath@loeb.com

*Former counsel for Appellee Universitas Education, LLC*

Law Offices of Joseph L. Manson III
600 Cameron Street
Alexandria, VA 22314
jmanson@jmansonlaw.com

*Counsel for Appellee Universitas Education, LLC*

Joseph H. Bocock
Bocock Law PLLC
119 N. Robinson, Suite 320
Oklahoma City, OK 73102
Email: joe@bococklaw.com

*Former counsel for SDM Holdings, LLC*

Jeffrey R. Sandberg
PALMER LEHMNAN SANDBERG, PLLC
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
jsandberg@pamlaw.com

and

John D. Stiner
STINER LAW FIRM, PLLC
119 N. Robinson, Suite 320
Oklahoma City, OK 73102
Email: john@stinerlaw.com

*Counsel for Appellant SDM Holdings, LLC, an Oklahoma limited liability company*

Asset Servicing Group LLC
c/o Clayton D Ketter, Esq.
Phillips Murrah PC-101-OKC
101 N Robinson Ave., 13th Fl
Oklahoma City, OK 73102
Email: cdketter@phillipsmurrah.com

and

Melvin R McVay, Jr
Phillips Murrah PC-101-OKC
101 N Robinson Ave
13th Fl
Oklahoma City, OK 73102
Email: mrmcvay@phillipsmurrah.com

*Counsel for Asset Servicing Group, LLC*

/s/ Alan L. Rupe
Alan L. Rupe

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................i

TABLE OF CONTENTS ..............................................................iv

TABLE OF AUTHORITIES ...................................................ix

RELATED APPEALS ................................................................1

CITATION TO THE RECORD .....................................................1

GLOSSARY ..................................................................2

STATEMENT OF ISSUES ..............................................................3

JURISDICTIONAL STATEMENT ....................................................5

STATEMENT OF THE CASE .........................................................12

SUMMARY OF THE ARGUMENT .........................................................15

ARGUMENT AND AUTHORITIES .........................................................18

ISSUE ONE: WHETHER THE DISTRICT COURT FAILED TO FOLLOW THE LAW OF THE CASE AND HOLDING OF THIS COURT THAT THE CASE WAS MOOT AND THERE WAS NO LONGER A LIVE CASE OR CONTROVERSY...................................................18

    A.    Standard of Review ....................................................18
    B.    This Court's Order is Binding on the District Court Under Law of the Case. ....................................................18

ISSUE TWO: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN IT LACKED SUBJECT MATTER JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT .................................................. 22

    A.    Standard of Review ....................................................22

B.    The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because It Lacked Subject Matter Jurisdiction Once the Case and Claims Became Moot ...................................................22

**ISSUE THREE**: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN IT LACKED PERSONAL JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT ...................................................................................25

A.    Standard of Review ...................................................................25
B.    The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because It Lacked Personal Jurisdiction Once the Case and Claims Became Moot ..............................................................25

**ISSUE FOUR**: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN OKLAHOMA LAW DOES NOT AUTHORIZE REFILING OF A FOREIGN JUDGMENT IN AN EXPIRED CASE. ...........................................................................27

A.    Standard of Review ...................................................................27
B.    The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because Oklahoma Law Does Not Authorize The Refiling of a Foreign Judgment in an Expired Case .......................28

**ISSUE FIVE**: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY, BECAUSE EVEN IF ASSUMED *ARGUENDO* THAT THE JUDGMENT COULD BE ENFORCED AGAINST APPELLANT, OKLAHOMA LAW SOLELY AUTHORIZES THE ENTRY OF A CHARGING ORDER ...........................................................................34

A.    Standard of Review ...................................................................34
B.    Oklahoma Law Expressly Authorizes Solely the Entry of a Charging Order ........................................................................34

**ISSUE SIX**: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, AND IF IT IS ASSUMED ARGUENDO THAT OKLAHOMA LAW DOES NOT SOLELY AUTHORIZE THE ENTRY OF A CHARGING ORDER, THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING PETITIONER'S MOTION TO REAPPOINT RECEIVER OVER AVON CAPITAL-WY .................... 37

A.    Standard of Review .................................................................37
B.    Universitas Cannot Meet Its Burden Required To Establish a Statutory Basis under 12 O.S. § 1551, which Is Necessary to Appoint A Receiver Under Oklahoma Law..................................40
    1.    12 O.S. § 1551 (1) – Avon Capital-WY does not have property in danger of being lost, removed, or materially injured.........40
    2.    12 O.S. § 1551 (2) – there is no mortgage foreclosure in this case. .......................................................................................42
    3.    12 O.S. § 1551 (3) & (4) – there is no judgment to enforce .42
    4.    12 O.S. § 1551 (5) – Avon Capital-WY is not a Corporation. ...........................................................................................43
    5.    12 O.S. § 1551 (6) ........................................................44
C.    Furthermore, Even Assuming Universitas Met Its Burden, Factors Weigh Against Appointment of a Receiver ..................................46
    1.    Universitas' probability of success is uncertain.....................46
    2.    Universitas cannot establish that fraudulent conduct is likely to occur with Avon Capital-WY's membership interest in SDM Holdings. ..............................................................................47
    3.    Avon Capital-WY's Financial Position.................................48
    4.    Universitas cannot establish any Avon Capital-WY asset is in imminent danger of being lost, concealed, injured, diminished in value, or squandered.........................................................49
    5.    The appointment of a receiver is not an adequate remedy.....50
    6.    The appointment of a receiver is a drastic remedy ................52
    7.    Universitas cannot demonstrate that the appointment of a receiver would do more good than harm. ..............................52

CONCLUSION AND RELIEF SOUGHT      ...............................................53

STATEMENT REGARDING ORAL ARGUMENT    ....................................56

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)................................................................57

ATTACHMENTS:

| No. | Docket # | Date | Description |
|-----|----------|------|-------------|
| 1 | 1-1 | Aug. 12, 2014 | Registered Judgment (New York Judgment) |
| 2 | 218 | Oct. 20, 2020 | Magistrate Judge Report and Recommendation |
| 3 | 228 | Feb. 11, 2021 | District Court's order adopting Report and Recommendations (Doc. 218); and enjoining of Appellant Avon Capital-WY |
| 4 | 230 | Feb. 26, 2021 | District Court's order for Response to Writ of General Execution and Garnishment Summons |
| 5 | 240 | April 8, 2021 | District Court's order denying SDM Holdings, LLC's Motion to Alter Judgment (Doc. 231) and to Amend the Judgment |
| 6 | 310 | Sep. 22, 2021 | District Court's order on Petitioner's Motion for Application of Property, Petitioner's Motion for Appointment of Receiver, and Respondent Avon's Motion to Stay |
| 7 | 311 | Sep. 22, 2021 | District Court's order appointing Ryan Leonard, Esq. as Receiver of Avon Capital-WY |
| 8 | 499 | July 13, 2023 | Tenth Circuit Court of Appeal's order and judgement as to Notice of Appeal filed by SDM Holdings LLC, 241. Vacated and Remanded. Terminated on the merits after oral hearing |

| | | | |
|---|---|---|---|
| 9 | 500 | July 13, 2023 | District Court's order to address reaffirming order entered on February 11, 2021 (adopting Report and Recommendations (Doc. 218); and enjoining of Appellant Avon Capital-WY) |
| 10 | 509 | August 4, 2023 | Tenth Circuit Court of Appeal's order as to Notices of Appeal filed by SDM Holdings LLC (Docs. 316 and 241) and Notice of Appeals filed by Avon Capital-WY (Docs. 245 and 315); Order filed by Judges Eid, Baldock and Carson |
| 11 | 510 | August 4, 2023 | Tenth Circuit Court of Appeal's order and Judgement as to Notices of Appeal filed by SDM Holdings LLC (Docs. 316 and 241) and Notices of Appeals filed by Avon Capital-WY (Docs. 245 and 315). Vacated and Remanded. Terminated on the merits after oral hearing |
| 12 | 512 | August 7, 2023 | District Court's order reaffirming and reentering Doc. 500 (entered on July 13, 2023) |
| 13 | 521 | August 15, 2023 | District Court's order from pretrial conference held on August 15, 2023; finding that it regained jurisdiction |
| 14 | 564 | January 4, 2024 | District Court's order granting Universitas' Motion to Reappoint Receiver over Appellant Avon Capital-WY |
| 15 | 565 | January 4, 2024 | District Court's order re-appointing Ryan Leonard, Esq. as Receiver of Avon Capital-WY |
| 16 | 594 | February 22, 2024 | District Court's order clarifying authority of Receiver Ryan Leonard, Esq. |

# TABLE OF AUTHORITIES

## STATUTES

12 O.S. 2001 § 721 (2004)........................................................................30

12 O.S. § 735 (1985)......................................................................28, 30, 32

12 O.S. § 1551 (1989).............................................. 17, 38-40, 42-46

18 O.S. § 2032 (2017)...............................................................34, 49

18 O.S. § 2033 (2017)...............................................................34, 36

18 O.S. § 2034 (2017) ............................................................ 17, 34-37

## FEDERAL RULES

Fed. R. App. P. 4(a)(1)(A) .............................................................5

Fed. R. App. P. 4(a)(4)(A) .............................................................5

Fed. R. Civ. P. 12(b)(1).................................................................22

Fed. R. Civ. P. 12(b)(2).............................................................25, 26

Fed. R. Civ. P. 69(a) .............................................................27, 32, 38

Tenth Circuit Rule 32.....................................................................57

## CASES

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)...........................20, 24, 26

*American Bank & Trust Co. v. Bond International Ltd.*, 2006 U.S. Dist. LEXIS 58361, 2006 WL 2385309 (N.D. Okla. Aug. 17, 2006) ........................46

*Arizona v. California*, 460 U.S. 605 (1983).........................................18

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314 (8th Cir. 1993) ..46

*Blackburn v. United States*, No. 20-8005, 2021 U.S. App. LEXIS 21268, at *1 (10th Cir. July 19, 2021) ..........................................................22

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017) ..............................................................................18, 19

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ......................19

*Dobbs v. Anthem*, 600 F.3d 1275 (10th Cir. 2010)................................18

*Duncan v. Oklahoma Dept. of Corr.*, 95 P.3d 1076 (Okla. Civ. App. 2005) .................................................................................................22, 34

*EarthGrains Baking Cos. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2018 U.S. Dist. LEXIS 188349 (D. Utah Nov. 2, 2018) ........................................45

*Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010) .................................................................................................25

*Fehr v. Black Petro. Corp.*, 229 P. 1048 (Okla. 1924) ...........................................44

*First Capital Bank v. CSR-Nationwide Inc.*, LEXIS 3307 (Okla. Dist. 2011) .......43

*Fleet Business Credit, LLC v. Wings Restaurants, Inc.*, 291 B.R. 50 (N.D. Okla. 2003). .................................................................................................46

*Fulsom v. Fulsom*, 81 P.3d 652 (Okla. 2003) .....................................................27, 34

*Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013) .......................22, 23, 26

*Guar. Laundry Co. v. Pulliam*, 191 P.2d 975 (Okla. 1948) ...................................37

*Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700 (10th Cir. 1993) (citations omitted), cert. denied, 1995 U.S. LEXIS 2629 (U.S. Apr. 17, 1995)......................19

*Haynes Trane Serv. Agency v. Am. Std., Inc.*, 573 F.3d 947 (10th Cir. 2009) ........18

*Huffman v. Saul Holdings Ltd.*, 262 F.3d 1128 (10th Cir. 2001) ...........................19

*Khan v. Bank of N.Y. Mellon*, 525 F. App'x 778 (10th Cir. 2013).........................22

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) .........................................23

*McKean v. McClure*, No. CIV-16-320-SPS, 2017 U.S. Dist. LEXIS 68904 (E.D. Okla. May 5, 2017) ...........................................................................................37, 46

*Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018) ..............................27, 34

*N.M. Health Connections v. United States HHS*, 946 F.3d 1138 (10th Cir. 2022) .................................................................................................22

*Okla. Co. v. O'Neil*, 440 P.2d 978 (Okla. 1968)....................................................44

*OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086 (10th Cir. 1998). ...........25, 26

*Pan. Timber Co. v. Barsanti*, 633 P.2d 1258 (Okla. Civ. App. 1980)....................39

*Pepper v. United States*, 562 U.S. 476 (2011) .......................................................18

*PNC Bank, N.A. v. Presbyterian Ret. Corp.*, No. 14-0461-WS-C, 2014 U.S. Dist. LEXIS 159724 (S.D. Ala. Nov. 13, 2014) .............................................................52

*Ramco Operating Co. v. Gassett*, 890 P.2d 941 (Okla. 1995)...........................27, 38

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995)..................................18

*Scottsdale Ins. Co. v. Tolliver*, No. 04-CV- 0227-CVE-FHM, 2012 WL 524421, at *3 (N.D. Okla. Jan. 11, 2012) ................................................................................35

*Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 313 P.3d 289 (Okla. Civ. App. 1995)...........................................................................................27, 34, 35

*State ex rel. Barnett v. Creek Realty Co.*, 30 P.2d 160 (Okla. 1933) .....................48

*Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018)........................6, 7, 28, 29, 31

*Truett v. Freedom Leaf, Ltd. Liab. Co.*, Okla Civ. App 26 (Okla. Civ. App. 2021) ........................................................................................................................40

*United States v. Graham*, 704 F.3d 1275 (10th Cir. 2013) .....................................18

*United States v. Triangle Oil*, 277 F.3d 1251 (10th Cir. 2002) ..............................19

*Universitas Educ., Ltd. Liab. Co. v. Avon Capital, Ltd. Liab. Co.*, Nos. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, at *1 (10th Cir. Aug. 4, 2023) .................................................................................................................1, 26

*Wells Fargo Bank, N.A. v. Mesh Suture,* No. 19-CV-03218-PAB-GPG, 2020 U.S. Dist. LEXIS 184773 (D. Colo. Feb. 10, 2020) ......................................................45

*Yorkshire West Capital, Inc. v. Rodman*, 149 P.3d 1088 (Okla. Civ. App. 2006) ...................................................................................................16, 29, 30, 32, 33

## RELATED APPEALS

This consolidated appeal is related to Appeal Nos. 23-6126 and 23-6128 filed by Appellant Avon Capital, LLC, a Wyoming limited liability company's (hereinafter referred to as "Avon Capital-WY"), which were consolidated with Appeal Nos. 23-6125 and 23-6167 filed by Appellant SDM Holdings, LLC, an Oklahoma limited liability company (hereinafter referred to as "SDM Holdings"). Avon Capital-WY shall be referred to as "Appellant".

This consolidated appeal is also related to the following unpublished opinion issued by this Court: *Universitas Educ., Ltd. Liab. Co. v. Avon Capital, Ltd. Liab. Co.*, Nos. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, at *1 (10th Cir. Aug. 4, 2023) in which this Court held that there was no longer a case or controversy in the District Court because the claims were moot and the District Court no longer possessed Article III jurisdiction.

## CITATION TO THE RECORD

Filed simultaneously with Appellant's consolidated opening brief is the Appendix, which has been prepared according to 10th Cir. R. 30. The Appendix consists of twenty volumes. Appellant will refer to the Appendix as "App. Vol. [1, 2, 3, 4, etc.]."

# GLOSSARY

"Avon Capital-CT" refers to the entity named "Avon Capital, LLC," which is a limited liability company registered under the laws of Connecticut.

"Avon Capital-NV" refers to the entity named "Avon Capital, LLC," which is a limited liability company registered under the laws of Nevada.

"Avon Capital-WY" refers to the entity named "Avon Capital, LLC," which is a limited liability company registered under the laws of Wyoming who was Intervenor in the District Court case until this Court found the District Court lacked jurisdiction necessary to enter judgment against it under the its February 11, 2021 order because the New York Judgment registered with the District Court expired on December 3, 2020, at which time Appellant Avon Capital-WY filed a limited entry of appearance with the District Court solely for the purpose of challenging jurisdiction.

"First Consolidated Appeal" shall refer to consolidated Appeal Nos. 21-6044, 21-6049, 21-6133, 21-6134 on which this Court entered its decision on August 4, 2023 and issued its mandate on September 28, 2023. (*See* App. Vol. 16 at 3919 (Doc. 500)).

"New York Judgment" refers to the judgment in an action in the United States District Court for the Southern District of New York (the "New York Action"). (*See* App. Vol. 1 at 52 (Doc. 1-1)).

"Universitas" refers to Appellee/Petitioner Universitas Education, Inc., the judgment creditor under the New York Judgment.

"SDM Holdings" refers to Respondent/Garnishee SDM Holdings, LLC, a limited liability company registered under the laws of Oklahoma.

## STATEMENT OF ISSUES

### ISSUE ONE

Whether the District Court failed to follow the law of the case and holding of this Court that the case was moot and there was no longer a live case or controversy.

### ISSUE TWO

Whether the District Court erred in reappointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings when the District Court lacked subject matter jurisdiction once the case and claims became moot.

### ISSUE THREE

Whether the District Court erred in reappointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings when the District Court lacked personal jurisdiction once the case and the claims became moot.

**ISSUE FOUR**

Whether the District Court erred in reappointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings when Oklahoma law does not authorize refiling of a foreign judgment in the same case and case number.

**ISSUE FIVE**

Provided that the District Court is held to have regained subject matter jurisdiction and personal jurisdiction, whether the District Court erred in reappointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings because even if it is assumed *arguendo* that the judgment could be enforced against Appellant, Oklahoma law expressly authorizes solely the entry of a charging order.

**ISSUE SIX**

Provided that the District Court is held to have regained subject matter jurisdiction and personal jurisdiction, whether the District Court erred in reappointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings, and it is assumed *arguendo* that Oklahoma law does not solely authorize the entry of a charging order, the District Court erred in clarifying the Receiver's authority over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings.

# JURISDICTIONAL STATEMENT

Appellant files this consolidated appeal pursuant to Fed. R. App. P. 4(a)(1)(A) and Fed. R. App. P. 4(a)(4)(A).  On February 11, 2021, the District Court entered an order which adopted the Magistrate Judge's Report and Recommendations ("February 11, 2021 Order").  (App. Vol. 8 at 1956 (Doc. 228)).  He also adopted the Magistrate Judge's recommendation to enjoin Appellant Avon Capital-WY from transferring, alienating, concealing, or encumbering its ownership or other interest in Garnishee SDM Holdings. (*See id.*).  Avon Capital-WY timely filed its notice of appeal with the District Court on April 16, 2021.  (*See* App. Vol. 9 at 2136 (Doc. 245)).

On September 22, 2021, the District Court entered an order which executed on the February 11, 2021 Order and appointed a receiver over Appellant Avon Capital-WY's ownership interest in SDM Holdings.  (*See* App. Vol. 11 at 2604 (Doc. No. 310); App. Vol. 11 at 2613 (Doc. No. 311)).  Avon Capital-WY timely appealed these orders on October 13, 2021.  (*See* App. Vol. 11 at 2621 (Doc. No. 315)).  This Court consolidated Appeal Nos. 21-6044, 21-6049, 21-6133, and 21-6134 in the First Consolidated Appeal.  (App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

On September 27, 2022, oral argument was heard on the First Consolidated Appeal by this Court before a panel that consisted of Circuit Judges Eid, Baldock,

and Carson. (App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

**This Court Previously Decided that the District Court Lost Article III Jurisdiction, Subject Matter Jurisdiction, and Personal Jurisdiction when the Registered Judgment Expired.**

On July 13, 2023, this Court entered an order which found that Petitioner Universitas' judgment expired on December 3, 2020 and the case was moot at the time the District Court entered its February 11, 2021 judgment. (*See* App. Vol. 16 at 3915 (Doc. 499 at 13)). This Court vacated the District Court's February 11, 2021 Order for lack of jurisdiction due to mootness, and remanded it. *Id.* at 4.

Appellant filed a Petition for Rehearing with this Court related to the July 13, 2023 order. (App. Vol. 16 at 4013-4027, Order on Petition for Rehearing (Doc. 509); Attachment 10)). This Court initially determined that Universitas' re-filing of the expired judgment in the Western District of Oklahoma on December 9, 2021 had made the judgment presently enforceable under *Taracorp* and had reinvested the District Court with jurisdiction once again. (*See* App. Vol. 16 at 3915 (Doc. 499 at 13) (citing *Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018)). As a result of Appellant's Petition for Rehearing, this Court amended its July 13, 2023.

On August 4, 2023, this Court entered an order on the petition for rehearing that withdrew and replaced this Court's July 13, 2023 order and judgment with a revised order and judgment. (*See* App. Vol. 16 at 4028 (Doc. 510)). This Court

maintained that Petitioner Universitas' expired judgment was unenforceable and the case was moot following the December 3, 2020 expiration of the judgment. This Court also maintained its reasoning that the District Court initially had jurisdiction over the case, but correctly held that it lost jurisdiction on December 3, 2020 when the judgment expired. *Id.* at 10.

This Court, however, removed language from its revised order and judgment that stated Universitas' re-filing of the expired judgment in the Western District of Oklahoma on December 3, 2023 had made the judgment presently enforceable under *Taracorp* and reinvested the District Court with jurisdiction once again. (*Compare* App. Vol. 16 at 3915 (Doc. 499 at 13) (Order and Judgment as to Notice of Appeal Vacated and Remanded) *with* App. Vol. 16 at 4026, Order on Petition for Rehearing (Doc. 509 at 16) (removing language "However, Universitas's re-filing of the expired judgment in the Western District of Oklahoma on December 9, 2023 makes the judgment presently enforceable under *Taracorp*. . . But Universitas has since re-filed the judgment, vesting the Western District of Oklahoma with jurisdiction once again"). This Court again vacated the District Court's February 11, 2021 order for lack of jurisdiction due to mootness, and remanded it. *Id.* at 4.

After this Court revised its order on the First Consolidated Appeal and stated that the refiling of an unexpired judgment did not reinvest the District Court with jurisdiction, Appellee Universitas filed a new case under a new case number with

the District Court. (App. Vol. 19 at 4647 (Transcript of August 15, 2023 Proceedings, ¶¶ 9:16-20) (Counsel for Universitas stated that "we got a nearly certified copy of the order from the Southern District of New York and filed a new case in this district. We actually filed it yesterday, but it was accepted for filing today. And so that will have a new case number.").

In order to comply but to avoid waiving jurisdictional arguments, Avon Capital-WY filed a limited entry of appearance. (App. Vol. 17 at 4062 (Doc. 514) (Avon Capital-WY's limited entry of appearance for the sole purpose of opposing jurisdiction, August 14, 2023)). Avon Capital-WY and SDM Holdings also filed motions to dismiss seeking termination of proceedings for lack of subject matter jurisdiction and personal jurisdiction. (App. Vol. 17 at 4051 (Doc. 513) (Interested Party's Motion to Dismiss); App. Vol. 17 at 4077 (Doc. 516) (Avon Capital-WY's Motion to Dismiss); App. Vol. 17 at 4079 (Doc. 517) (Avon Capital-WY's Memorandum in Support of Motion to Dismiss)).

**The District Court Reentered its Injunction Against Appellant Avon Capital-WY *After* this Court determined the District Court Lost Article III Jurisdiction, Subject Matter Jurisdiction, and Personal Jurisdiction**

On August 7, 2023, the District Court entered an order that reaffirmed and reentered the July 13, 2023 order which granted an injunction in favor of Universitas and enjoined Appellant Avon Capital-WY from transferring, alienating, concealing, or encumbering its ownership or other interest in SDM Holdings. (App. Vol. 16 at

4050) (Doc. 512)).  The District Court entered its August 7, 2023 order before this Court entered its mandate on the First Consolidated Appeal.

Appellant timely filed its notice of appeal of the August 7, 2023 order with the District Court on September 6, 2023.  (App. Vol. 17 at 4116 (Doc. 523) (Avon Capital-WY's Notice of Appeal). [1]  The District Court's August 15, 2023 order is currently on appeal before this Court in related Appeal Nos. 23-6125 and 23-6126.

On August 15, 2023, the District Court entered an order that readopted its order entered on February 11, 2021 (App. Vol. 11 at 2685 (Doc. 338) (adopting the Magistrate Judge's Report and Recommendations, App. Vol. 8 at 1956 (Doc. 228)) effective upon issuance of the mandate by this Court in consolidated appeals nos. 21-6044, 21-6049, 21-6133, and 21-6134.  (*See* App. Vol. 17 at 4111 (Doc. 521) (Order of Pre-Trial Conference) ("The court concludes it reacquired subject matter jurisdiction" and readopted final judgment and injunction entered on February 11, 2021 under Doc. 228)).  The District Court's order entered on February 11, 2021 reaffirmed the Magistrate Judge's Report and Recommendation, and entered final judgment and enjoined Appellant Avon Capital-WY from transferring, alienating, concealing, or encumbering its ownership or other interest in SDM Holdings.  (*See*

---

[1]  SDM Holdings also timely appealed the District Court's August 7, 2024 Order.  App. Vol. 17 at 4114 (Doc. 522) (SDM Holdings' Notice of Appeal).

App. Vol. 17 at 4111 (Doc. 521) (Order of Pre-Trial Conference)). The District Court also denied Avon Capital-WY and SDM Holdings' motions to dismiss. *Id.*

This Court issued its mandate on September 28, 2023 for the First Consolidated Appeal filed by SDM Holdings. (App. Vol. 17 at 4118 (Doc. 533) (Mandate issued on September 28, 2023)). Appellant timely filed its notices of appeal of the August 15, 2023 order with the District Court on September 6, 2023. (App. Vol. 17 at 4243 (Doc. 544)).[2] The District Court's August 15, 2023 order is currently on appeal before this Court in related Appeal Nos. 23-6167 and 23-6168.

**The District Court's Reappointment of a Receiver over Appellant Avon Capital-WY *After* this Court determined the District Court Lost Article III Jurisdiction, Subject Matter Jurisdiction, and Personal Jurisdiction**

On October 19, 2023, Universitas filed its Motion to Reappoint Receiver. (App. Vol. 17 at 4159 (Docs. 540 and 541), amended App. Vol. 18 at 4261 (Doc. 551)). Avon Capital-WY opposed Universitas' Motion for Reappointment of Receiver. (App. Vol. 18 at 4362) (Doc. 556); Vol. 18 at 4396 (Doc. 560)).

The District Court granted Universitas' Motion to Reappoint Receiver and reappointed a receiver over Avon Capital-WY. (App. Vol. 18 at 4405 (Docs. 564 and 565)). Avon Capital-WY timely filed its notice of appeal with the District Court on January 9, 2024, seeking appeal from the orders entered on January 4, 2024,

---

[2] SDM Holdings also timely appealed the District Court's August 14, 2024 Order. App. Vol. 17 at 4136 (Doc. 536).

which is now before this Court under Appeal No. 24-6006. (App. Vol. 18 at 4405 (Docs. 564 and 565).

On January 22, 2024, the receiver reappointed over Avon Capital-WY moved the District Court for an order that clarified the scope of receiver's authority. (App. Vol. 18 at 4426 (Doc. 571)). The District Court granted the Receiver's Motion to Clarify and provided an indicative ruling on the Receiver's motion provided that this Court had remanded jurisdiction over the Orders. (App. Vol. 18 at 4432 (Doc. 572)).

On February 8, 2024, the Receiver filed a motion with this Court seeking to intervene for the limited purpose of seeking a partial remand.[3] On February 16, 2024, this Court granted the Receiver's intervention for purpose of notifying the Tenth Circuit of the district court's indicative ruling. The District Court subsequently granted the Receiver's Motion to Clarify Authority on February 22, 2024. (App. Vol. 18 at 4423 (Doc. 568)). Avon Capital-WY timely appealed the District Court's order on February 27, 2024, which is now before this Court under Appeal No. 24-6033. (App. Vol. 19 at 4581 (Doc. 595)). Judge Heaton's clarification of the Receiver's authority flows from his prior order re-appointing a

---

[3] The Tenth Circuit granted the Receiver's Motion to Intervene and Partial Remand and *partially* remanded the Orders to this Court but only for the "limited purpose of ruling on [the receiver's] Motion to Clarify Authority." (App. Vol. 19 at 4540 (Doc. 591)). As a result, Avon Capital-WY filed its opposition post-advisory opinion. (App. Vol. 19 at 4562 (Doc. 593)).

11

Receiver over Avon Capital-WY. finding of *alter ego* liability against Avon Capital-WY. (*See* Vol. 18 at 4405, orders dated January 4, 2023 (Docs. 564 and 565)).

## STATEMENT OF THE CASE

On August 15, 2014, the New York District Court entered judgment in favor of Petitioner/Appellee Universitas against Avon Capital, LLC, and other named entities ("New York Judgment"). (*See* App. Vol. 1 at 52 (Doc. 1-1)). The New York District Court specifically noted that "Turnover Respondents" were all "entities formed in Delaware and Connecticut." (App. Vol. 2 at 430 (Doc. 85) ("The post[-] judgment turnover order issued by the District Court for the Southern District of New York referred only to Delaware and Connecticut entities, making it clear that Avon Capital-WY was not a party to that order.") (citing *Universitas Educ.,* 2014 U.S. Dist. LEXIS 109077 at *22.)).

On November 7, 2014, Appellee Universitas registered the New York Judgment with the United District Court for the Western District of Oklahoma. (*See* App. Vol. 1 at 52 (Doc. 1-1)). Appellee Universitas identified "Avon Capital, LLC" as the "Judgment Debtor." *Id.* Appellee Universitas sought to enforce the New York Judgment against the assets of Respondent SDM Holdings as a Garnishee.

On April 15, 2016, Appellant Avon Capital-WY intervened in the post-judgment proceedings before the District Court asserted that it owned 100% membership interest in SDM Holdings. (App. Vol. 1 at 89 (Doc. 56); (App. Vol. 2

at 463 (Doc. 92)). Following discovery, Appellant Avon Capital-WY moved for summary judgment on Universitas' unpled theory of veil piercing and *alter ego* liability alleged against Avon Capital-WY in post-judgment discovery. (App. Vol. 5 at 1313 (Doc. 194)). Appellee Universitas also moved for summary judgment on its unpled theory of veil piercing and *alter ego* liability. (App. Vol. 6 at 1315 (Doc. 195)).

On February 11, 2021, District Judge Joe Heaton entered an order which entered final judgment against Appellant Avon Capital-WY under Appellee's unpled theories of *alter ego* liability and enjoined Appellant from transferring, alienating, concealing, or encumbering its ownership or other interest in SDM Holdings. (App. Vol. 10 at 1922). On September 22, 2021, Judge Heaton entered Orders which granted the appointment of a receiver over all aspects of Avon Capital-WY's property and activities, which included the right to exercise its membership interest in Appellant SDM Holdings. (App. Vol. 11 at 2604 (Doc. No. 310); App. Vol. 11 at 2604 (Doc. No. 311)).

As detailed in the foregoing section, this Court found in its August 4, 2023 decision that Appellee Universitas' judgment expired on December 3, 2020, and as a result the case was moot at the time the District Court entered its February 11, 2021 judgment. (*See* App. Vol. 16 at 3915 (Doc. 499 at 13); *see also* Jurisdictional

Statement). On August 4, 2024, this Court vacated the District Court's February 11, 2021 Order for lack of jurisdiction due to mootness, and remanded it. *Id.* at 4.

Consistent with this Court's finding that the case became moot when the registered judgment expired on December 3, 2020, on remand the District Court vacated its September 2021 orders which instituted a receivership over Avon Capital-WY. (*See* Vol. 18 at 4405 (Docs. 564 and 565)). The Court also assessed the costs and fees associated with the receivership against Universitas. *Id.* at 4414 ("[T]he court concludes Universitas' liability for receivership expenses should be deemed owed to Avon Capital – Wyoming rather than to SDM directly.").

On January 4, 2024, the District Court Reappointed a Receiver over Avon Capital-WY. *Id.* The District Court's reappointment of a receiver over Appellant Avon Capital-WY and clarification of receiver's authority flow from the District Court's readoption of its prior finding of *alter ego* liability against Avon Capital-WY. (*See* App. Vol. 16 at 4050, order dated August 7, 2023 (Doc. 512); App. Vol. 17 at 4111, order dated August 15, 2023 (Doc. 521)).

### Orders on Appeal

On appeal, Appellant seeks review of issues which arise out of the following orders entered by the District Court: (1) the orders entered by the District Court on January 24, 2024 which re-appointed a receiver over Appellant Avon Capital-WY from transferring, alienating, concealing, or encumbering its ownership or other

interest in SDM Holdings, App. Vol. 18 at 4405 (Docs. 564 and 565); and (2) the order entered by the District Court on February 22, 2024 clarifying authority of the receiver, App. Vol. 19 at 4577 (Doc. 594).

Throughout this brief, Appellant Avon Capital-WY shall collectively refer to these orders entered by the District Court as "Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY" or "Orders Reappointing Receiver over Appellant Avon Capital-WY". (App. Vol. 18 at 4405 (Docs. 564 and 565); App. Vol. 19 at 4577) (Doc. 594)).

## SUMMARY OF THE ARGUMENT

This Court correctly held on August 4, 2023 that the case became moot on December 3, 2020 when the registered judgment expired, at which time the District Court lost Article III jurisdiction. (*See* App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023) ("Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the District Court lacked Article III jurisdiction to enter its order, rendering the order void.")). This Court's findings in the August 4, 2023 order is law of the case.

As a result, the District Court lost subject matter jurisdiction over the case when it became moot. *See id.* The District Cout also lost personal jurisdiction over Appellant, who is no longer a party to any case or controversy when the claims became moot on December 3, 2020. *See id.*

After the District Court lost Article III jurisdiction and the case became moot, under Oklahoma law Universitas could not cure the loss of jurisdiction by refiling the judgment in the same case. *See Yorkshire West Capital Inc. v. Rodman,* 149 P.3d at 1093. The District Court's lack of jurisdiction renders all orders and actions that followed the expiration of the judgment moot, including, among others, the District Court's orders that entered final judgment and the injunction and appointment of the receiver, and the District Court cannot regain subject matter jurisdiction. (*See* App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

With respect to the First Consolidated Appeal, this Court replaced its first order entered on July 13, 2023 with its August 4, 2023 order and removed language that stated the District Court had regained jurisdiction upon Universitas' refiling of the New York Judgment. (*See* App. Vol. 16 at 3915 (Doc. 499); App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)). This Court, in its August 4, 2023 order Court did not analyze the substantive issues raised by Appellant in the First Consolidated Appeal. (*See* App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)). This Court would have addressed the substantive issues had the District Court regained jurisdiction and intended the District Court to address the substantive issues. (*Id.*)

If we assumed *arguendo* that the District Court regained subject matter jurisdiction over the case and personal jurisdiction over Appellant in the case (and it

cannot for those reasons detailed herein) and that Universitas could enforce the New York Judgment and injunction in this case (and it cannot for those reasons detailed in the foregoing sections), a charging order against Avon Capital-WY's membership interest in SDM Holdings is Universitas' "sole and exclusive remedy" to enforce the New York Judgment. 18 O.S. § 2034 (stating that 18 O.S. § 2034 "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest.").

Thus, the District Court erred by entering its Orders Reappointing Receiver over Appellant Avon Capital-WY. (App. Vol. 18 at 4405 (Docs. 564 and 565); App. Vol. 19 at 4577) (Doc. 594)).

If we assume for *arguendo* that a receiver could as a matter of law be appointed over Avon Capital-WY (and it cannot for those reasons detailed herein), Universitas has failed to meet its burden required to establish application of 12 O.S. § 1551 (6). The District Court also abused its discretion in appointing a receiver pursuant to 12 O.S. § 1551.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.     ISSUE ONE: WHETHER THE DISTRICT COURT FAILED TO FOLLOW LAW OF THE CASE AND THE HOLDING OF THIS COURT THAT THE CASE WAS MOOT AND THERE WAS NO LONGER A LIVE CASE OR CONTROVERSY.**

**A. Standard of Review.**

The appellate court reviews *de novo* whether the law of the case doctrine applies. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1089 (10th Cir. 2017).

**B. This Court's Order is Binding on the District Court Under Law of the Case.**

"Under the 'law of the case' doctrine, when a court rules on an issue of law, the ruling 'should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Graham*, 704 F.3d 1275, 1278 (10th Cir. 2013) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)) (quotation omitted).  The law-of-the-case doctrine applies to issues actually decided.  *See, e.g. Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1250-51, 179 L. Ed. 2d 196 (2011); *Dobbs v. Anthem*, 600 F.3d 1275, 1279 (10th Cir. 2010); *Haynes Trane Serv. Agency v. Am. Std., Inc.*, 573 F.3d 947, 956 (10th Cir. 2009).

"[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex*

*Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (internal citations omitted). This principle applies to all "issues previously decided, either explicitly or by necessary implication." *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 703 (10th Cir. 1993) (citations omitted), cert. denied, 1995 U.S. LEXIS 2629 (U.S. Apr. 17, 1995).

"Courts use 'law of the case' to 'promote decisional finality' and rely on it to prevent relitigation of an issue already decided in prior proceedings of the same case." *United States v. Triangle Oil*, 277 F.3d 1251, 1259 (10th Cir. 2002); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("The doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.") (quotation omitted); *see also Huffman v. Saul Holdings Ltd.*, 262 F.3d 1128, 1132 (10th Cir. 2001) ("The law of the case doctrine is intended to prevent 'continued re-argument of issues already decided[.]'").

Thus, "[a]n appellate court decision on a particular issue, unless vacated or set aside, governs the issue during all later stages of the litigation in the district court and thereafter on any further appeal." *Brokers' Choice of Am., Inc. v. NBC Universal*, Inc., 861 F.3d 1081, 1099 (10th Cir. 2017) (internal citations omitted).

This Court correctly held on August 4, 2023 that the District Court did not have jurisdiction to enter the February 11, 2021 Order granting Universitas' motion for summary judgment which entered final judgment on Avon Capital-WY and enjoined Avon Capital-WY. Key language in this Court's August 4, 2023 Order is as follows:

> We vacate the district court's February 11, 2021 order for lack of jurisdiction; *we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.*

(App. Vol. 16 at 4031 (Doc. 510) (Order and Judgment Dated August 4, 2023) (emphasis added)).

> "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) (cleaned up). As the issue in this case *was no longer live* and Universitas *lacked a legally cognizable interes*t in the outcome once its *judgment expired in December 2020,* the case became *moot* and the district court *lacked Article III jurisdiction to enter its order, rendering the order void*.

(App. Vol. 16 at 4039 (Doc. 510) (Order and Judgment Dated August 4, 2023) (footnote omitted) (emphasis added). This Court's August 4, 2023 order is "binding precedent under the doctrine[] of law of the case . . ." (App. Vol. 16 at 4030 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

As this Court held, the case became moot on December 3, 2020 when the registered judgment (New York Judgment) expired, at which time the District Court

lacked Article III jurisdiction.  (App. Vol. 16 at 4039-4040 (Doc. 510)).  In other words, Appellant is no longer a party to any case or controversy and all claims became moot on December 3, 2020.  (*See, e.g.* App. Vol. 16 at 4038-4039 (Doc. 510) (Order and Judgment Dated August 4, 2023) ("Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the District Court lacked Article III jurisdiction to enter its order, rendering the order void.")).  As of December 3, 2020, when the District Court lost jurisdiction, the case ceased to exist.

Accordingly, consistent with this Court's order entered on August 4, 2023, Appellant requests this Court enter an order which finds the case became moot on December 3, 2020, at which time Appellant was no longer (and is no longer) party to any case or controversy and any claims became moot, and the Court's prior finding that the District Court lacked Article III jurisdiction is law of the case and that the District Court lacked jurisdiction to reenter its February 11, 2021 Order which entered final judgment against Avon Capital-WY and enjoined Avon Capital-WY.  (App. Vol. 16 at 4038-4039 (Doc. 510) (Order and Judgment Dated August 4, 2023); App. Vol. 16 at 4050 (Doc. 512) (reaffirming order entered on July 13, 2023 readopting final judgment and injunction); App. Vol. 17 at 4111 (Doc. 521) (Order of Pre-Trial Conference) ("The court concludes it reacquired subject matter

jurisdiction" and readopted final judgment and injunction entered on February 11, 2021 under Doc. 228).

II. **ISSUE TWO: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN IT LACKED SUBJECT MATTER JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT.**

   **A. Standard of Review.**

An appellate court generally reviews *de novo* the issue of subject-matter jurisdiction. *Khan v. Bank of N.Y. Mellon*, 525 F. App'x 778, 779 (10th Cir. 2013); *see also Blackburn v. United States*, No. 20-8005, 2021 U.S. App. LEXIS 21268, at *1 (10th Cir. July 19, 2021) ("Appellate courts review questions of subject-matter jurisdiction *de novo*.") (emphasis added).

   **B. The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because It Lacked Subject Matter Jurisdiction Once the Case and Claims Became Moot**

When a Court lacks subject matter jurisdiction over an action, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., N.M. Health Connections v. United States HHS*, 946 F.3d 1138, 1145 (10th Cir. 2022) (When a district court lacks subject matter because the claims before it become moot, it is appropriate to dismiss the suit.).

"If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis HealthCare Corp. v. Symczyk*,

569 U.S. 66, 72 (2013) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478, (1990)); *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (*quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478, (1990)). If at any point during litigation, the action can no longer proceed because the claims have become moot, "[the moot claims] must be dismissed." (*See, e.g., Genesis*, 569 U.S. at 72 (citing *Lewis*, 494 U.S. at 477-478)).

Recently, the United States Supreme Court favorably quoted the holding in *Genesis Healthcare*. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016); *see also Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1129 n.19 [(10th Cir. 2010) ("When a case becomes moot prior to final adjudication, the district court was without jurisdiction to enter the judgment, and vacatur and dismissal [] of the judgment is automatic.").

As this Court held, the registered judgment (New York Judgment) expired on December 3, 2020, and the case became moot at that point. (App. Vol. 16 at 4038-4039 (Doc. 510) (Order and Judgment Dated August 4, 2023) ("Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the district court lacked Article III jurisdiction to enter its order, rendering the order void."); *see Supra,* Section I.B. (detailing the Court's specific finding on orders entered by the District Court after the case became

moot when the registered judgment expired on December 3, 2020 and there was no longer a case and controversy) (quoting App. Vol. 16 at 4028 (Doc. 510)).

Accordingly, the District Court did not have jurisdiction to enter the February 11, 2021 Order granting Universitas' motion for summary judgment, or any other order entered after December 3, 2020. (App. Vol. 16 at 4039 (Doc. 510) (Order and Judgment Dated August 4, 2023) ("Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the district court lacked Article III jurisdiction."). A court without jurisdiction lacks authority to act. *See Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013).

With respect to the First Consolidated Appeal, this Court replaced its first order entered on July 13, 2023 with its August 4, 2023 order and removed language that stated the District Court had regained jurisdiction upon Universitas' refiling of the New York Judgment. (*See* App. Vol. 16 at 3915 (Doc. 499) (Order and Judgment Dated July 13, 2023); *see also* App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023)). The Court did not analyze the substantive issues raised by Avon Capital-WY and SDM Holdings in the First Consolidated Appeal. (*See* App. Vol. 16 at 4028 (Doc. 510) (Order and Judgment Dated August 4, 2023). And this Court would have addressed the substantive issues had the District Court regained jurisdiction and intended the District Court to address the substantive issues. (*Id.*)

Therefore, Appellant requests the Court enter an order which finds the District Court lost subject matter jurisdiction over the case upon expiration of the registered judgment (New York Judgment) on December 3, 2020; that the District Court has not regained subject matter jurisdiction since then; vacates the Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY; and dismisses this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (*See* App. Vol. 16 at 4038-4039 (Doc. 510) (Order and Judgment Dated August 4, 2023)).

III. **ISSUE THREE: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN IT LACKED PERSONAL JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT.**

**A. Standard of Review.**

An appellate court reviews *de novo* a district court's decision to exercise personal jurisdiction over a defendant. *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1156 (10th Cir. 2010).

**B. The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because It Lacked Personal Jurisdiction Once the Case and Claims Became Moot.**

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Petitioner bears the burden of establishing personal jurisdiction over the respondents. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

When the case became moot and the District Court lacked Article III jurisdiction, and the case and controversy became moot, the District Court also lost personal jurisdiction over Avon Capital-WY and SDM Holdings. (*See* Fed. R. Civ. P. 12(b)(2); *see Supra,* Sections I. B., II.B. and III.B.). Avon Capital-WY has filed its limited entry of appearance only for the purpose of challenging jurisdiction. Avon Capital-WY has not voluntarily submitted to jurisdiction.

The District Court's lack of jurisdiction rendered moot all orders and actions that followed expiration of the judgment (New York Judgment) on December 3, 2020 when the District Court lost Article III jurisdiction. *Universitas Educ., Ltd. Liab. Co. v. Avon Capital, Ltd. Liab. Co.*, Nos. 21-6044, 21-6049, 21-6133, 21-6134, 2023 U.S. App. LEXIS 20356, at *12-13 (10th Cir. Aug. 4, 2023). A court without jurisdiction lacks authority to act. *See, e.g., Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013). When the case and controversy became moot, the District Court lost personal jurisdiction over Avon Capital-WY and SDM Holdings. *See id.*

Therefore, Appellant requests the Court enter an order which finds the District Court lost personal jurisdiction (and has not regained personal jurisdiction) over Appellant upon the expiration of the registered judgment on December 3, 2020, when the District Court lost Article III jurisdiction; that Avon Capital-WY is no longer before the District Court; vacates the Orders Related to Reappointment of a

Receiver over Appellant Avon Capital-WY; and dismisses this action for lack of personal jurisdiction.

## IV. ISSUE FOUR: THE DISTRICT COURT ERRED IN REAPPOINTING A RECEIVER OVER AVON CAPITAL-WY WHEN IT LACKED PERSONAL JURISDICTION ONCE THE CASE AND CLAIMS BECAME MOOT.

### A. Standard of Review.

An appellate court generally reviews questions of statutory interpretation *de novo*. *Navajo Nation v. Dalley*, 896 F.3d 1196, 1206 (10th Cir. 2018) ("Reviewing the district court's statutory interpretation *de novo*") (emphasis added). "A legal question involving statutory interpretation is subject to *de novo* review, i.e., a non-deferential, plenary and independent review of the trial court's ruling." *See, e.g. Duncan v. Oklahoma Dept. of Corr.*, 95 P.3d 1076, 1078 (Okla. Civ. App. 2005) (quoting *Fulsom v. Fulsom*, 81 P.3d 652, 654 (Okla. 2003)); *Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 313 P.3d 289, 290 (Okla. Civ. App. 1995).

"The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *See* Fed. R. Civ. P. 69 (a)(1) (Comment two, "Rule 69(a) adopts state procedure on execution and supplementary proceedings only when judgment is for payment of money."); *Ramco Operating Co. v. Gassett*, 890 P.2d 941, 946 (Okla. 1995). The New York

Judgment at issue is a judgment for the payment of money. (*See* App. Vol. 1 at 52 (Doc. 1-1)).

### B. The District Court Erred by Reappointing a Receiver over Avon Capital-WY Because Oklahoma Law Does Not Authorize Refiling of a Foreign Judgment in an Expired Case.

Oklahoma Statute §12-735(B) states that judgments registered in the state "shall become unenforceable and of no effect if more than five (5) years have passed from the date of" last execution, last notice of renewal of judgment was filed with the court clerk, last garnishment summons was issued, or sending of a certified copy of notice of income assignment."

This Court correctly found that Universitas' "last relevant act was the issuance of a writ of garnishment to SDM on December 3, 2015." (App. Vol. 16 at 4036 (Doc. 509)). Consistent with O.S. §12-735(B), this Court held the registered judgment (the New York Judgment) expired five years later, on December 3, 2020. *See Supra,* Section I.B (Issue One) (detailing the Court's specific finding on orders entered by the District Court after the case became moot when the registered judgment (New York Judgment) expired on December 3, 2020 and there was no longer a case and controversy) (quoting App. Vol. 16 at 4039 (Doc. 510)).

Oklahoma law does not authorize the re-filing of a foreign judgment in an expired case. In *Taracorp,* plaintiffs obtained a judgment from the District Court of Logan County, Colorado against defendants on June 4, 2007. *Taracorp, Ltd. v.*

*Dailey*, 419 P.3d 217, 218 (Okla. 2018). Plaintiffs acted to execute their judgment, and on June 7, 2007, they filed their Colorado judgment in the District Court of Pottawatomie County, Oklahoma as Case No. C-07-659. *Id.* After years of inaction, on May 23, 2016, plaintiffs re-filed the 2007 Colorado judgment in a new case in the District Court of Marshall County, Oklahoma. *Id.* at 219. Plaintiffs in *Taracorp* relied on the holding in *Yorkshire West Capital Inc. v. Rodman,* 149 P.3d 1088 (Okla. Civ. App. 2006), that "nothing prevented the re-filing of the judgment a second time in Oklahoma as long as the foreign judgment remained valid and enforceable in the original state." *Taracorp,* 419 P.3d at 219. Ultimately, the Oklahoma Supreme Court agreed. *Id.* at 223.

In *Yorkshire West Capital, Inc. v. Rodman,* the Oklahoma Court of Appeals outlined the proper procedure to re-file a dormant Oklahoma judgment based on a foreign judgment. 149 P.3d 1088, 1093 (Okla. Civ. App. 2006). There, the *Yorkshire* Court held:

> On *de novo* review, we find that the law in Oklahoma requires that a foreign judgment which is valid and enforceable in the issuing state may be filed as a new judgment in Oklahoma, even where the same foreign judgment has previously been filed and become dormant in Oklahoma. The judgment's validity in the issuing state is paramount, and nothing in the Act expressly prohibits a second filing of a judgment. In this case, the Texas Judgment Yorkshire filed in Oklahoma in 1996 became an Oklahoma judgment which became dormant after five years without execution. But Yorkshire's Texas Judgment remained valid and enforceable in 2005 and Yorkshire **properly filed it a second time in Oklahoma under a new case number.** That filing resulted in a

second Oklahoma judgment which remains enforceable pursuant to §
735.

*Yorkshire West Capital Inc. v. Rodman,* 149 P.3d 1088, 1093 (Okla. Civ. App. 2006)

(emphasis added).    *Yorkshire* held that a judgment is properly re-filed under

Oklahoma law when it is filed "a second time in Oklahoma **under a new case**

**number."** *Id.* (emphasis added).

In summary, Oklahoma law does not recognize re-filing a judgment in a moot

case, and re-filing a judgment does not cure the District Court's lack of jurisdiction.

Oklahoma law requires that Universitas, as the "judgment creditor[,] must still

comply with the filing requirements and potential defenses found in 12 O.S. 2001 §

721." *Yorkshire*, 149 P.3d at 1092.

In the instant action, Universitas attempted to re-file the New York Judgment

on August 6, 2023, <u>in this expired case</u> *after* the District Court lost jurisdiction on

December 3, 2020.  (App. Vol. 11 at 2688 (Doc. 341); App. Vol. 11 at 4043 (Doc.

511) (Notice (other) by Universitas Education LLC of *Refiling Judgment*)).

Universitas' attempts to re-file the New York Judgment <u>in this expired case</u> *after* the

District Court lost jurisdiction on December 3, 2020 did not reinvest the District

Court with subject matter jurisdiction.  *Yorkshire*, 149 P.3d at 1092.

On August 4, 2023, this Court entered an order that withdrew and replaced

this Court's July 13, 2023 order and judgment with a revised order and judgment,

and correctly removed language that had previously provided that Universitas' re-

filing of the expired judgment in the Western District of Oklahoma on December 9, 2023 had made the judgment presently enforceable under *Taracorp.* (*Compare See* App. Vol. 16 at 3915 (Doc. 499); (Order and Judgment Dated July 13, 2023) *with* App. Vol. 16 at 4038 (Doc. 510) (Order and Judgment Dated August 4, 2023) (removing language "However, Universitas's re-filing of the expired judgment in the Western District of Oklahoma on December 9, 2023 makes the judgment presently enforceable under *Taracorp.* . . But Universitas has since re-filed the judgment, vesting the Western District of Oklahoma with jurisdiction once again"). In others words, this Court correctly found that re-filing of an expired judgment did not reinvest the District Court with jurisdiction.

This Court also correctly recognized that Petitioner Universitas' failure to properly re-file the New York Judgment in accordance with Oklahoma law prior to its expiration was "fatal" as there was no longer a judgment in existence for the District Court to enforce at the time it entered the February 11, 2021 Order and all other orders that the District Court entered after the New York Judgment expired on December 3, 2020. (*See* App. Vol. 16 at 4038 (Doc. 510) (Order and Judgment Dated August 4, 2023) ("For the reasons explained above, that failure to re-file **was fatal**—there was no longer a judgment in existence for the district court to enforce at the time it entered the order") (emphasis added).

In other words, after the District Court lost Article III jurisdiction and the case became moot under applicable law, Universitas could not cure the loss of jurisdiction by refiling the judgment in the same case. *See Yorkshire,* 149 P.3d at 1093. The District Court's lack of jurisdiction renders all orders and actions that followed the expiration of the judgment moot. (*See* App. Vol. 16 at 4038 (Doc. 510) (Order and Judgment Dated August 4, 2023)). And the District Court cannot regain jurisdiction.

Furthermore, the procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. *See* Fed. R. Civ. P. 69 (a)(1). The filing of the New York Judgment by Universitas in this case in 2021 and again in 2023 after the District Court lost subject matter jurisdiction is not permitted under Oklahoma law. 12 O.S. § 735(B); *Yorkshire West Capital Inc. v. Rodman*, 149 P.3d 1088, 1093 (Okla. Civ. App. 2006) ("Yorkshire properly filed it a second time in Oklahoma under a new case number.").

The District Court erred as a matter of law by ruling that it somehow regained jurisdiction. Consistent with 12 O.S. § 735(B) and *Yorkshire,* to the extent that Universitas seeks to re-file the New York Judgment in Oklahoma, it must be re-filed in a new case and under a new case number. *Yorkshire*, 149 P.3d at 1093.

After this Court entered its order on the First Consolidated Appeal and found that the District Court lost Article III jurisdiction, subject matter jurisdiction over

the case, and personal jurisdiction over the parties, Appellee Universitas filed a new case under a new case number with the District Court. (App. Vol. 19 at 4647(Transcript of August 15, 2023 Proceedings, ¶¶ 9:16-20) ("[W]e got a nearly certified copy of the order from the Southern District of New York and filed a new case in this district. We actually filed it yesterday, but it was accepted for filing today. And so that will have a new case number."). Appellee's actions before the District Court represent an acknowledgement that the expired judgment (the New York Judgment) must be filed under a new case number. *Yorkshire*, 149 P.3d at 1093.

Accordingly, Appellant requests this Court enter an order which enforces *Yorkshire* and finds the District Court cannot (and has not) regain subject matter jurisdiction over the case and personal jurisdiction over Appellant by Universitas' refiling of the New York Judgment in the same case and case number; vacates the Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY; and dismisses this action for lack of jurisdiction. (*See* App. Vol. 16 at 4038 (Doc. 510) (Order and Judgment Dated August 4, 2023).

**V.  ISSUE FIVE: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, THE DISTRICT COURT ERRED IN REAPPOINTMENTING A RECEIVER OVER AVON CAPITAL-WY, BECAUSE EVEN IF ASSUMED *ARGUENDO* THAT THE JUDGMENT COULD BE ENFORCED AGAINST APPELLANT, OKLAHOMA LAW EXPRESSLY AUTHORIZES SOLELY THE ENTRY OF A CHARGING ORDER.**

### A. Standard of Review

An appellate court generally reviews questions of statutory interpretation *de novo*. *Navajo Nation v. Dalley*, 896 F.3d 1196, 1206 (10th Cir. 2018) ("Reviewing the district court's statutory interpretation *de novo*").  "A legal question involving statutory interpretation is subject to *de novo* review, i.e., a non-deferential, plenary and independent review of the trial court's ruling."  *Duncan v. Oklahoma Dept. of Corr.*, 95 P.3d 1076, 1078 (Okla. Civ. App. 2005) (quoting *Fulsom v. Fulsom*, 81 P.3d 652, 654 (Okla. 2003); *Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 313 P.3d 289, 290 (Okla. Civ. App. 1995).

### B. Oklahoma Law Expressly Authorizes Solely the Entry of a Charging Order.

Under Oklahoma law, a membership interest in an Oklahoma limited liability company is limited to the flow of profits (or surplus from a member's economic interest) from units of the limited liability company.  *See* 12 O.S. §§ 2033, 2034 (2011); 18 O.S. § 2032 ("A member has no interest in specific limited liability company property.").

Avon Capital-WY's membership interest in SDM Holdings is an economic interest. Avon Capital-WY does not own a property interest in SDM Holdings' insurance policies. For these reasons, SDM Holdings' assets are not available to enforce the Judgment against SDM Holdings' insurance policies.

Furthermore, "section [18-2034] shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest." 18 O.S. § 2034. "Oklahoma's limited liability company statutes, the exclusive remedy of a creditor of a member in a limited liability company with respect to the member's interest is a 'charging order,' which may not be foreclosed upon." *Scottsdale Ins. Co. v. Tolliver*, No. 04-CV-0227-CVE-FHM, 2012 WL 524421, at *3 (N.D. Okla. Jan. 11, 2012) (citing 18 O.S. Supp. 2017 § 2034).

Similarly, in 2013 the Oklahoma Court of Civil Appeals reversed an order assigning a judgment debtors' membership interest in a limited liability company. *Southlake Equip. Co. v. Henson Gravel & Sand, LLC*, 313 P.3d 289 (Ok. Civ. App. 2013). It wrote:

> Section 2034 exclusively describes the rights of a creditor against a judgment debtor member of a limited liability company. It authorizes a court to charge the membership interest of a judgment debtor to a creditor as payment towards the debt until the judgment is satisfied. However, § 2034 narrows the definition of membership interest to mean only the flow of profits or surplus from the member's economic interest in his units of the LLC, and only allows this flow until the judgment is satisfied. Section 2034 specifically states "the judgment creditor has only the rights [or entitlements] of an assignee of the membership interest." The Act defines the rights of an assignee as "entitl[ing] the

assignee to share in profits and losses, to receive any distribution or distributions and to receive the allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled to the extent assigned." 18 O.S. 2011, § 2033.

*Id.* at 292. Thus, the order charging the judgment debtor's membership interest to the judgment creditor "clearly conflicts with the plain meaning of § 2034 and was therefore in error." *See id.*

If we assumed *arguendo* that the District Court can regain subject matter jurisdiction over the case and personal jurisdiction over Appellant Avon Capital-WY in the case (and it cannot for those reasons detailed in the foregoing sections) and that Universitas could enforce the New York Judgment against Avon Capital-WY in this case (and it cannot for those reasons detailed in the foregoing sections), a charging order against Avon Capital-WY's membership interest in SDM Holdings is Universitas' "sole and exclusive remedy" to enforce the New York Judgment. 18 O.S. § 2034 (stating that 18 O.S. § 2034 "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest.").

Accordingly, provided that the District Court regained subject matter jurisdiction over the case and personal jurisdiction over Appellant Avon Capital-WY in this case and provided that Universitas could enforce the New York Judgment against Avon Capital-WY in this case, Appellant requests this Court enter an order that vacates the Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY and enforces 18 O.S. § 2034 and finds that Universitas' "sole and

exclusive remedy" and only mechanism to enforce the New York Judgment is a charging order. *See, e.g.,* 18 O.S. § 2034 (stating that 18 O.S. § 2034 "shall be the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest.").

VI. **ISSUE SIX: IF THE DISTRICT COURT IS HELD TO HAVE REGAINED SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION, AND IF ASSUMED ARGUENDO THAT OKLAHOMA LAW DOES NOT SOLELY AUTHORIZE THE ENTRY OF A CHARGING ORDER, THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING PETITIONER'S MOTION TO REAPPOINT A RECEIVER OVER AVON CAPITAL-WY.**

A. **Standard of Review**

An appellate court generally reviews the appointment of a receiver based on the abuse of discretion standard. *See, e.g., McKean v. McClure*, No. CIV-16-320-SPS, 2017 U.S. Dist. LEXIS 68904, at *9 (E.D. Okla. May 5, 2017) (quoting *Guar. Laundry v. Pulliam*, 191 P.2d 975, 980 (Okla. 1948) ("The right to have a receiver appointed is recognized in this jurisdiction as a matter resting within the sound judicial discretion of the trial court, whose judgment is not to be disturbed on appeal unless an abuse of discretion is shown."). "But the power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly." *Id.*

"The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *See* Fed. R. Civ. P. 69 (a)(1) (Comment two, "Rule 69(a) adopts state procedure on execution and supplementary proceedings only when judgment is for payment of money."); *Ramco Operating Co. v. Gassett*, 890 P.2d 941, 946 (Okla. 1995). Because SDM Holdings is an Oklahoma limited liability company, Oklahoma law governs. *See* Fed. R. Civ. P. 69 (a); 12 O.S. § 1551.

Under Oklahoma law, the authority to appoint receivers is limited to those cases for which provision is made by statute. *See, e.g* 12 O.S. § 1551. A receiver may be appointed only when at least one of the following scenarios exist:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

(2) In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property or in connection with a mortgagee foreclosing his mortgage by power of sale under the Oklahoma Power of Sale Mortgage Foreclosure Act:

      a. where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or

      b. that a condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt, or

      c. that a condition of the mortgage has not been performed and the mortgage instrument provides for the appointment of a receiver.

(3) After judgment, to carry the judgment into effect.

(4) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or in proceeding in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.

(5) In the cases provided in this Code, and by special statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

(6) In all other cases where receivers have heretofore been appointed by the usages of the courts of equity.

Because Appellant anticipates the District Court's judgment will be reversed, there is no statutory basis available under 12 O.S. § 1551. Based on this reason, and analysis provided herein, none of these scenarios are present in this case. *See e.g., Pan. Timber Co. v. Barsanti*, 619 P.2d 872, 872 (Okla. Civ. App. 1980) ("The party requesting the appointment of a receiver has the burden, under Okla. Stat. tit. 12, § 1551.").

**B. Universitas Cannot Meet Its Burden Required To Establish a Statutory Basis under 12 O.S. § 1551, which Is Necessary to Appoint A Receiver Under Oklahoma Law.**

**1. 12 O.S. § 1551 (1) – Avon Capital-WY does not have property in danger of being lost, removed, or materially injured.**

Pursuant to 12 O.S. § 1551 (1), a creditor must show "that the property or fund is in danger of being lost, removed or materially injured." Here, on February 11, 2021, the District Court enjoined Avon Capital-WY from disposing of assets/membership interest in SDM Holdings. (App. Vol. 8 at 1956 (Doc. 228). Universitas identified no evidence that shows Avon Capital-WY has taken any action contrary to the injunction. (*See* App. Vol. 10 at 2336 (Doc. 290)). Based on this reason alone, Universitas has presented no evidence that Avon Capital-WY's membership interest is in imminent danger of suffering irreparable loss. *Truett v. Freedom Leaf, Ltd. Liab. Co.*, Okla Civ. App 26, ¶ 11 (Okla. Civ. App. 2021) (applying (12 O.S. § 1551 (1)) ("Where it seems doubtful 'there is imminent danger that the plaintiff will suffer irreparable loss, the application for a receiver will be denied.'") (internal citations omitted).

In his order, Judge Heaton acknowledged that Avon Capital-WY raised an argument pertaining to the District Court's injunction but did not address the substance of the argument. The District Court concluded that a "receiver is warranted" on the basis that "Avon appears to be insolvent" and entries that were made to SDM's balance sheet. (App. Vol. 11 at 2608 (Doc. 310 at 5) (Order on

Motions dated September 22, 2021)). But Judge Heaton's reliance on SDM Holdings' balance sheet ignores the fact that Avon Capital-WY and SDM Holdings are separate entities. It also ignores the fact that there has not been a finding that Avon Capital-WY has control over the preparation of SDM Holdings' financials, including SDM Holdings' balance sheet.

District Judge Heaton also relies on "factual" assertions which pertain to Daniel Carpenter and "Carpenter-related entities" as a basis for the appointment of a receiver. (App. Vol. 11 at 2608 (Doc. 310 at 7) (Order on Motions dated September 22, 2021)). As is more fully detailed in Avon Capital-WY's appeal of the District Court's finding of *alter ego* liability against Avon Capital-WY pending before this Court, Avon Capital-WY is not the entity identified in those events which resulted in entry of the New York Judgment. Avon Capital-WY was not a party to the New York proceedings. And as is conceded by Judge Heaton, these events occurred over six years ago. (App. Vol. 11 at 2610 (Doc. 310 at 7) (Order on Motions dated September 22, 2021) ("More importantly, the history of the Carpenter entities' efforts to avoid paying this judgment over the **past six or seven years** leaves the court with even less confidence that these assets will be maintained in place to satisfy the judgment if, at the conclusion of the process, Avon (Wyoming) is finally determined to be a judgment debtor.") (emphasis added)). This conclusion is not

based on evidence specifically related to Avon Capital-WY and is contrary to Avon Capital-WY's compliance with the District Court's injunction.

The forgoing factual representations concerning Daniel Carpenter and the Carpenter entities do not support a basis of "imminent danger" to Avon Capital-WY's membership interest in SDM Holdings. Universitas did not meet its evidentiary burden required to establish that Avon Capital-WY's membership interest in SDM Holdings is in "danger of being lost, removed or materially injured." 12 O.S. § 1551 (1). Thus, there was no statutory basis available under 12 O.S. § 1551 (1) for the District Court to appoint a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings.

### 2. <u>12 O.S. § 1551 (2) – there is no mortgage foreclosure in this case.</u>

It may be appropriate to appoint a receiver pursuant to 12 O.S. § 1551 (2), provided the action involves a mortgage foreclosure action brought pursuant to the Oklahoma Power of Sale Mortgage Foreclosure Act. Because the underlying action does not involve a mortgage foreclosure action, there is no statutory basis to appoint a receiver under 12 O.S. § 1551(2).

### 3. <u>12 O.S. § 1551 (3) & (4) – there is no judgment to enforce</u>

A prerequisite for application of 12 O.S. § 1551 (3) and (4) is that a "judgment" has been obtained. 12 O.S. §§ 1551 (3) ("After judgment . . ."), (4) ("After judgment . . .").

As discussed above, Universitas' motion to appoint a receiver was filed pursuant to Judge Heaton's finding of *alter ego* liability against Avon Capital-WY, which is currently on appeal before this Court in appeals consolidated under Appeal Nos. 21-6044 and 21-6049. Because an appeal of this finding is pending appeal before this Court, Universitas is not allowed to execute the New York Judgment against Avon Capital-WY. *See, e.g.,* 12 O.S. §§ 1551 (3) ("After judgment . . ."), (4) ("After judgment . . .").

In anticipation of this Court reversing the judgment entered by the District Court, there is no statutory basis available under 12 O.S. § 1551 (3) and (4) for the District Court appoint a receiver over Avon Capital-WY and Avon Capital's membership interest in SDM Holdings. *See, e.g.,* 12 O.S. § 1551 (3) - (4).

## 4. <u>12 O.S. § 1551 (5) – Avon Capital-WY is not a Corporation.</u>

Receivership may be appropriate over a corporation which "has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its **corporate** rights." 12 O.S. § 1551(5) (emphasis added). But Avon Capital-WY is a limited liability company, not an incorporated entity. For this reason, alone, 12 O.S. § 1551(5) does not apply.

Even if Avon Capital-WY were a corporation, it is well-established that states have no jurisdiction to institute laws which interfere in the management and affairs of foreign corporations, regardless of whether the entity is dissolved. *See, e.g., First*

*Capital Bank v. CSR-Nationwide Inc.*, 2011 Okla. Dist. LEXIS 3307, *5 (citing *Fehr v. Black Petro. Corp.*, 229 P. 1048, 1049 (Okla. 1924) ("The courts of a state or country . . . have no jurisdiction to interfere, by injunction or otherwise, in the management of the internal affairs of a foreign corporation.").

Universitas has failed to meet its evidentiary burden required to establish that Avon Capital-WY is a **corporation** that "is insolvent, or in imminent danger of insolvency." *See, e.g.,* 12 O.S. § 1551 (5). Thus, 12 O.S. § 1551 (5) does not provide a basis for the appointment of a receiver over Avon Capital-WY and Avon Capital-WY's membership interest in SDM Holdings.

### 5. <u>12 O.S. § 1551 (6)</u>

A court may appoint a receiver "[i]n all other cases where receivers have heretofore been appointed by the usages of the courts of equity." 12 O.S. § 1551(6). Here, the cases upon which Universitas relies to support application of 12 O.S. § 1551 do not provide appropriate factual comparisons to the record.

For instance, in *Okla. Co. v. O'Neil*, 440 P.2d 978, 980 (Okla. 1968), the Oklahoma Supreme Court appointed a receiver over an oil and gas lease based on a finding of wasteful practices in violation of the lease contract. Avon Capital-WY's membership interest is in a limited liability company, not an oil and gas lease. (*See* Section V.B. (Issue Five)). Universitas has presented no authority which supports rescission of a membership interest in a limited liability company. (App. Vol. 10 at

2466 (Doc. 296)).  And the receiver has found no mismanagement of Avon Capital-WY.

The remaining cases upon which Universitas relies are also factually not comparable to the record.  *See, e.g., Wells Fargo Bank, N.A. v. Mesh Suture,* No. 19-CV-03218-PAB-GPG, 2020 U.S. Dist. LEXIS 184773, at *6-7 (D. Colo. Feb. 10, 2020) (appointing a receiver over a funds in a bank account which were in imminent danger of being lost, concealed, or diminished in value if a receiver is not appointed); *EarthGrains Baking Cos. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2018 U.S. Dist. LEXIS 188349, at *3-4, 18 (D. Utah Nov. 2, 2018) (appointing a receiver following debtor's violation of a charging order).

Here, there is no evidence which shows Avon Capital-WY has taken action contrary to the injunction entered by the District Court.  Thus, unlike *Wells Fargo*, Universitas has presented no reliable evidence that Avon Capital-WY's funds are in imminent danger of being lost, concealed, or diminished in value.  (*See* App. Vol. 10 at 2466 (Doc. 296)).  And Universitas also does not seek recovery of bank assets and it has also not sought a charging order.  *See EarthGrains Baking*, No. 2:09CV523DAK, 2018 U.S. Dist. LEXIS 188349, at *3-4.

Universitas has failed to meet its burden required to establish application of 12 O.S. § 1551 (6), and the District Court abused its discretion in appointing a receiver pursuant to 12 O.S. § 1551.

### C. Furthermore, Even Assuming Universitas Met Its Burden, Factors Weigh Against Appointment of a Receiver.

Under Oklahoma state law, there are seven factors that Courts consider in weighing application of 12 O.S. § 1551. These factors are as follows:

> (1) the probability of plaintiff's success in the action and the possibility of irreparable injury to plaintiff's interests in the property;
> (2) probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;
> (3) financial position of the debtor;
> (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
> (5) inadequacy of available legal remedies;
> (6) lack of a less drastic equitable remedy; and
> (7) the likelihood that appointment of a receiver will do more good than harm.

*McKean v. McClure*, No. CIV-16-320-SPS, 2017 U.S. Dist. LEXIS 68904, at *10 (E.D. Okla. May 5, 2017); *see also American Bank & Trust Co. v. Bond International Ltd.*, 2006 U.S. Dist. LEXIS 58361, 2006 WL 2385309, at *8 (N.D. Okla. Aug. 17, 2006) (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993)); *see also Fleet Business Credit, LLC v. Wings Restaurants, Inc.*, 291 B.R. 50, 556 (N.D. Okla. 2003).

### 1. Universitas' probability of success is uncertain.

Based on the same reasons set forth above in Issues Two, Three, Four, and Five, Universitas' probability of success is uncertain. (*See* Section II (Issue Two) (the case was moot when and there was no longer a live case or controversy), III

(Issue Three (the District Court lacked subject matter jurisdiction once the case and claims became moot)), IV (Issue Four) (District Court lacked personal jurisdiction once the case and claims became moot); and V (Issue Five) (Oklahoma law does not authorize refiling of a foreign judgment in the same case and case number).

This factor weighs strongly in favor of Avon Capital-WY.

### 2. <u>Universitas cannot establish that fraudulent conduct is likely to occur with Avon Capital-WY's membership interest in SDM Holdings.</u>

Universitas' acknowledgement that Avon Capital-WY "may not" be engaged in ongoing fraud demonstrates that Universitas cannot meet its evidentiary burden under this factor. (*See* App. Vol. 10 at 2336 (Doc. 290 (Universitas' Brief in Support of Motion to Appoint Receiver) ("The fact that Avon's fraud may not be ongoing is irrelevant.")).

Universitas' sole support for this factor involves the conduct of entities other than Avon Capital-WY. (*See* App. Vol. 10 at 2348 (Doc. 290 at 13) (Universitas' Brief in Support of Motion to Appoint Receiver (identifying "fraudulently conveyed insurance policies owned by Ridgewood. [See Doc. #218].")); *see* App. Vol. 10 at 2348 (Doc. 290 at 13) (citing App. Vol. 8 at 1732 (Doc. 218)); *see, e.g.,* App. Vol. 8 at 1777 (Doc. 218) ("In a **December 2006** letter . . . [related to the] Ridgewood

transactions") (emphasis added).[4]  Furthermore, the activity related to these entities occurred up to fifteen years ago and is therefore hardly evidence that fraud is likely to occur at the present.  *See id.*

Universitas cannot meet its burden to establish that fraudulent conduct is likely to occur in the future with regard to Avon Capital-WY's membership interest in SDM Holdings.  This factor weighs in favor of Avon Capital-WY.

### 3.  Avon Capital-WY's Financial Position

Insolvency alone does not justify the appointment of a receiver.  *See, e.g., State ex rel. Barnett v. Creek Realty Co.*, 30 P.2d 160, 162 (Okla. 1933) (concluding that there was no indication that "any of the funds or assets . . . are being dissipated and that it is not applying the income from its assets to the liquidation of its indebtedness.")

Ever since the District Court entered its injunction, Avon Capital-WY has not transferred its membership interest in SDM Holdings. Thus, Avon Capital-WY's financial position is the same as when the injunction was entered by the District Court.  And this is undisputed by Universitas.  (*See* App. Vol. 10 at 2348 (Doc. 290 at 13) (Universitas' Brief in Support of Motion to Appoint Receiver) ("Avon does

---

[4] The Report and Recommendations cited by Universitas is a 73-page document.  (*See, e.g.,* App. Vol. 8 at 1760 (Doc. 218) (Magistrate Judge Mitchell's Report and Recommendations)).  Universitas did not cite specific evidence in the Report and Recommendations.

not have any assets other than SDM.")); App. Vol. 10 at 2351 at 2323 (Doc. 290 at 16 ("The asset(s) at issue is ownership rights, and in turn insurance policies….")))

This factor weighs slightly in favor of Avon Capital-WY.

### 4. Universitas cannot establish Avon Capital-WY's Membership interest in SDM Holdings, LLC is in imminent danger of being lost, concealed, injured, diminished in value, or squandered

The party requesting appointment of a receiver has the burden to establish the property at issue is in danger of being lost, removed, or materially injured in order to justify the appointment of a receiver. *See Panama Timer Co. v. Barsanti*, 619 P.2d 872 (Okla. 1980). The only evidence upon which Universitas relies to support this factor is reference to an insurance policy which lapsed nearly seven years ago.[5] Universitas' reliance on this evidence is misplaced.

First, as discussed in Section V (Issue Five), the property at issue under Oklahoma law is Avon Capital-WY's flow of profits (or surplus from a member's economic interest) in the units of SDM Holdings. *See* 18 O.S. § 2032 ("A capital interest is personal property. A member has no interest in specific limited liability company property."). And this is undisputed by Universitas. *See* App. Vol. 10 at

---

[5] App. Vol. 10 at 2351 (Doc. 290 at 16) (citing *Universitas Educ.*, 2014 U.S. Dist. LEXIS 3983 at *15 ("When Mr. Bursey was unable to transfer ownership of the four insurance policies, Charter Oak Trust ceased payment of premiums, and the policies lapsed, rendering them valueless.")).

2351 (Doc. 290 at 16) (Universitas' Motion to Appoint Receiver) ("The asset(s) at issue is ownership rights, and in turn insurance policies...")).

Second, Universitas has not established that Avon Capital-WY is involved in the management of the life insurance policies owned by SDM Holdings; that Mr. Bursey is in any way connected to Avon Capital-WY; and that Mr. Bursey is in any way involved with the policies legally owned by SDM Holdings (and by Avon Capital-WY).

Universitas has failed to demonstrate that Avon Capital-WY's membership interest in SDM Holdings is in imminent danger of being lost, concealed, injured, diminished in value, or squandered.

Furthermore, the District Court has enjoined Avon Capital-WY from disposing of assets/membership interest in SDM Holdings. (App. Vol. 10 at 2338 (Doc. 290) (Universitas' Brief in Support of Motion to Appoint Receiver)). And there is no evidence that shows Avon Capital-WY has taken any action contrary to the injunction. This factor also weighs in favor of Avon Capital-WY.[6]

## 5. <u>The appointment of a receiver is not an adequate remedy.</u>

Universitas' only support for this factor is the acts of Daniel Carpenter, and relatedly Carpenter's failure to pay the New York Judgment. (*See* App. Vol. 10 at

---

[6] Universitas' sole support for this factor is events that occurred five to ten years ago. (App. Vol. 10 at 2342-2343 (*See* Doc. 290 at 7-8)).

2342-2343 (Doc. 290 at 7-8)).  This is the same argument (and Universitas' attempts to hold Avon Capital-WY responsible for Carpenter's acts based on an unpled theory of *alter ego* liability) is currently on appeal before this Court in this consolidated appeal.

Moreover, Universitas provides no support for the conclusion that another party's failure to pay a judgment is sufficient reason to appoint a receiver over a separate limited liability company when there is a finding of *alter ego* liability on appeal.  (*See* App. Vol. 10 at 2336 (Doc. 290) (Universitas' Brief in Support of Motion to Appoint Receiver)).  Universitas has not met its burden required to demonstrate that the appointment of a receiver is an adequate remedy.

Furthermore, the District Court has already enjoined Avon Capital-WY from disposing of assets/membership interest in SDM Holdings.  (App. Vol. 8 at 1956 (Doc. 228)).  And Universitas presented no evidence that shows Avon Capital-WY has taken any action contrary to the injunction.

Accordingly, the District Court's injunction is an adequate remedy until there has been a determination on Avon Capital-WY's consolidated appeal.  It is a drastic remedy to appoint a receiver when there is no certainty that the District Court's determination on *alter ego* will be upheld. Universitas has presented no convincing evidence as to why its legal remedies are inadequate.  Further, Universitas has presented no convincing evidence as to why the current equitable remedy (and

injunction preventing the transfer ETC of any assets) is inadequate. This factor weighs in favor of Avon Capital-WY.

### 6. The Court's appointment of a receiver is a drastic remedy.

Universitas provided no argument on this factor. (*See* App. Vol. 10 at 2336 (Doc. 290)). Therefore, Universitas has waived argument on this factor and it weighs in favor of Avon Capital-WY.

### 7. Universitas cannot demonstrate that the appointment of a receiver would do more good than harm.

When evaluating the seventh factor, Courts consider the "possibility that appointment of a receiver may destabilize and diminish the value" of the property which is sought to be placed into receivership. *See, e.g., PNC Bank, N.A. v. Presbyterian Ret. Corp.*, No. 14-0461-WS-C, 2014 U.S. Dist. LEXIS 159724, at *40 (S.D. Ala. Nov. 13, 2014) ("There is a real risk that receivership may do more harm than good . . . and the possibility that appointment of a receiver may destabilize and diminish the value of Westminster Village").

Here, Universitas claims the appointment of a receiver would do more good than harm on the basis that the only harm caused by the appointment of a receiver would be the cost to appoint a receiver, which it argues would be "more than offset by the need for a receiver to preserve and protect assets pending this litigation." (App. Vol. 10 at 2351 (Doc. 290 at 16) (Universitas' Brief in Support of Motion to

Appoint Receiver)).[7]   However, Universitas failed to identify any evidence under this factor which points to the "need" for the appointment of the receiver.  Thus, this overly generalized argument fails to set forth any evidence which supports this factor.

Based on the forgoing analysis, Universitas cannot meet the burden necessary to appoint a receiver over Avon Capital-WY.  The factors weigh in favor of Avon Capital-WY and against the appointment of a receiver.

The Court should respectfully reverse the District Court's appointment of a receiver over Appellant Avon Capital-WY and Avon Capital-WY's ownership interest in SDM Holdings, and vacate the Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY.

## CONCLUSION AND RELIEF SOUGHT

Appellant Avon Capital-WY prays that this Court enter an order which finds: (1) consistent with its August 4, 2023 order, the case became moot on December 3, 2020, at which time Appellant was no longer (and is no longer) party to any case or controversy and any claims became moot, and the Court's prior finding that the District Court lacked Article III jurisdiction is law of the case and that the District

---

[7] Since the appoint of a receiver, Universitas has requested that Avon Capital-WY fund the actions of the receiver, which was appointed at Universitas' request and over Avon Capital-WY's objection.  The receiver has also exercised Avon Capital-WY's membership right in SDM Holdings to replace the manager of SDM Holdings.

Court lacked jurisdiction to reappoint a Receiver over Avon Capital-WY; (2) vacates the District Court's Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY that followed the District Court's loss of jurisdiction pursuant to 12(b)(1) and 12(b)(2), and assessment of all fees, expenses, and costs against Appellee Universitas related to the receiver and the receivership appointed over Avon Capital-WY; and (3) remand with direction for the District Court to terminate proceedings based on its loss of subject matter jurisdiction and personal jurisdiction on December 3, 2020 when the New York Judgment expired, and that upon expiration of the New York Judgment the District Court could not regain subject matter jurisdiction and personal jurisdiction over Appellant without Appellee Universitas having filed the New York Judgment in a new action (and with a new case number) and upon service of process having been properly effected on each Appellant.

Provided that the Court does not grant the foregoing relief, and the District Court is held to have regained subject matter jurisdiction and personal jurisdiction over Appellant (and it has not), Appellant prays that this Court enter an order that: (1) reverses the District Court's appointment of a receiver over Appellant Avon Capital-WY for those reasons detailed in this brief; (2) vacates the Orders Related to Reappointment of a Receiver over Appellant Avon Capital-WY and its membership interest in SDM Holdings; (3) assess all fees, expenses, and costs

against Appellee Universitas related to the receiver and the receivership reappointed over Avon Capital-WY; and (4) that Avon Capital-WY receive such other relief to which it is justly entitled, including the costs for this appeal.

/s/ Alan L. Rupe
Alan L. Rupe
Francis Michael Schneider
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com

*Attorneys for Appellant Avon Capital, LLC, a Wyoming limited liability company*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument on each of the issues identified in this consolidated brief Appeal Nos. 24-6006 and 24-6033. This consolidated appeal implicates issues of subject matter jurisdiction and personal jurisdiction that Appellant respectfully requests a hearing to fully explore.

/s/ Alan L. Rupe
Alan L. Rupe
Francis Michael Schneider
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:     (316) 609-7900
Facsimile:     (316) 462-5746
alan.rupe@lewisbrisbois.com
francis.schneider@lewisbrisbois.com

*Attorneys for Appellant Avon Capital, LLC, a Wyoming limited liability company*

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 32(a)**
**& THE COURT'S ORDER ENTERED ON JANUARY 23, 2024**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.      Appellant's Consolidated Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(b) because the principal brief contains 12,988 words, excluding the parts of Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32.

2.      Appellant's Consolidated Opening Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using a 14-point Times New Roman font.

/s/ Alan L. Rupe
Alan L. Rupe

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I electronically filed Appellant's Consolidated Opening Brief with the Clerk of Court and will mail seven (7) hard copies to the Court.

/s/ Alan L. Rupe
Alan L. Rupe

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                        Petitioner,

       -against-

NOVA GROUP, INC.,

                       Respondent.

--------------------------------------------------------------X

USDC SDNY
DOCUMENT      475
ELECTRONICALLY FILED 08/12/2014

11 **CIVIL** 1590 (LTS) (HBP)
11 **CIVIL** 8726 (LTS) (HBP)

## JUDGMENT

Whereas following entry of judgment in its favor in the above captioned-actions, Universitas Education, LLC ("Petitioner") having moved seeking, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") section 5225(b) and Federal Rules of Civil Procedure 69, the turnover of assets by respondent Daniel E. Carpenter and his affiliated entities Grist Mill Capital, LLC, Grist Mill Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust Company, Carpenter Financial Group and Phoenix Capital Management, LLC (with Carpenter, the "Turnover Respondents"), as well as permanent injunctive relief barring the transfer by the Turnover Respondents of money and assets, including certain specified insurance policies, until Petitioner's judgment against Nova Group, Inc., has been satisfied (Docket entry no. 308 in case number 11 Civ. 1590); Mr. Carpenter and certain third parties having moved to modify the temporary injunction to allow transactions between themselves and certain of the Turnover Respondents (See docket entry nos. 409, 412, and 448 in 11 Civ. 1590), and the matter having come before the Honorable Laura Taylor Swain, United States District Judge, and the Court, on August 7, 2014, having rendered its Memorandum Opinion and Order granting Petitioner's turnover motion, granting Petitioner money judgments as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $ 11,140,000.00;

against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; directing the Clerk of the Court to enter judgment against the Turnover Respondents accordingly; Liability under the judgment is joint and severally; denying as moot Petitioner's request for permanent injunctive relief; denying each of the third-party motions to modify the preliminary injunction, docket entry numbers 409, 412, and 448 in 11 Civ. 1590, as the primary injunction is hereby terminated pursuant to the provisions of the January Order, because Petitioner's motion for turnover has been resolved, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated August 7, 2014, Petitioner's turnover motion is granted; Petitioner is hereby granted money judgments against the Turnover Respondents as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly and severally; Petitioner's request for permanent injunctive and other equitable relief are denied; each of the third-party motions to modify the preliminary injunction, docket numbers 409, 412, and 448 in 11 Civ. 1590 are denied as moot, as the preliminary injunction is hereby terminated pursuant

to the provisions of the January Order, because Petitioner's motion for turnover has been resolved.

**Dated:**  New York, New York
August 12, 2014

**RUBY J. KRAJICK**

BY: _____
**Clerk of Court**

K. Mango
_____
**Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON ___8/12/2014___

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
|     Petitioner/Judgment Creditor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
|     Respondent/Judgment Debtor, | ) | |
| | ) | |
| ASSET SERVICING GROUP, LLC, | ) | |
| | ) | Case No. 14-FJ-05-HE |
|     Respondent/Garnishee, | ) | |
| | ) | |
| SDM HOLDINGS, LLC, | ) | |
| | ) | |
|     Respondent/Garnishee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AVON CAPITAL, LLC, a Wyoming Limited Liability Company, | ) | |
| | ) | |
|     Intervenor. | ) | |

REPORT AND RECOMMENDATION

# Table of Contents

I.    INTRODUCTION. ........................................................................... 1

II.   BACKGROUND. ........................................................................... 4

    A. Universitas was the sole beneficiary to certain life insurance proceeds. .......................................................................... 4

    B. Universitas did not receive those proceeds. ......................................... 5

    C. The creation of the three Avon Capital, LLC entities. ....................... 8

    D. The trail of Avon proceeds. ................................................. 11

    E. Avon-CT's transactions. .................................................... 13

        1. The Ridgewood credit facility agreement. ............................... 13

        2. The Ridgewood facility's funding of Charter Oak Trust policies and their resale. .............................................................. 16

    F. Avon-WY's transactions. ................................................... 20

        1. The SDM purchase. ...................................................... 20

        2. Andrew Terrell consults for Avon-WY. ................................. 25

        3. Avon-WY's 2010 "unloading" of Avon-CT's life insurance policies. ................................................................. 26

III.  THIS COURT HAS SUBJECT MATTER JURISDICTION. ............................. 29

IV.  THE EFFECT OF THE REGISTRATION OF THE JUDGMENT. ........................ 33

V.   THE COURT DENIES THE MOTIONS TO STRIKE THE CHERNOW DECLARATIONS. ........................................................................ 34

VI.  THE COURT CONSIDERS UNIVERSITAS'S AND AVON-WY'S MOTIONS FOR SUMMARY JUDGMENT. ............................................................. 36

    A. Standard of review. ......................................................... 36

B. The Court grants Universitas's motion for summary judgment: Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor. ................................................................ 38

    1. Fraud confirms this. ............................................................ 42

        a. Lack or inadequacy of consideration. ........................... 43

        b. Close familial relationship or friendship among the parties. ......................................................................... 44

        c. Retention of possession or benefit of the property transferred. ...................................................................... 46

        d. Change in financial condition of transferor in relation to the transfer. ................................................................... 47

        e. Chronology of events surrounding the transfer. ........... 47

        f. Transfer takes place during the pendency or threat of litigation. ....................................................................... 50

        g. Hurried or secret transactions. .................................... 51

        h. Conclusion. ................................................................... 53

    2. Undercapitalization confirms this. ........................................ 54

    3. Intermingling confirms this. ................................................. 56

    4. Injustice confirms this. ......................................................... 60

    5. Conclusion. .......................................................................... 61

C. The Court denies Avon-WY's motion for summary judgment. ......... 62

VII. THE COURT DENIES SDM'S MOTION TO QUASH THE GARNISHMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT. ............................................. 65

VIII. THE COURT DENIES UNIVERSITAS'S MOTION TO STRIKE SDM'S MOTION TO QUASH AND ITS REQUEST FOR SANCTIONS AGAINST SDM. ........................ 67

IX. CONCLUSION. .................................................................................. 68

X. RECOMMENDATIONS AND NOTICE OF RIGHT TO OBJECT. ......................... 69

## I.   INTRODUCTION.

Petitioner Universitas Education, LLC seeks enforcement of a $6,710,065.92 judgment entered in its favor on August 12, 2014 by the United States District Court for the Southern District of New York ("*Nova SDNY Litig*[*ation*]."). *See* Doc. 1.[1]   The Judgment was against Daniel E. Carpenter and his various entities, including "Avon Capital, LLC."   *Id.*   United States District Judge Joe Heaton referred all post-judgment collection matters to the undersigned Magistrate Judge consistent with 28 U.S.C. § 636(b)(3).   Doc. 8.

In November 2014, the Southern District of New York permitted Universitas to register the $6,710,065.92 judgment in this district.   Doc. 1, Att. 2.   After doing so, Universitas sought an examination hearing regarding Judgment Debtor Avon Capital's potential ownership interests in Garnishee SDM Holdings, LLC (SDM).   Intervenor Avon Capital, LLC, a Wyoming LLC (Avon-WY), sought a permanent injunction to prohibit Universitas from enforcing the judgment against SDM or any of Avon-WY's other assets.   Doc. 73.   This Court denied that injunction.   Doc. 92.   Instead, the Court allowed limited discovery "to locate and identify Avon Capital, LLC's assets," to "determine the relationship between three allegedly distinct Avon Capital,

---

[1]   Citations to a court document are to its electronic case filing designation and pagination.   Deposition testimony deviates from this practice by instead using the deposition page number.   Except for capitalization, quotations are verbatim unless otherwise indicated.

LLC entities," and SDM, "in aid of execution" of the judgment.  Doc. 158, at 2 (affirming Doc. 150).

Before the Court, now, are:

(1) Avon-WY's motions to strike two declarations, Docs. 193, 213, and SDM's motion to join Avon-WY's first motion to strike, Doc. 196;

(2) Universitas's motion for summary judgment to impose alter-ego liability on Avon-WY for the full amount of the judgment against Avon Capital LLC, Doc. 186;

(3) Avon-WY's motion for summary judgment dismissing Universitas's claims seeking to pierce the corporate veil, Doc. 194;

(4) SDM's motions to quash garnishment and for partial summary judgment, Docs. 191, 192; and

(5) Universitas's motion to strike SDM's motion to quash, Doc. 208.

In its first motion, Universitas argues that Avon-WY is an alter ego of the two other Avon Capital, LLC entities, and that all three "were operated as a singular Avon Capital, LLC," which is a named judgment debtor.  Doc. 187, at 18.  Universitas asserts Avon-WY's alter-ego status should compel the Court to pierce the corporate veil and reach Avon-WY's assets (namely, SDM) to satisfy the judgment.  *Id.* at 24.  Universitas asks this Court to transfer Avon-WY's ownership of SDM to Universitas to satisfy the judgment, *id.* at 32, and,

if the Court declines to do so, to "enjoin Avon-WY from transferring ownership of SDM elsewhere."  Doc. 201, at 10.

Avon-WY argues it is not a judgment debtor and that Universitas lacks evidence to establish that Avon-WY is "an alter ego of any judgment debtor." Docs. 195, 204.  In support of that contention, Avon-WY filed motions to strike two declarations by Benjamin Chernow, which Universitas included in its Motion for Summary Judgment, Doc. 187, Att. 1, and its Response to Avon-WY's Motion for Summary Judgment, Doc. 205, Att. 1.  *See* Docs. 193, 213.

SDM, in turn, seeks partial summary judgment.  Doc. 192.  It argues that SDM was "never properly served with the garnishment summons," that no claims remain against SDM, and that SDM is neither indebted to nor holds assets of the judgment debtor.  *Id.* at 5-10.  SDM seeks to join Avon-WY's motion to strike the first Chernow declaration, Doc. 196, and moves to quash the garnishment summons.  Doc. 191.  In response, Universitas has moved to strike SDM's motion to quash—in addition to seeking sanctions against SDM, accusing SDM of "improper motion practice."  Doc. 208, at 1.  Specifically, Universitas alleges that SDM's purpose in "filing the same argument three times [is] . . . 'to harass, delay, or increase the cost of litigation.'"  *Id.* at 2.

Having reviewed the parties' extensive submissions, the undersigned recommends the Court (1) DENY Avon-WY's motions to strike, (2) GRANT SDM's motion to join, (3) GRANT Universitas's motion for summary judgment

3

and find that Avon-WY is the alter ego of the two other Avon Capital, LLC entities involved here, (4) DENY Avon-WY's motion for summary judgment, (5) DENY SDM's motions to quash and (6) for partial summary judgment, and (7) DENY Universitas's motion to quash and its request for sanctions against SDM. The undersigned recommends the Court (8) ENJOIN Avon-WY from transferring, alienating, and/or concealing or encumbering its ownership of any interest in SDM; and (9) ENJOIN Avon-WY, Avon-CT, and Avon-NV from transferring, alienating, and/or concealing or encumbering any non-exempt property.

## II.   BACKGROUND.

### A. Universitas was the sole beneficiary to certain life insurance proceeds.

Judge Heaton has provided helpful background in this matter:

> Universitas was the sole beneficiary of several life insurance policies totaling $30 million in proceeds. *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 100-01 (2d Cir. 2015). When the death benefits came due, however, Universitas's claim to those benefits was denied. *Id.* Universitas participated in binding arbitration with the trustee of the benefit plan, and obtained a favorable award. *Id.* The plan trustee sought to vacate the award in the U.S. District Court for the Southern District of New York, but the award was confirmed and judgment was entered for $30,181,880.30. *Id.*

Doc. 92, at 2.

**B. Universitas did not receive those proceeds.**

The Southern District of New York turnover proceeding, referenced above, found that Daniel Carpenter fraudulently transferred $30 million of life insurance policy proceeds from the Charter Oak Trust, of which Universitas was the sole beneficiary.[2]  *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *2 (S.D.N.Y. Aug. 7, 2014) [hereinafter *Aug. 2014 Nova*].

_____

[2]    A court may "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).  The Court will not consider these documents for the truth of the matters asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that judicially noticed "documents may only be considered to show their contents, not to prove the truth of matters asserted therein").

Under Rule 201, a court may take judicial notice of adjudicative facts not subject to reasonable dispute at any point in the proceedings.  An adjudicative fact is a fact "concerning the immediate parties-who did what, where, when, how, and with what motive or intent." Fed. R. Evid. 201 advisory committee's note (quoting 2 Kenneth C. Davis, *Administrative Law Treatise* at 353 (1958)). Adjudicative facts must, by definition, be relevant.  21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104 at 483-84 (1977).

The Court takes judicial notice from this proceeding and from two cases intertwined with the current action.  First, the Court relies on the turnover action (*Nova SDNY Litig.*) between Universitas and judgment-debtor Nova Group, Inc.  *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. CIV-11-1590-LTS-HBP, 2012 WL 2045942 (S.D.N.Y. Jun. 5, 2012).  Second, the Court cites the criminal action against Carpenter, which the Second Circuit affirmed.  *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. 2016), *aff'd sub nom., United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020).  Both offer adjudicative facts involving the immediate parties and who did what, when, where, how, and with what motive or intent.  Universitas and Avon-WY have also relied on courts' findings, depositions, and other materials from these proceedings.  *See e.g.*, Doc. 195, at 4 n.1 & Att. 5; Doc. 187, Att. 21.

These "fraudulent transfers" were made to a number of shell entities that were under Carpenter's control at all relevant times. *Id.* In fact, Carpenter controlled "hundreds of . . . entities" that he used "to hide assets from [Universitas]." *Id.* From May 2009 to October 2010, some of those entities were: Nova Group, Inc. (Nova); Charter Oak Trust; Grist Mill Capital, LLC (Grist Mill Capital); Grist Mill Trust Welfare Benefit Plan (Grist Mill Trust); Grist Mills Holdings, LLC (Grist Mill Holdings); Phoenix Capital Management, LLC (Phoenix); Caroline Financial Group, Inc. (Caroline Financial); Avon Capital, LLC; and Carpenter Financial Group (Carpenter Financial). *Id.* at *2. Of these, Nova, Grist Mill Capital, Grist Mill Trust, Grist Mill Holdings, Phoenix, Avon, and Carpenter Financial[3] are all either judgment debtors or alter egos of judgment debtors. Doc. 147, Att. 29, at 2-3.

The *August 2014 Nova* court also identified Wayne Bursey (President of Nova and Trustee of Charter Oak Trust) as "Mr. Carpenter's confederate in the fraudulent transfers." 2014 WL 3883371, at *2. And Bursey "was the only signatory on the Charter Oak Trust accounts." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 6123104, at *2 (S.D.N.Y. Nov. 20, 2013) [hereinafter *Nov. 2013 Nova*].

---

[3]    Carpenter Financial Group, LLC is also an alter ego of a judgment debtor. Doc. 147, Att. 29, at 2.

The *August 2014 Nova* court stated that "Avon was controlled by its managing member, Grist Mill [Capital], which is wholly owned by its members Grist Mill Holdings and Caroline Financial [ ]both of which were wholly owned by Mr. Carpenter." 2014 WL 3883371, at *3. Carpenter is Chairman of Caroline Financial. *Id.* Caroline Financial served as a member of both Grist Mill Capital and Grist Mill Holdings.[4] Doc. 205, Att. 2, ¶¶ 1, 25. And, as noted, Grist Mill Holdings also was a member of Grist Mill Capital. *August 2014 Nova*, 2014 WL 3883371, at *3. In his testimony, Carpenter admitted Grist Mill Holdings is his "alter ego for collecting commissions." *Id.*

During Carpenter's criminal trial, the trial court stated "[t]he evidence establishe[d] beyond a reasonable doubt that [Carpenter] conspired with . . . Don Trudeau, among others" to commit life insurance fraud.[5] *Carpenter*, 190 F. Supp. 3d at 299.

---

[4]     The *Nov. 2013 Nova* court stated Grist Mill Capital's members were Caroline Financial Group, and Grist Mills Holdings, and that Bursey was a manager. 2013 WL 6123104, at *3. Grist Mill Capital's Articles of Organization list Jack Robinson and Bursey as its managers. Doc. 147, Att. 13. Robinson is an attorney and manager of Grist Mill Capital, and is affiliated with several of Carpenter's entities and served as general counsel of Benistar Admin Services (Benistar or BASI) "for a period of time." Doc. 187, Att. 6, at 42; *id.* Att. 12; *see also* Doc. 147, Att. 31. Robinson is also Nova's former attorney. *Nov. 2013 Nova*, 2013 WL 6123104, at *2.
        BASI is one of the entities the *Carpenter* court found Carpenter controlled. 190 F. Supp. 3d. at 273. BASI provided administrative services to other Carpenter-controlled entities, and their employees "received their paychecks from BASI." *Id.*
[5]     Trudeau is one of Carpenter's affiliates and served in different roles in

7

## C. The creation of the three Avon Capital, LLC entities.

On June 6, 2006, Avon Capital, LLC filed articles of organization with the Nevada Secretary of State, forming a Nevada limited liability company (Avon-NV). Doc. 57, Att. 1, at 3-4. Avon-NV's managing member was Grist Mill Capital. *Id.* at 3. Trudeau testified he did not have "any involvement" with Avon-NV. Doc. 187, Att. 6, at 23, ln. 19.

On November 21, 2006, Bursey, as the organizer, filed articles of organization on behalf of Avon Capital, LLC with the Connecticut Secretary of State, forming a Connecticut limited liability company (Avon-CT). Doc. 57, Att. 2, at 1. At the time of incorporation, Bursey and Robinson were listed as its managers. Doc. 147, Att. 17; Doc. 195, Att. 2. Trudeau testified that he, Bursey, and Robinson served as managers of Avon-CT around November 2006. Doc. 187, Att. 6, at 41, lns. 14-21.

On May 18, 2007, Avon Capital, LLC filed articles of organization with the Wyoming Secretary of State, forming a Wyoming limited liability company (Avon-WY). Doc. 147, Att. 6. Avon-WY was administratively dissolved in June 2009 for failure to maintain a registered agent, and Trudeau, acting as principal, applied to reinstate it on November 15, 2010. *See id.* Att. 9; Doc. 57,

---

Carpenter's enterprises. *See, e.g.*, Doc. 147, Att. 31 (listing him as director of BASI). "Don Trudeau was the President of BASI, and [Carpenter]'s wife, Molly Carpenter, was its Chairman." *Carpenter*, 190 F. Supp. 3d at 273.

Att. 6, at 3.  Avon-WY was again administratively dissolved in July 10, 2011 for tax reasons, and Trudeau reinstated it on November 28, 2011.  Doc. 57, Att. 6, at 2-3.

At the time of incorporation in 2007, and after its reinstatements, Caroline Financial was Avon-WY's manager.[6]  Doc. 147, Att. 6; Doc. 57, Att. 6. Counsel for Avon-WY has stated that Trudeau served as a member and officer of Avon-WY before its 2010 reinstatement.  Doc. 187, Att. 11; *see also* Doc. 171, Att. 4, at 2, lns. 2-3; Doc. 58.  Trudeau testified he was "the managing member" after reinstating Avon-WY.  Doc. 187, Att. 6, at 17-18.  Caroline Financial also continued to serve as managing member after Avon-WY's reinstatement.  *Id.* Att. 11; Doc. 147, Att. 8.  Trudeau was the only authorized signatory for Avon-WY.  Doc. 187, Att. 10, at 232, lns. 22-24.

Avon-WY was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  Doc. 171, Att. 4, at 2, lns. 17-25. Avon-CT was also ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  Doc. 187, Att. 4, at 2, lns. 18-28.  In 2010, Avon-NV was also ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial.  *Id.* Att. 5.  Avon-WY, Avon-CT, and Avon-NV each had its principal address at 100 Grist Mill Road, Simsbury, CT

---

[6]     Trudeau also stated that Caroline Financial was Avon-WY's managing member in July, 2010.  Doc. 171, Att. 4, at 2, ln. 23.

06070.  *See* Doc. 92, at 5; Doc. 147, Atts. 6, 13; Doc. 57, Att. 1.[7]  Carpenter controlled both Caroline Financial and Carpenter Financial.  *August 2014 Nova*, *Aug. 2014 Nova*, 2014 WL 3883371, at *3.  Bursey listed the same Grist Mill address as his business and residential address.  Doc. 147, Att. 17.  Grist Mill Capital (managing member of Avon-NV), Grist Mill Trust, and Grist Mill Holdings also have the same address.  Doc. 92, at 5 n.4.  Trudeau testified Benistar has its offices at the same address.  Doc. 195, Att. 5, at 14, lns. 9-11.

In November 2013, Carpenter averred he served as chairman of Caroline Financial, which in turn served as the managing member of Avon-WY.  Doc. 147, Att. 8; Doc. 205, Att. 2, ¶ 1.  The *Nova* courts identified Caroline Financial as one of Carpenter's wholly owned and controlled "shell companies," one of the shell entities he used to hide assets from Universitas.  *Nov. 2013 Nova*, 2013 WL 6123104, at *5, *8; *Aug. 2014 Nova*, 2014 WL 3883371, at *2, *5, *8.

Carpenter testified he was "privy" to each of the three Avon Capital entities.  Doc. 147, Att. 5, at 144, lns. 12-16.  He "definitely knew about [Avon-CT]."  *Id.* lns. 15-16.  According to Carpenter, unlike Avon-WY, Avon-NV did not engage in any life settlement transactions.  *Id.* at 146, lns. 3-6.  He also asserted it never had any employees or office space.  *Id.* lns. 10-16.

---

[7]     On November 28, 2011, Avon-WY updated its principal address to 300 1st Stamford Place, Suite 201, Stamford, CT 06902, but retained its mailing address in Simsbury.  Doc. 57, Att. 6, at 2.

Carpenter testified because Wyoming had few prohibitions or regulations for life settlement transactions, he thought "it would be best" to have a Wyoming LLC as opposed to a Nevada or Delaware LLC for those transactions. *Id.* at 147, lns. 2-16. Trudeau similarly testified. Doc. 187, Att. 6, at 18-20. "Carpenter is listed as the signatory on both of Avon Capital's bank accounts." *Carpenter*, 190 F. Supp. 3d at 273.



### D. The trail of Avon proceeds.

Among the fraudulent transfers the *August 2014 Nova* court identified, was a November 11, 2009 $6,710,065.92 transfer from Grist Mill Capital to Avon Capital, LLC. 2014 WL 3883371, at *3. The Avon Capital, LLC account

was held at TD Bank, with an account number ending in 4689 (Avon-NV TD bank account).[8]  Doc. 56, at 4; Doc. 57, Att. 1, at 1.

That transfer, like the others the *August 2014 Nova* court outlined, "were without documentation or consideration, a clear sign of fraud."  2014 WL 3883371, at *3.  "Nova and Mr. Carpenter resisted all discovery efforts to determine the whereabouts of [proceeds] after the transfers, and such secrecy further indicates a fraudulent intent."[9]  *Id.*  The court assessed a judgment of that same amount ($6,710,065.92) against Avon Capital, LLC.  *Id.* at *13.

During the month of December 2009, the Avon-NV TD bank account had large-sum withdrawals and deposits to and from bank accounts also controlled by Carpenter.  *See* Doc. 147, Att. 22.   After the November 11, 2009

---

[8]     Carpenter opened that bank account (one of the two "Avon Capital, LLC' accounts maintained in 2009-2010) on May 20, 2009.  Doc. 147, Att. 13; *Carpenter*, 190 F. Supp. 3d. at 273 ("Mr. Carpenter is listed as the signatory on both of Avon Capital's bank accounts.").  Carpenter opened this not long after an unsuccessful attempt to open a Charter Oak Trust account at Bank of America.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 2, at 64 (S.D.N.Y. Oct. 21, 2013) (May 14, 2009 email from Carpenter to Jeffrey Roman at U.S. Trust, Bank of America, complaining "that I was not allowed to do wires any more at [Bank of America] on Avon Capital which is a Company that I created and which has control over millions of dollars of assets in several trust accounts").

[9]     The SDNY sanctioned Nova for its "dilatory conduct during the course of post-judgment discovery," "efforts to frustrate Universitas' enforcement of the judgment," noting the Second Circuit encouraged a sanction aimed at deterring Nova's "persistent and abusive litigation conduct."  *Universitas Educ., LLC v. Nova Grp., Inc.*, No. CIV-11-1590-LTS-HBP, 2016 WL 2944646, at *3-5 (S.D.N.Y. Mar. 31, 2016), *adopted*, Doc. 598 (S.D.N.Y. May 16, 2016).

$6,710,065.92 deposit from Grist Mill Capital, the Avon-NV TD bank account had a November 30, 2009 balance of $6,745,794.16. *Id.* at 1. On December 30, 2009, the balance was $938,454.59; and on December 31, 2009, the balance was $160,683.29. *Id.* at 1, 3. Some of the transfers in the month included a December 3, 2009 $6.5 million transfer to a TD bank account ending in 7136 (Grist Mill Holdings TD bank account),[10] two deposits late in the month (totaling $1,292,469.36) from a bank account ending in 4697 (Carpenter Financial TD bank account), and wire transfers to H. Thomas Moran. *Id.* at 1, 3; *see also Carpenter*, No. CR-13-226-RNC, Doc. 207, at 22 (Government Exhibit List) (identifying Grist Mill Holdings and Carpenter Financial TD bank accounts).

### E. Avon-CT's transactions.

#### 1. The Ridgewood credit facility agreement.

Trudeau testified Avon-CT was "originally formed with specific capitalization and transaction structures in mind." Doc. 187, Att. 6, at 10, lns. 4-6. "[I]t was part of a joint facility with Grist Mill Capital, a $35 million facility." *Id.* lns. 13-14. He testified he thought "Ridgewood[11] was the actual

---

[10]     Doc. 171, Att. 8 (Grist Mill Holdings' TD bank account statement for November 2009 showing the last four digits of 7136 as the account number); *Carpenter*, 190 F. Supp. 3d at 295 (identifying TD bank account ending in 7136 as belonging to Grist Mill Holdings).

[11]     "Ridgewood [Finance Inc.] was a portfolio company" that was "set up as a speciality finance lender. In this capacity, Ridgewood made loans to other

issuing entity." *Id.* lns. 20-21. "And so all of the assets and activities basically that were conducted in [Avon-CT] were subject to that pledge and credit agreement." *Id.* at 10-11; *see Carpenter*, 190 F Supp. 3d at 279 (outlining Ridgewood credit facility agreement). That agreement, signed by Carpenter as "Chairman of [the] Managing Member" of Avon-Capital LLC, stated the financing was "for the purpose of funding AVON CAPITAL LLC's underlying loan to AVON INSURANCE TRUST on financing premium of a Life Insurance Policy." Doc. 187, Att. 9, at 3, 1; *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3328746, at *2 (S.D.N.Y. July 2, 2013) ("Grist Mill [Capital], Avon Capital, Charter Oak Trust and Avon Insurance Trust are entities that are closely related to Nova Group. As collateral for this loan, Ridgewood Finance, Inc. took a security interest in the life insurance policies held by Charter Oak Trust and Avon Insurance Trust.").

"The parties agreed that Christiana Corporate Services, Inc. . . . would act as the [document custodian] and insurance trustee." *Carpenter*, 190 F. Supp. 3d. at 279. "If Ridgewood decided to fund the policy, it would issue a commitment letter to Bursey, who acted as the trustee of [Charter Oak Trust] and Kathy Kehoe, a Benistar employee."[12] *Id.* If Ridgewood authorized the

---

finance companies, often at high rates of interest." *Carpenter*, 190 F. Supp. 3d at 278-79.

[12]   Kathy Kehoe served as the Manager of the Trust Department of Benistar, since 2003. *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 337,

funding, it "would then direct Christiana to transfer the funds to an account in [Charter Oak Trust]'s name at PNC Bank . . . ." *Id.* at 280.

Trudeau testified that one of the Ridgewood facility's insureds was Rella Waldman, and that Trudeau was involved in that transaction. *See* Doc. 187, Att. 3, at 56; Att. 9. Trudeau further testified he was aware Avon-CT provided support services for Avon Insurance Trust. *Id.* Att. 3, at 57, lns. 14-16.

In a December 2006 letter from Robinson as Grist Mill Capital manager to Christiana, Robinson requested the creation of a custody account for Avon Capital, LLC. *Id.* Att. 12. Even though Avon-CT was the entity involved with the Christiana and Ridgewood transactions, Robinson used Avon-NV's tax identification number which ends in 6827, when opening the bank account. *Id.*; Doc. 57, Att. 1.[13]

The Avon-NV TD bank account records also show wire transfers toward the Waldman life insurance policy. *See* Doc. 187, Att. 13, at 1, 7-8 (reflecting a $44,150.00 outgoing wire to PNC Bank and fee for Waldman policy on Aug. 19, 2009); *id.* at 4, 9 (reflecting a $44,150.00 outgoing wire (including the wire transfer fee) to PNC Bank for the Waldman policy on Oct. 5, 2009).[14]

---

Att. 3, at 1 (S.D.N.Y. Nov. 20, 2013). She was also Assistant Secretary of Nova. *Id.* She currently serves as SDM's manager. Doc. 192, Att. 1, at 3; *see also* Doc. 187, Att. 19, at 64, lns. 7-9.

[13] In its motion for summary judgment, Avon-WY erroneously states this tax identification number belongs to Avon-CT. Doc. 195, at 4, ¶ 2.

[14] What Universitas identifies as Avon-NV's general ledger also reflects

## 2. The Ridgewood facility's funding of Charter Oak Trust policies and their resale.

As noted above, this action hinges on the fraudulent transfer from the Charter Oak Trust policies. These policies were stranger-oriented life insurances (STOLI) policies. The *Carpenter* court explained the nature of STOLI policies, life insurance providers' opposition to these policies, and Carpenter's creation of the Charter Oak Trust to serve "as a vehicle for obtaining [these] policies." 190 F. Supp. 3d at 273. Charter Oak Trust planned to "[re]sell life insurance policies on the secondary market, after [the lapse of] a contestability period."[15]  *Id.* at 276.

---

holding investment accounts for "R. Waldman" (Account IDs. 1320 and 1322) in the amounts of $1,002,475.00 and $626,300.00. Doc. 187, Att. 14, at 1, 8-9. Although the Avon Capital, LLC general ledger does not specifically state that it is Avon-NV's, the Court can reasonably infer so from the fact that the transactions listed on it reflect transactions that match those from Avon-NV's two bank accounts. *Compare* Doc. 187, Att. 14, at 2-4, *with* Doc. 147, Att. 22 (Avon-NV's TD bank account), at 4-6, *and id.* Atts. 15-16 (Avon-NV's People's bank account, *see infra* § II.G.). Avon-WY and SDM dispute the admissibility of this document, as it has not been authenticated and amounts to hearsay. Doc. 193, at 5-6; Doc. 197, at 15-17. The Court determines the ledger to be supplemental only for purposes of its findings herein.

[15]

> To induce people to participate in [Charter Oak Trust] as straw insureds, the agents used a sales pitch learned from discussions at the 100 Grist Mill Road offices. The prospective insureds were promised free life insurance for two years. They were told that if they died during the two-year period, the policy proceeds would be disbursed to their beneficiaries. After two years, the policy would be sold and the insured could potentially profit from the sale. No effort was made to attract people with an interest in buying long-term life insurance coverage then or later.

Insured Sash Spencer obtained two policies totaling $30 million, the first two policies ever to be placed in Charter Oak Trust. *Id.* at 292. Ridgewood funded both policies. *Id.* at 293. Spencer died in June 2008, within the contestability period. *Id.* Although the insurance provider investigated, the provider "was unable to determine that the two policies were procured for sale on the secondary market" and issued two checks to Charter Oak totaling $30,677,276.75 (the policies' proceeds plus interest), at Bursey's behest. *Id.* ("Mr. Bursey had admonished [the provider] that the trust had a 'fiduciary duty to pay death benefits to the Participant's designated beneficiary.'"). When Bursey told Carpenter about the checks, Carpenter wrote "Big day for all of us . . . check mail and speak only to me . . . only to me. . . . May you be in heaven before the Devil knows you're dead." *Id.*

The *Carpenter* court reviewed a "complex web of corporate entities, bank accounts, and numerous money transfers" to "determin[e] how the defendant and his co-conspirators used the $30 million in policy proceeds." *Id.* at 295. For example, on May 18, 2009, Bursey deposited the two checks from the insurance provider into a TD account in Charter Oak Trust's name, the "account ending in 4548" (Charter Oak TD bank account). *Id.* This account

---

*Carpenter*, 190 F. Supp. 3d at 280-81. "[Charter Oak Trust] was not widely marketed in order to reduce the risk that the true nature of the trust would be revealed." *Id.* at 280.

"had been set up by Mr. Bursey six days earlier." *Id.* Then, on May 21, 2009, Bursey transferred $8,677,276.75 from the Charter Oak TD bank account to a TD account belonging to Grist Mill Capital, the "account ending in 4712" (Grist Mill Capital TD bank account). *Id.* "Prior to this transfer, the [Grist Mill Capital TD bank account] was empty." *Id.* Then, on May 26, 2009, Bursey transferred another $2,186,566 from the Charter Oak TD bank account to the Grist Mill Capital TD bank account. *Id.* "After these two transfers, which were the only ones into the [Grist Mill Capital TD bank account] at the relevant time, the [Charter Oak TD bank account] contained just over $19.8 million." *Id.*

At the same time, the "$19.8 million remaining from the proceeds of the Spencer policies was kept in the [Charter Oak TD bank account], where the entire death benefit had originally been deposited." *Id.* at 296. On October 2, 2009, Bursey denied Universitas's claim to the proceeds. *Id.* at 294. On October 27, 2009, Bursey transferred $19,800,000 from the [Charter Oak TD bank account] to the [Grist Mill Capital TD bank account]." *Id.* Then, just "one day later, $19,000,000 was transferred to the Grist Mill Holdings account ending in 7136." *Id.*

Grist Mill Capital's appointed agent, Peter A. Goldman, testified he had been retained to try to "determine what happened to the $30 million." *Nov. 2013 Nova*, 2013 WL 6123104, at *7. He confirmed there had been $31 million

transferred from the Charter Oak Trust, but he could not explain why any transfers had been made to Grist Mill Capital. *Id.* He also reported Grist Mill Capital's general ledger recorded the $19.8 million as an "unknown deposit." *Id.*

Less than a month later, on November 11, 2009, Avon-NV managing member Grist Mill Capital transferred $6,710,065.92 to "Avon Capital, LLC,"[16] which was deposited to the Avon-NV TD bank account. *See* Doc. 56, at 4; Doc. 92, at 5. The *Carpenter* court also detailed a variety of transactions involving the balance of the Spencer policies, including the funding of additional life insurance policy premiums and the purchasing of real estate in Rhode Island. 190 F. Supp. 3d at 295-96.

---

[16]   "Grist Mill Capital . . . and Avon Capital were financing companies that loaned money to other" Carpenter controlled entities, including "Benistar Admin Services, TPG Group, Grist Mill Trust, Grist Mill Capital, Avon Capital, and the Charter Oak Trust." *Carpenter*, 190 F. Supp. 3d at 273. "Mr. Carpenter acknowledged at trial that he controlled [Grist Mill Capital], and documents admitted into evidence show that he signed on its behalf as 'Chairman of Managing Member.' The structure of Avon Capital is less clear. Many of the documents bear Mr. Trudeau's signature.   However, Mr. Carpenter is listed as the signatory on both of Avon Capital's bank accounts." *Id.*

## Spencer Policies Money Flow



### F. Avon-WY's transactions.

Much transpired between the first time Avon-WY was administratively dissolved, on June 17, 2009, and when Trudeau applied to reinstate it on November 15, 2010. *See* Doc. 147, Att. 9; Doc. 57, Att. 6, at 3.

### 1. The SDM purchase.

On December 30, 2009—while administratively inactive—Avon-WY closed on the acquisition of one hundred percent of the membership interest in SDM. Doc. 147, Atts. 20-21. The total purchase price was $4,395,502.60. *Id.* Att. 19, at 2. The assignors were Jane M. Moran and H. Thomas Moran, II. *Id.* Att. 21. Trudeau served as the authorized signatory for Avon-WY on the Assignment of Membership Interest document and on the Membership Purchase Agreement. *See id.* Atts. 20-21. Trudeau testified that Carpenter "authorized [him] to enter the transaction . . . and make this investment on

behalf of Avon Capital, LLC." *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 280, lns. 11-16 (S.D.N.Y. Sept. 25, 2014).

The purchase agreement required payment of $2,197,751.30 by December 30, 2009, and the balance by January 30, 2010. Doc. 147, Att. 20, at 1, ¶ 1(a)-(b). It also required Avon-WY to pay a pre-existing debt Thomas Moran owed to Kirkpatrick Bank. *Id.* at 2, ¶ 2; *id.* at 4, ¶ 5.6(b). The agreement bound Avon-WY to a pre-existing servicing contract with Asset Servicing Group (ASG). *Id.* at 3, ¶ 4.5; *id.* at 14, ¶ 8.2.2. And, it identified Heritage Group Agency, Inc. and ASG as Thomas Moran's affiliates.[17] *Id.* at 4, ¶ 5.6; *id.* at 14, ¶ 8.2.2(d).

Although Avon-WY was the signatory to the purchase agreement, a series of payments to Moran came from the Avon-NV TD bank account. *See also* Doc. 147, Att. 22, at 3-4. Carpenter and Amanda Rossi[18] served as the authorized signatories on the Avon-NV TD bank account. *Id.* Att. 14.

---

[17]   Carpenter testified Avon-WY was involved in acquiring "a block of business known as SDM." Doc. 147, Att. 5, at 148, lns. 7-9. According to Carpenter, Trudeau introduced him to Thomas Moran, who was the signatory for the purchase agreement on behalf of SDM. *Id.* lns. 20-21; *Id.* Att. 20, at 25. And Trudeau testified he signed the agreement at Carpenter's behest. *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 280, lns. 11-16 (S.D.N.Y. Sept. 25, 2014).

[18]   Amanda Rossi is Secretary of Nova. Doc. 147, Att. 14; *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *6 (S.D.N.Y Jan. 4, 2013). Also, the *Carpenter* court identified Ms. Rossi as a Benistar employee. 190 F. Supp. 3d at 294.

Related payments from the Avon-NV TD bank account include:

- Two December 31, 2009 payments of $777,741.30 and $514,469.36 to Thomas Moran, Doc. 147, Att. 22, at 3 (A March 30, 2010 email identifies the $514,469.36 as "received" by Kirkpatrick Bank, *id.* Att. 23 (per SDM Purchase Agreement, *id.* Att. 20, ¶¶ 2, 5.6));

- A January 4, 2010 payment of $25,000.00 to The Heritage Group, *id.* Att. 22, at 4;

- A January 5, 2010 payment of $175,334.85 to ASG, *id.*;

- A January 5, 2010 payment of $332,766.30 to "Hme, Llc," *id.* (A March 30, 2010 email from an ASG address to Trudeau and

---

[Ms.] Rossi [was] listed as a "Trustee" of Charter Oak Trust in a TD Bank account statement from December 2009 . . . [She was also] listed as a signatory . . . on several bank accounts to which Universitas alleges that Nova Group improperly transferred the insurance proceeds at issue here. It appears, however, that Mr. Bursey—not Ms. Rossi—authorized the deposits to these accounts. At her deposition, Ms. Rossi testified that she was employed only by Benistar . . . , Carpenter Financial [ ,] USB Group, Inc. She further testified that she performed office-manager work for these three entities, and that she worked as an executive assistant to Mr. and Mrs. Carpenter.

*Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3487350, at *5 (S.D.N.Y. July 12, 2013) (citations omitted), *subsequently vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015). In part because Bursey signed the deposit slips and endorsed the checks that Nova improperly deposited, the S.D.N.Y. determined Rossi was not "a controlling officer of Nova" because "she did not actually participate in one of the central transactions at issue." *Id.* at *10.

Andrew Terrell, cc'ing Thomas Moran, identifies this as a portion of the purchase price, *id.* Att. 23); and

- A January 7, 2010 payment of $373,033.83 to Thomas Moran, *id.* Att. 22, at 4.

On June 9, 2010, the Avon-NV TD bank account was closed and its balance of $953,238.84, minus the twenty-five dollar wire transfer fee, was deposited into the only other Avon Capital, LLC bank account of record at this time: a People's United Bank account ending in 3286 (Avon-NV People's bank account). Doc. 147, Atts. 15-16. People's United Bank sent that account's statements to Daniel Carpenter at the Grist Mill address; and Carpenter signed a check to ASG from this account at least once. *Id.* Atts. 15-16; *id.* Att. 27, at 17.

Litigation ensued over the balance due under the Purchase Agreement, and the parties settled. *See* Doc. 187, Att. 19, at 63, lns. 4-6; Doc. 147, Att. 19; *Moran v. Avon Capital, LLC*, No. CIV-10-393-HE, Doc. 58 (W.D. Okla. Feb. 17, 2011) (Stipulation of Dismissal). Payments to Moran, presumably in satisfaction of the SDM Purchase Agreement, continued to come from the Avon-NV People's bank account, of which Carpenter was the signatory. Doc. 147, Att. 25 (including the $75,000.00 Nov. 30, 2010 payment to Thomas Moran and near-monthly $100,000.00 payments thereafter until July 2011).

23



**Avon-NV payments (on behalf of Avon-WY) for SDM Purchase**

ASG sent Avon-WY monthly invoices. *See* Doc. 147, Att. 27, at 1, 5-6, 10-11, 18-19. ASG sent these invoices to Avon Capital, LLC, at 2187 Atlantic Street, Stamford, CT. *Id.* This is the address Avon-WY listed in the Purchase Agreement. *Id.* Att. 20, at 20, ¶ 10.1. No other Avon Capital, LLC entity used this address for its mailing or principal address. And at least one invoice identified Don Trudeau as the contact. *Id.* Att. 27, at 15.

Regular payments to ASG came from the Avon-NV TD bank account until its closure. *Id.* at 7, 14. After the closure of the Avon-NV TD bank account, payments continued, coming instead from the Avon-NV People's bank account. *See, e.g., id.* at 20-21. Carpenter signed a check dated December 9, 2010 from "Avon Capital, LLC" to ASG. *Id.* at 17.

24

Most of the above transactions occurred while Avon-WY was "Inactive-Administratively Dissolved." *Id*. Att. 8. And these transactions continued after Trudeau reinstated Avon-WY in November 2010. *See, e.g.*, *id*. Att. 27, at 15-17.

### 2. Andrew Terrell consults for Avon-WY.

Trudeau also testified that Andrew Terrell, principal of Clermont Capital, provided consulting services for Avon-WY. Doc. 187, Att. 19, at 41, lns. 15-22; *id*. at 42, ln. 2.[19] Trudeau did not know how Terrell received compensation for his services but he did not think the compensation came from Avon-WY. *Id*. Att. 19, at 42, lns. 21-23. Terrell testified that in 2010 he had a consulting contract with Avon, "but sometimes [he] was paid by a different entity." *Id*. Att. 18, Ex. 17, at 11, lns. 5-8 (sealed). Avon-NV's bank records shows Avon-NV made several payments to Terrell during the time he consulted for Avon-WY, and to Clermont Capital. *See, e.g.*, *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 610, Att. 9, at 13, 17 (S.D.N.Y. Nov. 18, 2016) (showing two $15,000.00 wires on March 18, 2010 and May 28, 2010 to "Andrew G. and Maria G. Terrell").[20]

---

[19]    *See also* Doc. 187, Att. 14, at 1, lns. 14-15 (Avon-NV's general ledger showing $359,270.00 owed to Clermont Capital).
[20]    *See also* Doc. 187, Att. 14, at 2, 4-5, 23 (showing Avon-NV's general ledger, which includes three $15,000.00 payments for "Consulting Fees" to Andrew Terrell from the TD bank account in February, March, and May of 2010, and from the Avon-NV People's bank account in June 2010); *id*. at 2-3,

### 3. Avon-WY's 2010 "unloading" of Avon-CT's life insurance policies.

The *Carpenter* court outlined other transactions involving Avon-CT and Avon-WY. After the 2008 financial crisis, the market for selling Charter Oak Trust policies dried up. *Carpenter*, 190 F. Supp. 3d at 289. Trudeau had served as the point person in selling these policies on the secondary market. *Id.* at 290. After an unsuccessful year of trying to find buyers, on March 16, 2010, Trudeau wrote Carpenter asking whether he wanted to "unload" two of Charter Oak Trust insureds' policies. *Id.* at 291. Carpenter replied, "we want to unload everything" and followed up ten days later, telling Trudeau to "please figure out if we have buyers or not." *Id.*

Ultimately, Carpenter and his associates devised a way to sell some of the Charter Oak Trust policies to an entity called Life Insurance Fund Elite (Life Elite). *Id.* The transactions were accomplished in the following way. First, Charter Oak Trust "transferred ownership of the policy to an entity known as Yates Worldwide Holdings Ltd." *Id.* Bursey signed these agreements on behalf of Charter Oak Trust, while Trudeau signed on behalf of Yates Worldwide.[21] "Next, Yates Worldwide transferred the policy to Tranen

---

14-15 (showing in Avon-NV's general ledger a credit to Clermont Capital for $100,000.00 in July 2010, $50,000.00 in November 2010, and a total of $100,100.00 in December 2010).

[21]   Yates was registered in the British Virgin Islands, and Avon Capital, LLC owned 50,000 shares. Doc. 187, Att. 24.

Capital Alternative Investment Fund, Ltd. [and] Mr. Trudeau signed these agreements on behalf of Yates Worldwide, [while] Ken Landgaard[22] signed on behalf of Tranen." *Id.*; Doc. 187, at 15.  Then Tranen transferred the policy to Avon-WY. *Carpenter*, 190 F. Supp. 3d at 291; Doc. 187, at 15.  Landgaard signed these agreements on behalf of Tranen, while Trudeau signed on behalf of Avon-WY. *Carpenter*, 190 F. Supp. 3d at 291; Doc. 187, at 15.  "Finally, the policies were transferred from Avon[-WY] to Life [Elite]." *Carpenter*, 190 F. Supp. 3d at 291.  The *Carpenter* court did not find Carpenter's testimony attempting "to distance himself" from these transactions credible, finding "[i]t is apparent that [Carpenter] knew of and was involved in the transfer of policies to Life [Elite]." *Id.* at 292.

The Government's Exhibit List from the *Carpenter* criminal action shows the Tranen-to-Avon purchase and sale agreements were dated November 12, 2010.  *Carpenter*, No. CR-13-226-RNC, Doc. 207, at 20 (listed as "Life Insurance Purchase and Sale Agreement . . . from Tranen to Avon" for each of the eleven policies).  At least nine Charter Oak Trust-to-Yates-to-Tranen transactions took place on November 12, 2010.  *See id.* at 20-21 (listing "Life Insurance Purchase and Sale Agreement[s]" between Charter Oak Trust

---

22      Ken Landgaard, who operated Tranen Capital Alternative Investment Fund, served as one of several straw insureds recruited to participate in Charter Oak Trust. *Carpenter*, 190 F. Supp. 3d at 280.

(listed as COT) and Yates, Yates and Tranen, and Tranen and Avon). Trudeau transferred the policies to Life Elite on November 15, 2010—the very day he first sought to reinstate Avon-WY. *Carpenter*, 190 F. Supp. 3d at 291; *see id.* Doc. 207, at 20 (listing Transfer Agreement and Life Settlements Purchase & Sales Agreements between Avon Capital and Life Elite); Doc. 147, Att. 9; Doc. 187, at 14-15.



That same day, Trudeau also emailed Carpenter "describing the structure of a sale" to Life Elite. *Carpenter*, 190 F. Supp. 3d at 291. And less than an hour later, he emailed Carpenter a flow chart describing the entities involved in the transaction. *Id.* The *Carpenter* court noted Carpenter requested the "ELITe [sic] portfolio ASAP" in response to Trudeau's email regarding the sale of policies to Life Elite on January 11, 2011; Carpenter knew of the transfer of these policies; and that these transfers involved the Ridgewood facility, except for two policies that never belonged to Ridgewood.

*Id.* at 292. In fact, Carpenter was "more than just a willing participant in this conspiracy; he oversaw its development and execution." *Id.* at 299. The evidence established that Carpenter "intend[ed] to defraud life insurance providers by using misrepresentations to induce them to issue STOLI policies." *Id.* In doing so, he relied upon Avon-CT's Ridgewood facility,[23] and used Avon-WY as a conduit. *Id.* at 291-92. Carpenter did not challenge the district court's findings as to these transactions on appeal. *See Bursey*, 801 F. App'x 1.

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION.

"[A] federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1270-71 (10th Cir. 1998) (quotation omitted); *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998) (holding that a federal court must always satisfy itself first that it does in fact have subject matter jurisdiction before proceeding in any case, and that there is no such thing as "hypothetical jurisdiction"); *Gold v. Local 7 United Food & Comm'l Workers Union,* 159 F.3d 1307, 1309-10 (10th Cir. 1998) ("*Steel* requires that a federal court satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim—even when the question of the merits is the easier one . . . ."), *abrogation on other grounds recognized*

---

[23]    "[I]t appears that Ridgewood did not know about [Charter Oak Trust]'s transfer of the policies." *Carpenter*, 190 F. Supp. 3d at 292.

*by Styskal v. Weld Cty. Comm'rs*, 365 F.3d 855 (10th Cir. 2004).  Further, "the burden of proving jurisdiction is on the party asserting it . . . ."  *State Farm Mut. Auto. Ins. Co.*, 149 F.3d at 1271 (internal citation and quotation marks omitted).

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).  Federal courts typically exercise ancillary jurisdiction

> for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Id.* (internal citations omitted).

This case arguably "involves the second, less common purpose— ancillary jurisdiction over collateral proceedings." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014).  Ancillary jurisdiction is reserved to "subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection

and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances.").

Ancillary jurisdiction's reach does not extend "beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357. And *Peacock* "cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original' . . . or where 'the relief sought is of a different kind or on a different principle' than that of the prior decree." *Id.* at 358 (internal citations omitted).

*Peacock* involved new allegations of fraudulent transfer that the plaintiff attempted to raise under ERISA. *Id.* at 358-59. The alleged wrongdoing occurred after the entry of the ERISA judgment. *Id.* The Court held that the district court lacked jurisdiction of this "new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case." *Id.* at 359.

"[W]hen postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist." *Sandlin v. Corp. Interiors Inc.,* 972 F.2d 1212, 1217 (10th Cir. 1992). Here, Universitas asserts an alter-ego theory. "The cause of action based upon the alter ego theory is a closer case because in theory the court is merely trying to identify the true debtor on the judgment." *Id.* "Alter

31

ego in its accurate sense involves sometimes complex factual findings of gross undercapitalization or of owners' failure to observe separate corporate existence." *Id.*

"[A]n attempt to hold directors liable for a corporate judgment 'already obtained' is not within the ancillary jurisdiction of the court." *Id.* at 1218 (quoting *H. C. Cook Co. v. Beecher*, 217 U.S. 497, 498-99 (1910)). To be sure, this Court recognizes Universitas is "attempt[ing] to execute, or to guarantee eventual executability of, a federal judgment." *Peacock*, 516 U.S. at 357. And the Court acknowledges the facts underlying Universitas's contentions are not significantly different from those underlying the *Nova SDNY Litigation*, and the relief sought is not of a different kind than in that turnover action. But this Court recognizes the limitation on ancillary jurisdiction that *Sandlin* and *Peacock* set forth.

Avon-WY argues *Peacock* precludes this Court's exercise of ancillary jurisdiction. Doc. 204, at 19. Universitas argues "in any judgment-enforcement action otherwise governed by *Peacock* there may in fact be an independent basis for federal jurisdiction." *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 68 (10th Cir. 2005) (quoting *Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1033-34 (10th Cir. 2004)); *see* Doc. 201, at 7-8. And here, that independent basis for subject matter jurisdiction over Universitas's alter-ego claim is diversity of citizenship. Doc. 201, at 8 ("This is a dispute

between parties from different states with a matter in controversy exceeding $6 million, and thus this Court has subject matter jurisdiction over this proceeding."); *see also United States v. Vitek Supply Corp.*, 151 F.3d 580, 585-86 (7th Cir. 1998) (rejecting judgment debtor's argument that "federal courts cannot collect debts by piercing the corporate veils of judgment debtors" where an independent basis for jurisdiction exists); *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) ("[The *Peacock*] Court held only that federal jurisdiction over claims leading to an underlying judgment provides no *ancillary* federal jurisdiction over a subsequent, post-judgment alter ego claim.") (citation omitted).   Even assuming without deciding this Court cannot proceed exercising ancillary jurisdiction, this Court agrees—and Avon-WY does not argue otherwise—that diversity of citizenship provides an independent basis for this Court's jurisdiction.  *See also* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523 at 89 (2d ed. 1984) (stating that ancillary jurisdiction "include[s] those acts that the federal court must take in order properly to carry out its judgment on a matter as to which it has jurisdiction").

## IV.  THE EFFECT OF THE REGISTRATION OF THE JUDGMENT.

Under 28 U.S.C. § 1963, a judgment creditor may register one district court's judgment in an action for money damages by filing a certified copy of the judgment in any other district court, thereby giving the registered

judgment "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963.  The act of registration serves not merely as a procedural device for the collection of the foreign judgment—registration creates an altogether "new judgment" to be given the same effect as any other judgment entered by the registering court. *Condaire, Inc. v. Allied Piping, Inc.,* 286 F.3d 353, 357 (6th Cir. 2002) (citing *Stanford v. Utley*, 341 F.2d 265, 270 (8th Cir. 1965)).  Section 1963 grants by implication "inherent powers to the registering court to enforce those judgments." *Id.*; *see also Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 235 n.8 (1998) ("Congress has provided for the interdistrict registration of federal-court judgments for the recovery of money or property.").

## V.   THE COURT DENIES THE MOTIONS TO STRIKE THE CHERNOW DECLARATIONS.

The Court addresses Avon-WY's challenges (the first, sought to be joined by SDM) to Chernow's declarations.   Docs. 193, 196, 213.   Universitas submitted these declarations in support of its motion for summary judgment, and in support of its response to Avon-WY's motion for summary judgment. *See* Doc. 187, Att. 1; Doc. 205, Att. 1.

Avon-WY argues that the Chernow declarations are not based on Chernow's personal knowledge.   Doc. 193, at 2-4; Doc. 213, at 3-4.   A "declaration used to support or oppose a motion" for summary judgment "must

34

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Universitas responds that Chernow demonstrated his first-hand knowledge based on his review of the documents he introduces in the declarations. Doc. 209, at 7; Doc. 205, Att. 1, at 1-2 (averring "personal knowledge"). It is not unusual for an attorney to make such declarations, and such declarations should come as no surprise to Avon-WY. Indeed, Chernow submitted similar declarations in this matter in April and October of 2019. Doc. 147, Att. 1; Doc. 171, Att. 1. As Judge Heaton observed, neither Avon-WY nor SDM disputed Universitas's April 2019 allegations, which relied on Chernow's similar declarations. Doc. 150, at 9 (citing Doc. 149). And neither objected to Chernow's October 2019 declaration on this basis.

Should the Court agree with Avon-WY that the Chernow declarations contain "speculation," this Court is prepared to disregard its analysis of certain parts of those declarations, without needing to strike entire declarations. *See United States v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127, 1134 (D.C. Cir. 2016) (deferring to the district court's evaluation of the admissibility of portions of a declaration, upon which it relied for "some factual analyses" and disregarded "legal conclusions and other deficiencies") (internal quotation marks omitted); *Servaas Inc. v. Republic of Iraq*, 686 F. Supp.2d 346, 353 (S.D.N.Y. 2010) ( "[A

35

court] need not 'conduct a line-by-line analysis' [of a declaration] and, instead, may 'simply disregard any material that does not comply with' the Federal Rules of Civil Procedure and/or Federal Rules of Evidence." (citation omitted)), *aff'd,* 653 F. App'x 22 (2d Cir. 2011), *as amended* (Feb. 16, 2011); *see, e.g.*, Doc. 193, at 7 (claiming the "declaration is wrought with speculation").

Avon-WY further argues that the declarations contain impermissible hearsay and conclusory statements.  Doc. 193, at 4-6; Doc. 213, at 2-5.  The Court will make its own conclusions based on the admissible evidence presented.  *See Servaas*, 686 F. Supp. 2d at 353 ("[T]he Court will not make the suggested inferences simply because [Declarant] has suggested them," instead, the court will look at the evidence and "draw its own conclusions based on that evidence." (citations omitted)).

## VI.   THE COURT CONSIDERS UNIVERSITAS'S AND AVON-WY'S MOTIONS FOR SUMMARY JUDGMENT.

### A. Standard of review.

Parties may seek summary judgment in post-judgment proceedings.  *See Env't Cleanup, Inc. v. Ruiz Transp., LLC*, 2017 WL 2080270 (W.D. Okla. May 12, 2017) (ruling on cross motions for summary judgment filed in post-judgment garnishment proceeding).  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Evans v. Sandy*

*City*, 944 F.3d 847, 852 (10th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015) (internal quotation marks and citation omitted).

The Court views "facts in the light most favorable to the non-moving party and "draw[s] all reasonable inferences in [its] favor."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (citations and alternations omitted).  "Even so, the non-movant . . . must marshal sufficient evidence requiring submission to the jury to avoid summary judgment."  *Id.* (brackets and internal quotation marks omitted).

The Court treats cross-motions for summary judgment "separately[─]the denial of one does not require the grant of another."  *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).  In evaluating the parties' cross-motions for summary judgment the Court looks beyond the pleadings and assesses the proof to determine whether there is a genuine need for trial.  *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

Universitas argues that Avon-WY is an alter ego of Avon-CT and Avon-NV, and that this Court should pierce the corporate veil of all three Avon Capital, LLC entities to satisfy the judgment. Doc. 187, at 17-32. Universitas asks for an alter-ego determination based on Avon Capital's fraudulent conduct, inadequate capitalization of both Avon-WY and Avon-CT, intermingling among all three Avon Capital entities, and the three entities' failure to keep corporate formalities. *Id.*

Avon-WY also seeks summary judgment, arguing that Avon-WY is not a judgment debtor named in the *Nova SDNY Litigation* judgment, that Universitas lacks admissible evidence to prove its alter-ego claim, and that Avon-WY is not an alter ego of any judgment debtor. *See* Doc. 195.

For the reasons stated in the following alter-ego determination, the Court grants Universitas's motion for summary judgment and denies Avon-WY's motion for summary judgment.

## B. The Court grants Universitas's motion for summary judgment: Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor.

Universitas argues that Avon-WY is the alter ego of Avon-CT and Avon-NV. Because Avon-WY is an LLC formed in Wyoming, Wyoming law applies. *See Clemmer v. D.C. Grp.*, 2014 WL 1509274, *3 (W.D. Okla. Apr. 16,

2014) ("[T]he Oklahoma Supreme Court would most likely . . . look to the Restatement (Second) of Conflicts of Law to decide what substantive law to apply" to resolve the veil-piercing issue, which "provides that [t]he local law of the state of incorporation will be applied . . . .") (internal quotation marks and citations omitted).

Wyoming law requires the presence of certain "exceptional circumstances" to pierce an LLC's corporate veil. *See GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 462 (Wyo. 2014) (reaffirming the "essence" of the Wyoming Supreme Court's veil-piercing analysis). Wyoming law, in determining "whether the limited liability company has been operated as a separate entity, or whether the member has instead misused the entity in an inequitable manner to injure the plaintiff," applies a "fact-driven and flexible" two-prong test. *Id.* at 463.

This two-prong test pierces the corporate veil:

(1) the limited liability company is not only owned, influenced and governed by its members, but the required separateness has ceased to exist due to misuse of the limited liability company; and (2) the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity.

*Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 799 (Wyo. 2019) (quoting *GreenHunter*, 337 P.3d at 462); *see also id.* at 800 ("[V]eil-piercing is

a fact-intensive inquiry generally not suited for summary judgment.") (quoting *Atlas Constr. Co. v. Slater*, 746 P.2d 352, 355 (Wyo. 1987) (citation omitted)).

"[T]he existence of one or more elements tending to support a showing of legitimacy[, however,] does not always preclude summary judgment." *Terrapin Leasing, Ltd. v. United States*, 1981 WL 15490, at *3 (10th Cir. Apr. 6, 1981) (affirming a veil-piercing summary judgment when "as a whole and in context, the undisputed facts about the operation of this corporation show that it was such a sham that a jury would not be permitted to find it a legitimate shelter against tax claims against its owner and manipulator"); *Oren v. United States*, 1992 WL 79110, at *2 (W.D. Mich. Jan. 7, 1992) ("Taking the facts as a whole in the light most favorable to the plaintiff," the court granted summary judgment to the defendant finding that "[a]lthough some individual facts do favor plaintiff's position, the facts taken as a whole are overwhelming and leave no question of material fact for a jury that the corporation was the [plaintiff's] alter ego.").

In applying the *GreenHunter* test, the Court considers:

1. the existence of fraud,

2. the adequacy of capitalization,

3. "the degree to which the business and finances of the company and the member are intermingled," *Mantle*, 437 P.3d at 799, and

40

4. whether there has been an "injustice or unfairness." *GreenHunter*, 337 P.3d at 464.

The Wyoming Supreme Court has further enumerated a litany of factors relevant to "justifying a disregard of the corporate entity." *Daniels v. Kerr McGee,* 841 F. Supp. 1133, 1136 (D. Wyo. 1993) (citing *AMFAC Mech. Supply Co. v. Federer,* 645 P.2d 73, 77-78 (Wyo. 1982) (citation omitted), *abrogated on other grounds by Texas West Oil & Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857, 859 (Wyo.1987)).  These factors include:  whether a corporation is truly a separate entity; commingling of funds and other assets; failure to segregate funds of the separate entities; failure to adequately capitalize a corporation; the absence of corporate assets and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and the use of the corporate entity to procure labor, services or merchandise for another person or entity.  *Kloefkorn-Ballard v. N. Big Horn Hosp. Dist.,* 683 P.2d 656, 661 (Wyo. 1984).  And if the party making an alter-ego claim is "the victim of some basically unfair device" where the separate existence of the entity is "used to achieve an inequitable result," a court will also disregard that entity under Wyoming law.  *AMFAC,* 645 P.2d at 81 (listing, as an example, paying "off a

41

controlling shareholder" with the assets of an insolvent corporation "in preference to a general creditor").

### 1. Fraud confirms this.

Fraud is the only *GreenHunter* factor that by itself can justify piercing the veil. 337 P.3d at 463. Fraud can be actual or constructive. *Id.* Constructive fraud "consist[s] of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another . . . ." *Id.* The party seeking to pierce the veil, however, must prove fraudulent intent. *Mantle*, 437 P.3d at 800. As Avon-WY argues, "[a]ctual fraud must be proven by clear and convincing evidence" while "[c]onstructive fraud must be proven by a preponderance of the evidence." Doc. 204, at 30 (citing *Mantle*, 437 P.3d at 786-89). "Clear and convincing evidence is 'proof which would persuade a trier of fact that the truth of the contention is highly probable.'" *Mantle*, 437 P.3d at 784 (citations omitted).

Among the other "badges of fraud" the Court can rely on to establish fraudulent intent are:

  a.  "[L]ack or inadequacy of consideration";

  b.  "close familial relationship or friendship among the parties";

  c.  "retention of possession or benefit of the property transferred";

  d.  "the financial condition of the transferor both before and after the transfer";

42

     e.    "the chronology of events surrounding the transfer";

     f.    occurrence of transfer during "threat of litigation"; and

     g.    "hurried or secret transactions."

*Mantle*, 437 P.3d at 789 (citation omitted).

Universitas argues that the Avon entities satisfy "every single badge of fraud." Doc. 187, at 24. It argues that "Avon Capital's actual fraud can be inferred through its fraudulent intent," which was already established from "the initial [fraudulent] transfers of insurance proceeds." *Id.* "[B]ecause of the virtual impossibility of proving actual fraudulent intent[,] . . . this court and [others] have come to rely on inferences and presumptions drawn from the surrounding circumstances." *Mantle*, 437 P.3d at 789 (internal quotation marks and citation omitted); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 WL 1178773, at *3 (S.D.N.Y. Mar. 23, 2016) ("Judge Swain has noted that during discovery, [Nova and] Carpenter 'resisted all discovery efforts to determine the whereabouts of the Insurance Proceeds after the transfers, and such secrecy further indicates a fraudulent intent.'" (quoting *Aug. 2014 Nova*, 2014 WL 3883371, at *3)).

### a. Lack or inadequacy of consideration.

Universitas argues Carpenter "fraudulently transferred the insurance proceeds to Avon-NV" to then fund Avon-WY's SDM acquisition, so the payments were "a continuation of a fraudulent transfer." Doc. 187, at 22. The

*November 2013 Nova* court outlined the fraudulent conveyances that underlie Universitas's claim here.   2013 WL 6123104, at *8 ("[T]he evidence demonstrates that each entity that received Life Insurance Proceeds was controlled by Mr. Carpenter."). And these transactions stemmed from "a single purpose, to remove a portion of the Life Insurance Proceeds from the Charter Oak Trust . . . insulated from the reach of Mr. Carpenter's creditors (and of course, from [Universitas's] claim)." *Id.*

Avon-NV received no apparent consideration for its multiple payments on behalf of Avon-WY or Avon-CT.  Avon-WY did not have a bank account until Trudeau opened one in 2012.[24]  Avon-NV had no employees and appeared to receive no consideration for its payment of Avon-WY's obligations. *See* Doc. 147, Att. 5, at 146, lns. 10-12.  This factor weighs in favor of a finding of fraud.

### b. Close familial relationship or friendship among the parties.

Universitas argues that the three Avon entities are part of the several Carpenter-operated entities whose business objectives furthered Carpenter's fraudulent scheme relating to insurance payments.   Doc. 187, at 23-26. Carpenter testified that Nova is a shell corporation.[25]  Counsel for Nova stated

---

[24]    Avon-WY maintains it has more than one bank account, but cites only to the one Trudeau opened in 2012.  Doc. 195, at 5 (citing *id.* Att. 3 and Doc. 187, Att. 8 (sealed exhibit 7)).

[25]    *See Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 47, dep. pg. 76, lns. 3-4.  Doc. 310, Att. 5, contains multiple depositions within

Universitas's money was transferred first to Grist Mill Capital, and then to Grist Mill Holdings, Avon Capital, Carpenter Financial Group, Phoenix Capital Management,[26] and then to Grist Mill Trust.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 90-92.  Each of these is a judgment debtor.  And the *August 2014 Nova* court found Carpenter also controlled Nova, Charter Oak Trust, Caroline Financial, and "hundreds of other related entities."[27]  2014 WL 3883371, at *2.

As to Bursey, who acted under Carpenter's "direction and on his behalf," the two "had a particularly close relationship . . . ."  *Carpenter*, 190 F. Supp.3d at 299, 301.  Regarding Grist Mill Trust, Carpenter, and Bursey served as trustees, and Carpenter's wife, Molly, as signer.  *Nov. 2013 Nova*, 2013 WL 6123104, at *4.  And the *August 2014 Nova* court found Carpenter also controlled Grist Mill Trust.  2014 WL 3883371, at *2.  These familial, and otherwise close, relationships point toward fraudulent intent.  *See Mantle*, 437 P.3d at 789 (citation omitted).

---

one attachment, so for clarity the Court will refer to both the ECF page number and the accompanying deposition page number.

[26]   Carpenter testified he was Phoenix's sole officer and director.  *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 42, dep. pg. 34, lns. 19-24.

[27]   *See also Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 5, at 37, dep. pg. 16, lns. 15-23 (The number of entities for which Caroline is the managing member and tax matters partner was "too numerous to mention.").

Universitas also argues that "Carpenter owns all three Avon entities" and controls each of their respective managers.  Doc. 187, at 24.  Carpenter Financial, for which Carpenter serves as Chairman, owns 99% of each of the three Avon entities.  Carpenter's dominance over all of the entities involved also weighs in Universitas's favor as to a finding of fraud.[28]

### c. Retention of possession or benefit of the property transferred.

The October 2009 transfer of $19.8 million to Grist Mill Capital was classified as an "unknown deposit."  *Aug. 2014 Nova*, 2014 WL 3883371, at *5. The subsequent transfers from the Avon-NV bank accounts also lack credible explanations.  *Id.* at *10.  After this flurry of transfers, Carpenter, through his control of Avon-WY's managing member Caroline Financial, retained the property (i.e. SDM).  And Carpenter controlled Avon-NV and served as a signatory on its two bank accounts.  This factor weighs in favor of a finding of fraud.

---

[28]    Also of note, through no fault of its own, the *August 2014 Nova* court misstated the identity of the Avon Capital entities, using them interchangeably.  2014 WL 3883371, at *3 ("Avon was controlled by its managing member, Grist Mill [Capital], which is wholly owned by its members Grist Mill Holdings and Caroline Financial Group, Inc., both of which were wholly owned by Mr. Carpenter.").  Of the three Avon entities, Grist Mill Capital managed only Avon-NV.  Doc. 57, Att. 1, at 3.

### d. Change in financial condition of transferor in relation to the transfer.

Carpenter controlled the financial affairs of his entities. *Id.* at *2. No one disputes that Carpenter opened the May 2009 Avon-NV TD bank account, which had a November 30, 2009 balance of $6,745,794.16, a December 30, 2009 balance of $938,454.59, and a December 31, 2009 balance of $160,683.29. He was a signatory on Avon-NV's two bank accounts. Those accounts received funds from the Charter Oak Trust bank account, and then were used to satisfy the obligations of Avon-WY and related Avon-CT/Ridgewood transactions. Avon-NV's change in its financial condition to satisfy Avon-WY's obligations weighs in favor of a finding of fraud.

### e. Chronology of events surrounding the transfer.

Avon-WY argues Universitas's position is "specious" because it cannot show a chain of custody linking Avon-WY to the judgment. Doc. 204, at 30-31. And because the fraud claim is based "on the actions of non-member and non-manager Carpenter." *Id.* at 30. As Judge Heaton noted, Avon-WY did not challenge Universitas's allegations that Avon-NV used Universitas's judgment funds to purchase SDM for Avon-WY. Doc. 150, at 9 (citing Doc. 149). The Avon-NV TD bank account received the funds in November 2009 from the Grist Mill Capital TD bank account, which had previously received the funds from

the Charter Oak Trust TD bank account.[29]  Charter Oak Trust held the Avon-CT/Ridgewood life insurance policies.  *Universitas*, 2013 WL 3328746, at *2. And Carpenter controlled each of these entities.  Despite others holding titular authority, Carpenter made all significant corporate decisions; he "exercised ultimate authority over" the Avon entities' operations.  *Carpenter*, 190 F. Supp. 3d at 286.  In fact, "the formal corporate structure of the various Benistar Entities had little meaning for the people involved."  *Id.* at 274.

Less than two months after receiving the November 2009 deposit, the Avon-NV TD bank account began a series of transfers of funds to Moran and his related entities to satisfy the Avon-WY/SDM purchase agreement.  Doc. 147, Att. 22, at 3.  Also within weeks, monies from that account were transferred to the Grist Mill Trust, a Carpenter-controlled entity.  *Id.*

Avon-WY's argument that Universitas must trace the entirety of the purchase price to the Charter Oak Trust/Spencer funds "is illogical."  *Nov. 2013 Nova*, 2013 WL 6123104, at *12.  The *November 2013 Nova* court "decline[d] to presume that fraudulently conveyed funds, mixed with potentially legitimate funds, are traceable first to the legitimate funds."  *Id.*  This would "permit[ ] Carpenter and his affiliates to perpetuate their evasion of the legal obligation to pay the Life Insurance Proceeds to [Universitas] through manipulation of

---

[29]    *Carpenter*, 190 F. Supp. 3d at 296; *see also Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 310, Att. 4, at 21.

money transfers," resulting in inequity.  *Id.* (citing *United States v. Henshaw,* 388 F.3d 738, 741 (10th Cir. 2004) ("[C]ourts exercise case-specific judgment to select the [tracing] method best suited to achieve a fair and equitable result on the facts before them.")).

Avon-WY also misstates Trudeau's involvement:  it states "Trudeau had no involvement with Avon-WY prior to his reinstatement of it in 2011."  Doc. 205, at 18, ¶ 92.  However, before the 2011 reinstatement, Trudeau had reinstated Avon-WY in November 2010, and served as an officer and member of Avon-WY even before its reinstatement.  Avon-WY's counsel previously told this to the Court.  Doc. 187, Att. 11.  This unusual chronology of events, involving Avon-WY's SDM purchase, funded by Avon-NV, and Avon-WY's 2010 transactions related to unloading the Charter Oak Trust Avon-CT/Ridgewood policies, weighs in favor of a finding of fraud.

Avon-WY also argues Universitas never asserted any cause of action against it in the turnover action.  Doc. 204, at 24.  When the Southern District of New York granted Universitas's motion to register the judgment here, it noted no opposition was filed to Universitas's motion.  Doc. 1, Att. 2.  That court granted the motion "for substantially the reasons stated in Universitas' memorandum in support of its motion."  Doc. 1, Att. 2, at 1.  Universitas's motion in turn relied upon Trudeau's February 2013 deposition testimony, where he stated that Avon Capital, LLC had an "indirect interest" in the SDM

policies, and "own[s] a portion of the death benefits." *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP, Doc. 487, Att. 1, at 275, lns. 14-20 (S.D.N.Y. Sept. 25, 2014); *id.* at 276, lns. 19- 25; *id.* at 277, lns. 2-3.  Universitas cited the correct standard for registering a judgment in another district.  *Id.* Docs. 485-87.  As outlined above, Trudeau and Carpenter used the Avon entities near interchangeably.  Because of the intentionally opaque and interchangeable structure of Avon Capital, LLC, Universitas reasonably relied upon Trudeau's testimony that Avon Capital, LLC owned at least a portion of SDM's policies. *See also Carpenter*, 190 F. Supp. at 273 (noting in 2016, that "[t]he structure of Avon Capital [was] less clear").

Avon-WY again challenges the Chernow declarations, which the Court addressed above.  Doc. 204, at 5-6.  In making its findings, the Court has taken judicial notice of the turnover action, the criminal trial, and various documents from the Southern District of New York and the District of Connecticut actions. Similarly, the parties have relied upon various documents and testimony in arguing their positions.

### f.  Transfer takes place during the pendency or threat of litigation.

Universitas contends that "[e]very Avon Capital transaction occurred during the pendency of litigation," with Carpenter being "aware of pending litigation over the insurance proceeds when he initially fraudulently

transferred them from [Charter Oak Trust]." Doc. 187, at 25. "[Universitas] had made claim to the [life insurance] funds in June 2008, well before they were transferred out of the Charter Oak Trust account" and "Bursey, on behalf of Nova, acknowledged Nova's legal and fiduciary duty to pay to [Universitas] the [funds] prior to the arbitration." *Nov. 2013 Nova*, 2013 WL 6123104, at *11. The *November 2013 Nova* court found these facts indicated "that Nova knew of the possibility of a law suit to collect the Life Insurance Proceeds[ and] Nova must therefore have believed that it be unable to pay the benefit plan obligation to [Universitas] when it drained its bank account by transferring the Life Insurance Proceeds to Grist Mill [Capital]." *Id.* Additionally, "there was clearly a close association between the entities involved in this transfer, with Mr. Bursey moving the funds to an entity controlled by his brother-in-law, Mr. Carpenter." *Id.* The transfers occurred after Charter Oak Trust had wrongly denied Universitas's claim, and the awareness that it violated a legal and fiduciary duty, weigh in favor of a finding of fraud with respect to this factor.

### g. Hurried or secret transactions.

The transactions underlying the SDM purchase and the 2010 unloading of Charter Oak policies were both hurried and secreted. In its defense, Avon-WY first maintains it was "dormant" from June 17, 2009 to November 11, 2011.

Doc. 195, at 4-5, ¶¶ 4-5; Doc. 204, at 20, ¶¶ 4-5.[30]  Universitas argues "Trudeau reinstated Avon-WY the day before Avon-WY sold [the] fraudulently obtained" Charter Oak policies that required the Charter Oak Trust-Tranen-Yates transactions.  Doc. 187, at 32.

Avon-WY was *not* dormant after its administrative dissolution in June 2009.  Far from it.  Less than two months after receiving the fraudulent November 11, 2009 transfer, on December 30, 2009, Avon-WY executed the Purchase Agreement for SDM Holdings.  Doc. 195, Att. 3, at 3-6.  Trudeau, who served as Avon-WY's signatory to that agreement, did so at Carpenter's direction.  The use of the Avon-NV account, rather than one of a party to the transaction, suggests an intent to conceal or hide the source of funds.  And when Trudeau did reinstate Avon-WY in 2010, it was during a flurry of transactions related to unloading a series of Avon-CT/Charter Oak Trust-related policies in November 2010.

These hurried and concealed transactions also tip the scales toward fraudulent intent.  *See Mantle*, 437 P.3d at 789.

---

[30]   In its reply brief, Avon-WY acknowledges "that Avon Capital-WY incurred the obligation to purchase SDM <u>after</u> Avon Capital-WY was administratively dissolved" and that Trudeau was the only signatory for the purchase.  Doc. 214, at 12.

### h. Conclusion.

The Avon Capital, LLC trifecta (CT, NV, WY) earns *Mantle*'s badges of fraud, supported by clear and convincing evidence. The close relationship of the involved parties, including both family (Bursey was Carpenter's brother-in-law[31]) and apparent friends is not in dispute. Just as before, "[t]his was an inside transaction involving closely related entities." *Nov. 2013 Nova*, 2013 WL 6123104, at *9. Only Avon-NV held the purse strings for all of Avon-WY's transactions.

Avon-WY made the SDM purchase after a series of hurried and complex transactions revolving around Charter Oak Trust's October 2009 receipt of the Spencer insurance proceeds. *See Mantle*, 437 P.3d at 789. And Carpenter reaped the benefits of all the transactions. The Avon-NV TD bank account received the fraudulent transfer in October 2009. Less than two months later, the inactive Avon-WY signed the SDM deal. The transactions "were hasty" and "not in the ordinary course of business." *Nov. 2013 Nova*, 2013 WL 6123104, at *10. Carpenter used the Avon-NV TD bank account to satisfy Avon-WY's obligations, suggesting an intent to conceal the sources of funds. The next year, Carpenter and Trudeau schemed to use Avon-WY to act on Avon-CT's behalf to unload various Charter Oak Trust policies, duping

---

[31]     *Carpenter*, 190 F. Supp. 3d at 273.

Ridgewood in the process. *Carpenter*, 190 F. Supp. 3d at 291-92. The Avon entities' actions, taken together, amount to fraud—and could alone support piercing the veil of the three entities and persuade a trier of fact that the truth of the contention is highly probable. *Mantle*, 437 P.3d at 784; *see GreenHunter*, 337 P.3d at 469.

### 2. Undercapitalization confirms this.

In analyzing undercapitalization, the Court considers "the degree of undercapitalization and the reason for it," such as whether the undercapitalization was by choice or a result of external forces. *Mantle*, 437 P.3d at 799. Inadequate capitalization is determined by "compar[ing] the amount of capital to the amount of business to be conducted and the obligations which must be satisfied." *GreenHunter,* 337 P.3d at 463 (citation omitted).

Universitas argues neither Avon-WY nor Avon-CT had "the capital necessary to fulfill its business obligations," each having "entered into transactions requiring" substantial payments without having bank accounts or assets. Doc. 187, at 27. Avon-WY rebuffs this argument by dismissing Universitas's focus on pre-2010 operations. Doc. 204, at 31-32. And Avon-WY later states that it was adequately capitalized when Trudeau reinstated it, and incorrectly states Universitas does not dispute this. Doc. 214, at 11. Avon-WY did not have a bank account upon reinstatement in 2010 and Avon-NV was

making Avon-WY's SDM payments under the purchase agreement at that time.

Avon-WY argues the Court should focus on "the time period following its reinstatement."  Doc. 204, at 32.  It contends that Universitas wrongly relies on relating to Avon-WY's operations prior to 2010 *before* it was "administratively restarted for an existence and purpose separate and distinct from prior operations."  *Id.*

This is not so.  Trudeau, an Avon-WY member in May 2010, reinstated Avon-WY in November 2010, in order to unload the Avon-CT/Charter Oak Trust policies.  After reinstatement, Avon-WY still had the same financial obligations to SDM under the purchase agreement it entered into on December 2009, signed by Trudeau.  Again, Avon-WY did not even have a bank account until Trudeau opened one in 2012.  Yet, before that account was opened, Avon-WY satisfied a host of obligations through the two Avon-NV bank accounts, including the SDM-purchase payments to Moran and consulting fees to Terrell.  And Avon-WY facilitated the unloading of the Charter Oak policies in 2010, which involved only Avon-CT and the Ridgewood facility.  Neither Avon-WY nor Avon-CT have produced any bank account records for the 2009-2010 period.  These factors also weigh in favor of piercing the corporate veil.  *See also Kloefkorn-Ballard*, 683 P.2d at 661.

55

### 3. Intermingling confirms this.

Intermingling looks at business operations, assets, and finances, and requires an analysis of various aspects of the LLC, including commingled assets (such as using the LLC's property as the member's personal property) and separate bank accounts and business records. *GreenHunter,* 337 P.3d at 464; *see also Mantle*, 437 P.3d at 800 (relying on the following factors to support a finding of intermingling: using the same accounting department, having the same business addresses, having consolidated tax returns, lacking separate sources of revenue from the member, failing to have any independent employees from the member, and "the member manipulated the assets and liabilities such that the member reaped all benefits of the LLC's activities while the LLC was saddled with all losses and liabilities") (citation omitted).

Universitas argues "Avon Capital is a singular integrated entity." Doc. 187, at 28. Avon-WY calls this assertion "outlandish (and unsupported)." Doc. 204, at 32. It is not. As this Court has already found, there is plentiful intermingling among the three entities, each of which Carpenter controlled. Doc. 92, at 5-6.[32] In 2009-2010, all three entities listed the principal and/or

---

[32]    Trudeau testified that his "interest lied in the operating business." Doc. 187, Att. 6, at 94, lns. 9-10. By "operating business," he meant "Avon Capital in its entirety, whether it's [Avon-CT] or [Avon-WY] or whatever, dealt with the assets of the one part of that." *Id.* lns. 13-15. This suggests Trudeau also treated the Avon entities interchangeably for operational purposes.

mailing address as 100 Grist Mill Road in Simsbury, CT.  Maintaining the same addresses is "highly probative" evidence.  *See Nov. 2013 Nova*, 2013 WL 6123104, at *9 (noting, in addition, that Carpenter "admits to having established and controlled hundreds of entities" sharing this office).  In April 2016, Carpenter testified he was "privy" to each of the three entities.  Doc. 147, Att. 5, at 144, lns. 14-16.  He testified Avon-NV had no employees or office space.  *Id.* at 146, lns. 10-16.  The Southern District of New York has already adjudged Benistar to be an alter ego of the Judgment Debtors.  Doc. 147, Att. 29, at 2.  Avon-NV was set up by an individual who worked for Benistar.  *Id.* Att. 5, at 144, lns. 19-25.  Though that person was involved in the secondary market for life insurance, Avon-NV did not engage in any life-settlement transactions.  *Id.* at 146, lns. 1-6.

Carpenter testified Avon-WY was formed because "Wyoming has the best laws in the country for doing life settlement transactions."  *Id.* at 147, lns. 2-6.  Carpenter stated he was unaware of who the members of Avon-NV were and that he could not recall if any of his entities were members of Avon-WY. *Id.* at lns. 17-22.  He knew Avon-WY was involved in the acquisition of SDM, because Trudeau had introduced him to the previous owner of SDM, Moran. *Id.* at 148, lns. 4-23.  The Southern District of New York found Carpenter's testimony about his denial of having a relationship with Nova incredible, as well as most of his testimony for other matters in that case, including his

explanations for the purpose of the 2009-2010 transfers of the Charter Oak Trust insurance proceeds.  *See Nov. 2013 Nova*, 2013 WL 6123104, at *2-5; *Aug. 2014 Nova*, 2014 WL 3883371, at *3.  Carpenter, as the signatory on the Avon-NV People's bank account, also signed at least one check to ASG to satisfy a payment Avon-WY owed.

Although Avon-WY vehemently argues it is a separate and distinct entity from Avon-CT and Avon-NV, the facts do not support this contention. Carpenter and Trudeau undertook an elaborate and complex series of actions. They orchestrated transactions among the three Avon entities that ignored legal formalities, which suggests the confusion and overlap was by design, at least in part to continue to hide assets from Universitas.  For example, from 2009-2010, two bank accounts that Carpenter opened using Avon-NV, serviced all three entities.  And Carpenter used the Avon entities interchangeably to suit his needs:  Avon-CT was set up for transactions related to the Ridgewood facility and the Charter Oak Trust, Avon-WY for life settlements, and Avon-NV served as the account holder for each.  Carpenter manipulated the assets and liabilities of the only Avon LLC with an account, Avon-NV.

Carpenter also identified himself as "Chairman of [the] Managing Member of Avon Capital, LLC" in signing the Ridgewood facility agreement, which pertained to Avon-CT.  Doc. 187, Att. 9, at 3.  But Avon-CT's managers were Trudeau, Robinson, and Bursey, while Avon-WY's managing member was

Caroline Financial, for which Carpenter served as Chairman. The interchangeable use of the Avon entities caused confusion and deception.

This confusion caused the *August 2014 Nova* court to identify all the judgment debtors as Connecticut or Delaware entities in the turnover action involving Avon Capital, LLC. 2014 WL 3883371, at *7. But, in the same action, Carpenter referred to himself as serving as Chairman of Caroline Financial, which in turn served as the managing member of Avon Capital. Doc. 205, Att. 2, ¶ 1. And again, that is true for Avon-WY—but *not* for Avon-CT. Similarly, the *August 2014 Nova* court identified the judgment debtor's managing member as Grist Mill Capital. 2014 WL 3883371, at *3. And that is true for Avon-NV—*not* for Avon-CT.

Avon-WY argues that it "kept its bank accounts and financial records entirely separate from those of its members" so it is not intermingled with Judgment Debtors. Doc. 204, at 32. This is untrue, at least to the extent that funds from Avon-NV's bank accounts satisfied Avon-WY's payment obligations to Moran for the SDM purchase agreement and satisfied Avon-CT's obligations on the Charter Oak Trust Waldman policy, as Universitas argues. Doc. 187, at 23. And Avon-WY fails to point to any bank account it maintained before 2012.

Avon-CT, Avon-NV, and Avon-WY are "not only owned, influenced and governed by its members, but the required separateness has ceased to exist

due to misuse of the limited liability compan[ies]." *Mantle*, 437 P.3d at 799 (quotation omitted); *see also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 390-91 (4th Cir. 2018) (finding three distinct LLCs that operated as a "single economic entity" with funds "transferred freely among the LLCs" without explanation, including payment of expenses of one LLC by another, were alter egos of a sole member who "utterly dominated and controlled" them); *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) ("The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . .") (quoting *Shamrock Oil & Gas Co. v. Ethridge*, 159 F. Supp. 693, 697 (D. Colo. 1958)).  When looking at the undisputed facts of the three Avon's operations, as a whole, no rational juror could find otherwise.  *See Terrapin*, 1981 WL 15490, at *3; *Oren*, 1992 WL 79110, at *2; *see also Kloefkorn-Ballard*, 683 P.2d at 661.

### 4. Injustice confirms this.

Universitas argues that the Avon entities are "judgment-proof shells" that benefited from Carpenter's fraudulent transfers intended to hide money from Universitas, so affording them veil-piercing protection would result in injustice.  Doc. 187, at 21.  Before the *November 2013 Nova* court, and continuing through this and other related litigation, Universitas "has engaged

in wide-ranging discovery efforts in aid of execution of the Judgment, which have been met with vigorous opposition by Nova and its affiliates." 2013 WL 6123104, at *2. As to whether an injustice would result in this case if the Court did not apply the alter-ego doctrine, depriving Universitas of the fruits of its judgment against Avon would result in an injustice. "When, as here, the corporation is a mere dummy and the alter ego of a judgment debtor with no real existence apart from [that judgment debtor], the fiction of the corporation as a separate legal entity [cannot] be used to defeat the rights of the judgment creditor." *Shamrock Oil & Gas Co.*, 159 F. Supp. at 698. Undoubtedly, "the facts are such that an adherence to the fiction of its separate existence would, under the particular circumstances, lead to injustice, fundamental unfairness, or inequity." *Mantle*, 437 P.3d at 799 (quotation omitted); *see also AMFAC*, 645 P.2d at 81(holding that when the party making an alter-ego claim is "the victim of some basically unfair device" where the separate existence of the entity is "used to achieve an inequitable result," a court will disregard that entity under Wyoming law); *Kloefkorn-Ballard*, 683 P.2d at 661.

## 5. Conclusion.

A reasonable jury viewing the evidence in the light most favorable to Avon-WY, and drawing all reasonable inferences in its favor, could not find Avon-WY, Avon-CT, and Avon-NV operated as anything but alter egos. The

Court grants summary judgment in favor of Universitas. *Dewitt*, 845 F.3d at 1306.

### C. The Court denies Avon-WY's motion for summary judgment.

Avon-WY's arguments against an alter-ego determination stress the separateness of the three Avon entities. Doc. 195, at 14-18. Avon-WY argues Universitas presents only "generalized claims" and fails to meet its burden to present "specific facts showing a genuine issue for trial." *Id.* at 10-11; Doc. 214, at 8-14. Avon-WY maintains Universitas presents no clear and convincing evidence supporting fraud, apart from relying on the bad acts of others. Doc. 195, at 16-17; Doc. 214, at 5.

Avon-WY argues it must be treated as distinct from its previous iteration.[33] Doc. 195, at 14. Avon-WY argues that Carpenter's involvement with Avon-WY was before it became "dormant" when it was administratively dissolved in June 2009. *Id.* It argues its current active state was "restarted" by Trudeau for "an existence and purpose separate and distinct from any event . . . prior to 2009." *Id.* But, Avon-WY cannot discount the probative evidence

---

[33] Avon-WY's use of the two reinstatement dates in its briefs only adds to the confusion. Avon-WY sometimes argues it was dissolved in 2009 at which time it became dormant until being reinstated in 2011, leaving out the first reinstatement and second dissolution. *See* Doc. 195, at 4-5; Doc. 204, at 20. And other times, Avon-WY uses the 2010 reinstatement as the point in time when its activities became "separate and distinct" from prior operations. *See* Doc. 195, at 4-5, 14, 17, 18; Doc. 204, at 21.

of alter-ego liability, most notably the purchase of SDM with funds from the Avon-NV TD bank account.

Avon-WY offers as undisputed facts: Trudeau "had no involvement with [Avon-WY] prior to his reinstatement of it in 2011"; Avon-WY "had no liabilities when Don Trudeau administratively reinstated [it]"; and Trudeau reinstated it "for business operations with a purpose separate and distinct from the prior business operations that used the entity." *Id.* at 5 ¶¶ 6, 8-9; *id.* at 14. In making these allegations, Avon-WY cites Trudeau's 2013 testimony, which does not support these assertions. *See id.* Att. 5.

Next, in its reply brief, Avon-WY backtracks and acknowledges that Trudeau held ownership interests in Avon-WY after its first administrative dissolution in 2009, contrary to its prior insistence that he was not involved with Avon-WY before reinstatement. Doc. 214, at 11. Avon-WY also admits it "had an obligation to purchase SDM," and that Trudeau served as the signatory (seemingly admitting Avon-WY was not dormant after this dissolution and again conflicting with its previously stated undisputed facts). *Id.* at 12.

Avon-WY's arguments fail for the reasons outlined above. First, Universitas disputes the argument that Avon-WY became dormant in the period after its administrative dissolution and before it was reinstated by Trudeau for a "different purpose." *See* Doc. 205, at 21. As shown, Avon-WY

was in fact very active in the period between dissolution and reinstatement. The relevant period involves the transfers of $30 million of Avon-CT-related Charter Oak Trust life insurance proceeds to various entities, including to Avon-NV's bank account. Also included is the December 2009 SDM acquisition, which Avon-NV funded on Avon-WY's behalf. The Charter Oak Trust-Tranen-Yates transactions took place on November 12, 2010. The transfer from Avon-WY to Life Elite were completed November 15, 2010, the day Trudeau applied to reinstate Avon-WY.

Try as it might, Avon-WY cannot refute Carpenter's control of each of the Avon entities; Trudeau's involvement with Avon-WY (beyond bold factual misstatements that he was not involved until either 2010 or 2011); Trudeau's signing the SDM deal on Avon-WY's behalf in 2009 after the receipt of the Charter Oak Trust monies; the rapid reinstatement of Avon-WY and transactions in the latter half of 2010 timed in tandem with the Charter Oak Trust transactions; Avon-NV's payment of various SDM/ASG-related fees and payments to the Morans and related entities; and Avon-NV's payments to Avon-WY's consultant Terrell. Avon-NV also funded at least some of Avon-CT's activities, as the Avon-NV TD bank account shows. *See* Doc. 187, Att. 13, at 1, 4, 7-9 (reflecting two $44,150.00 Waldman policy payments in August and October 2009).

64

Viewing the factual record and making all reasonable inferences in favor on Universitas, the Court denies Avon-WY's motion for summary judgment. The evidence not only weighs in Universitas's favor, but is so one-sided that only Universitas can prevail as a matter of law.  *See Anderson*, 477 U.S. at 252.

## VII.   THE COURT DENIES SDM'S MOTION TO QUASH THE GARNISHMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT.

Because SDM's motion for partial summary judgment contains substantially similar language to its motion to quash garnishment, the Court will address the motions together.  *See* Docs. 191-92.

SDM seeks to quash Universitas's writ of garnishment, arguing in part it "[d]oes not believe any further relief is sought against SDM."  Doc. 191, at 2. SDM also argues it "was not properly served with all of the required documents."  *Id.* at 5.  Universitas responds that SDM has previously "entered an appearance in this proceeding identifying itself as a 'Garnishee'" so even if it was improperly served, it is "properly before the Court as a garnishee."  Doc. 206, at 6.  Universitas also argues "voluntary appearance is equivalent to service" and it "can occur at any point in the proceeding . . . ."  *Id.* (citing *Wagoner v. Saunier*, 627 P.2d 428, 431 n.4 (Okla. 1981)).

SDM argues that its counsel's appearances were for *Respondent* SDM, primarily to respond to a motion for contempt and a motion to compel.  Doc. 211, at 2, 8; Doc. 212, at 4-5.  SDM waived service by its appearance, producing

documents, corresponding with Universitas's counsel, participating in a status conference, filing a joint status report, and winning relief in the form of sanctions. *See, e.g.*, Docs. 113, 115, 134, 137, 142, 148; *Hopper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) ("'[A]n individual may submit to the jurisdiction of the court by appearance,' and voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court." (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-04 (1982))).

In addition to the arguments regarding lack of relief sought and service included in the motion to quash, SDM alternatively argues in its motion for summary judgment that SDM is not liable as a garnishee because it is not indebted to and does not possess assets belonging to the Judgment Debtor. Doc. 192, at 9-10.  SDM makes "the claim of exception on the part of the judgment debtor(s) . . . [that SDM] is neither owned by nor indebted to the actual judgment debtor(s): [Avon-CT] and/or [Avon-NV]." *Id.* at 10 (quoting *id.* Att. 1).  In determining the Avon entities are alter egos, the Court finds they are one and the same for purposes of their liability to Universitas.  *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 143 (2d Cir. 1991) (stating that once alter-ego status is established, "the previous judgment is then . . . enforced against entities who were, in essence, parties to the underlying dispute[ and] the *alter egos* are treated as one entity").  Because

Avon-WY owns one hundred percent of the membership interests in SDM,[34] SDM possesses assets of a judgment debtor.  *Id.*  The undersigned finds Universitas does seek relief against SDM, as SDM serves as Avon-WY's "most notable asset."  Doc. 92, at 4 n.2.  Viewing the factual record and making all reasonable inferences in favor of the nonmovant, the Court denies SDM's motion for partial summary judgment.

## VIII.  THE COURT DENIES UNIVERSITAS'S MOTION TO STRIKE SDM'S MOTION TO QUASH AND ITS REQUEST FOR SANCTIONS AGAINST SDM.

In seeking to strike SDM's motion, Universitas argues that every issue in the motion to quash is "also addressed in SDM's Motion for Summary Judgment <u>and</u> SDM's Opposition to Petitioner's Motion for Summary Judgment."  Doc. 208, at 1.  What else could SDM "hope to accomplish by filing the same argument three times, other than 'to harass, cause unnecessary delay, or increase the cost of litigation'"?  *Id.* at 2.  In fact, "Mr. Carpenter and his associates have a demonstrable history of filing motions solely to 'harass, cause unnecessary delay, or increase the cost of litigation.'"  *Id.* (citing *Nova SDNY Litig.*, No. CIV-11-1590-LTS-HBP; *Universitas Educ., LLC v. Nova Grp., Inc.,* 2013 U.S. Dist. LEXIS 142481, at *11 (S.D.N.Y. Sept. 30, 2013) (indicating that Nova's "re-filing of the motion to dismiss was in bad faith and

---

[34]     *See* Doc. 57, Att. 3, at 2, ¶ 7.

with a motive to delay, harass, or needlessly increase the cost of litigation")).

Finally, Universitas notes SDM is run by Kehoe, a Benistar employee.  *Id.*

Despite the demonstrable history of filing motions to harass and delay on the part of a multitude of Carpenter-controlled entities, the Court notes SDM's counsel states it is acting in good faith and out of an abundance of caution.  Doc. 191, at 1; Doc. 192, at 2.  SDM's counsel was uninvolved in the turnover proceedings or any other apparent litigation in this matter.  As such, the Court finds the denial of Universitas's motion to quash to be appropriate.

## IX.   CONCLUSION.

Avon-WY and Avon-NV are alter egos of Avon-CT.   Given this, Universitas may enforce the judgment it registered here against any of the three Avon entities.  28 U.S.C. § 1963 (A judgment has "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."); *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 143; *see also Condaire*, 286 F.3d at 357 (noting that registration under § 1963 equates to a "new judgment" and  recognizing § 1963's grant of "inherent powers . . . to enforce [such] judgments"); *Sys. Div., Inc. v. Teknek Elecs., Ltd.,* 253 F. App'x 31, 37 (Fed. Cir. 2007) ("The exercise of [personal] jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity* . . . ."); *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2011) ("[A]mending a judgment to add

an alter ego does not add a new defendant but instead inserts the correct name of the real defendant.").  So, the Court may enjoin each of these entities from transferring, alienating, and/or concealing or encumbering any non-exempt property.

## X.    RECOMMENDATIONS AND NOTICE OF RIGHT TO OBJECT.

For the reasons discussed above, the undersigned recommends:

1. The Court DENY Avon-WY's motions to strike, Docs. 193, 213.

2. The Court GRANT SDM's motion to join Avon-WY's first motion to strike, Doc. 196.

3. The Court GRANT Universitas's motion for summary judgment and find that Avon-WY and Avon-NV are alter egos of Avon-CT, the named judgment debtor, Doc. 186.

4. The Court DENY Avon-WY's motion for summary judgment, Doc. 194.

5. The Court DENY SDM's motion to quash, Doc. 191.

6. The Court DENY SDM's motion for partial summary judgment, Doc. 192.

7. The Court DENY Universitas's motion to strike SDM's motion to quash, Doc. 208.

8.  The Court ENJOIN Avon-WY from transferring, alienating, and/or concealing or encumbering its ownership of any interest in SDM.

9. The Court ENJOIN Avon-WY, Avon-CT, and Avon-NV from transferring, alienating, and/or concealing or encumbering any non-exempt property.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before November 3, 2020, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in the captioned matter.

ENTERED this 20th day of October, 2020.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| ASSET SERVICING GROUP, LLC | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| SDM HOLDINGS, LLC, | ) | |
| | ) | |
| Respondent/Garnishee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AVON CAPITAL, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | |
| Intervenor. | ) | |

## <u>ORDER</u>

This case involves the efforts of petitioner Universitas Education LLC to collect a judgment for $6,710,065.92 entered in its favor in the United States District Court for the Southern District of New York.  The judgment was later registered in this district and efforts here have centered on petitioner's attempt to establish that Avon Capital LLC, a Wyoming limited liability company ("Avon Capital LLC – Wyoming"), is one and the

same as the judgment debtors against whom the original judgment was entered.[1]  Avon Capital LLC – Wyoming is the nominal owner of SDM Holdings LLC, an Oklahoma limited liability company.  Petitioner seeks to collect its judgment, via attachment, garnishment, or otherwise, from SDM Holdings and/or its assets.

The court referred all post-judgment collection matters to U. S. Magistrate Judge Suzanne Mitchell for further proceedings.  Judge Mitchell has now issued a Report and Recommendation (the "Report") recommending various dispositions of the pending motions.  Avon Capital LLC – Wyoming and SDM Holdings LLC have objected to the Report, which triggers *de novo* review of the matters to which objection has been made.

The background of this dispute is set forth in detail in the Report, in prior orders of the court, and in decisions of the U. S. District Court for the Southern District of New York and will not be repeated here.  Suffice it to say that multiple enforcement efforts and proceedings have resulted from the fraudulent conduct of Daniel Carpenter and the transfers of assets initiated by him, at his direction, or through other entities controlled by him.

The central conclusion and recommendation in the Report is that Avon Capital LLC – Wyoming is the alter ego of Avon Capital entities organized in Nevada and Connecticut and that petitioner may enforce its judgment against any of those Avon entities.  The Report reached that conclusion applying the summary judgment standard, concluding that a reasonable jury, even viewing the evidence in the light most favorable

---

[1] *All the Avon entities are named Avon Capital LLC, but are organized under different state's laws.  Here, the court identifies the particular entities by addition of the name of the state of formation.*

to Avon Capital LLC – Wyoming could not reach any conclusion other than that Avon Capital LLC – Wyoming, Avon Capital LLC – Connecticut, and Avon Capital LLC – Nevada, were, and were operated as, alter egos.

The Report makes a detailed and thorough analysis of the history of the various entities, the evidence as to the shifting of funds through multiple entities controlled by Mr. Carpenter and his associates, and, in particular, the evidence as to the shifting of funds through those entities to Avon Capital LLC – Wyoming and its acquisition of SDM Holdings.  The court has carefully reviewed that evidence in light of the Avon and SDM objections and readily concludes, like Judge Mitchell, that no jury could plausibly conclude that Avon Capital LLC – Wyoming is other than the alter ego of the other Avon entities.  The objections now offered — such as SDM Holdings' complaint that, after three years of litigation on the subject, no one filed a formal pleading seeking an alter ego determination, or Avon Capital LLC – Wyoming's argument that none of the fraudulent actors had an ownership interest in Avon Capital LLC – Wyoming (ignoring the undisputed evidence as to control and beneficial ownership) — are thoroughly unpersuasive.  SDM Holdings also contends that the court lacks ancillary jurisdiction over the alter ego claims.  The court agrees with the Report, however, that even if ancillary jurisdiction is lacking the court has diversity jurisdiction to resolve this case. Universitas, a citizen of New York,[2] is completely diverse from all Avon Capital entities and SDM Holdings.

---

[2] *The court takes judicial notice of the pleadings in Case No. 11-CV-1590, U.S. District Court for the Southern District of New York.*

In light of these conclusions and substantially for the reasons stated in the Report, the Report [Doc. # 218] is **ADOPTED**.  Consistent with the Report's recommendation, the court **ORDERS** as follows:

1.  Avon Capital LLC – Wyoming's motions to strike [Doc. Nos. 193 and 213] are **DENIED**;

2.  SDM's motion [Doc. # 196] to join in Avon Capital LLC – Wyoming's motion to strike is **GRANTED**;

3.  Petitioner's motion for summary judgment [Doc. #186] is **GRANTED**.  Avon Capital LLC – Wyoming is deemed to be the alter ego of Avon Capital LLC – Connecticut and Avon Capital LLC – Nevada and petitioner is entitled to enforce the registered judgment [Doc. #1] against any of the three;[3]

4.  Avon Capital LLC – Wyoming's motion for summary judgment [Doc. #194] is **DENIED**;

5.  SDM's motion to quash [Doc. #191] is **DENIED**;

6.  SDM's motion for partial summary judgment [Doc. #192] is **DENIED**;

7.   Petitioner's motion to strike the SDM motion to strike [Doc. #208] is **DENIED**;

8.  Avon Capital LLC – Wyoming is **ENJOINED** from transferring, alienating, concealing, or encumbering its ownership or other interest in SDM;

---

[3] *The judgment was initially entered against "Nova Group Inc." but later legal proceedings established "Avon Capital LLC", among others, was an alter ego of the nominal judgment debtor.*

9.  Avon Capital LLC – Wyoming, Avon Capital LLC – Connecticut, and Avon Capital LLC – Nevada are **ENJOINED** from transferring, alienating, concealing, or encumbering any non-exempt property so long as the registered judgment remains unpaid.

The parties are directed to confer and advise the court, by a joint filing within 14 days, of their view(s) as to whether, in light of the above disposition, other issues remain for resolution in this proceeding and, if so, what.

**IT IS SO ORDERED**.

Dated this 11th day of February, 2021.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,    )
    )
       Petitioner,    )
    )
vs.    )    NO. 14-FJ-0005-HE
    )
AVON CAPITAL, LLC, *et al.,*    )
    )
       Respondent.    )

## ORDER

A Writ of General Execution [Doc. #10] and Post-Judgment General Garnishment Summons [Doc. #13] were issued to SDM Holdings, LLC ("SDM"). The court denied SDM's Motion to Quash the garnishment summons [Doc. #228]. The writ of execution and summons have been pursued consistently by plaintiffs since December of 2015 and remain pending before the court. Accordingly, SDM is ordered to file an answer to the Writ of General Execution and Garnishment Summons within **thirty (30) days** of the date of this order.

**IT IS SO ORDERED**.

Dated this 26th day of February, 2021.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,      )
                                 )
              Petitioner,         )
                                 )
vs.                              )         NO. 14-FJ-0005-HE
                                 )
AVON CAPITAL, LLC,               )
                                 )
              Respondent/garnishee.  )


## ORDER

The motions of SDM Holdings, LLC to alter judgment [Doc. #231] and to amend the judgment [Doc. #233] are **DENIED**.  To the extent that movant relies on the five-year period referenced in 12 Okla. Stat. § 735, the court notes that execution was issued soon after registration of the foreign judgment, that plaintiff has actively pursued its enforcement since that time, and the enforceability of the execution has been in active litigation since that time.[1]  To the extent that the motions seek to revisit matters already addressed by the court in its prior orders, they do not set out a persuasive basis for doing so.  Finally, to the extent that plaintiff wishes to refile its judgment as a protective matter and views leave of court as necessary to do so, leave is granted.  *See generally*, Taracorp, LTD. v. Bailey, 419 P.3d 217 (Okla. 2018).  In the event of such re-refiling, all prior orders of this court

---

[1] *SDM Holdings' suggestion [Doc. #239] that the "case or controversy" has evaporated based on its argument as to the passage of time is thoroughly unpersuasive.*

addressing the substantive issues in this case will be deemed re-entered *instanter* as to the

renewed filing.

**IT IS SO ORDERED**.

Dated this 8th day of April, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀NO. 14-FJ-0005-HE
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
AVON CAPITAL, LLC, *et al.*,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondents.⠀⠀⠀⠀)

## ORDER

The court held a hearing on September 20, 2021, on several of the pending motions in this case: (1) petitioner's motion for application of property [Doc. #287], (2) petitioner's motion for appointment of receiver [Doc. #289], and (3) respondent Avon Capital's motion to stay [Doc. #302]. For the reasons stated below, the court concludes the motion to apply should be denied, the motion for receiver granted, and the motion to stay conditionally granted.

### Background

This case involves the post-judgment collection efforts of petitioner Universitas Education LLC to collect a judgment entered against Avon Capital LLC and others in the U.S. District Court for the Southern District of New York. The judgment against Avon Capital (which was a portion of the overall $30,600,000 judgment) was in the amount of $6,710,065.92. The judgment was later registered in this district and petitioner's efforts here have been directed at the amounts owed by Avon Capital.

The background of this dispute is long and involved.  It arises out of the activities of Daniel Carpenter and other persons and entities owned or controlled by him.  Mr. Carpenter has multiple criminal convictions, including a 2016 conviction for mail and wire fraud, money laundering, and similar offenses.  United States v. Carpenter, 190 F.Supp.3d 260 (D. Conn. 2016), aff'd. 801 Fed. Appx. 1 (2nd Cir. 2020), cert. den. 141 S.Ct. 820 (2020).  Certain of the counts of conviction were based on the same insurance policies which are the basis for the Universitas judgment sought to be enforced here. The nature of Mr. Carpenter's scheme and the use of various entities to advance it are described in Carpenter.   Universitas ultimately recovered the civil judgment involved in this case.  The subsequent litigation arising out of Mr. Carpenter's efforts to divert the insurance proceeds are fully described in the Report and Recommendation previously generated by Judge Mitchell [Doc. #218] and in the various court decisions referenced in the Report.

The court previously adopted the Report and Recommendation, concluding among other things that the LLC formed under Wyoming law as "Avon Capital LLC" is the alter ego of the "Avon Capital LLC" entities formed under the laws of Connecticut and Nevada and hence subject to the judgment sought to be collected by Universitas.  Order of February 11, 2021 [Doc. #228]. It is undisputed that SDM Holdings, LLC, an Oklahoma limited liability company whose holdings are the subject of these motions, is wholly owned by Avon Capital.   In the February 11 order, the court enjoined Avon from transferring or encumbering its assets.  Respondents have appealed the court's February 11 order to the Tenth Circuit Court of Appeals.

The parties' submissions indicate that SDM holds the beneficial interest in several life insurance policies having an estimated value of $4.2 million.[1]   Universitas seeks to realize on those policies for application to its judgment.

<u>Discussion</u>

The two motions now advanced by Universitas seek to realize on the value in the policies held by SDM in two ways — by applying them directly based on the imposition of a constructive trust in its favor and by protecting them from diversion via the appointment of a receiver for Avon Capital.

a. *Constructive trust.*  Universitas seeks to have the court order the application of the policies to its judgment on the basis that SDM and/or the policies it held were acquired with funds wrongfully diverted from entities subject to the judgment. Respondents object to that on the basis that SDM holds the policies and that SDM is not a judgment debtor.  That is true, but also beside the point for purposes of the constructive trust theory.  "A constructive trust is a legal fiction, an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant."  <u>United States v. Andrews</u>, 530 F.3d 1232 (1237 (10th Cir. 2008) (quotations and citation omitted).  So Universitas is seeking application of the policies not because SDM is a judgment debtor, but because SDM is nominally holding ownership of policies that are, in substance, owned by entities which <u>are</u> subject to the judgment.

---

[1] *Various aspects of the Carpenter entities' involvement in life insurance policy initiation and financing are set forth in <u>Carpenter</u> supra.*

Respondents also argue that Universitas cannot reach the policies via a constructive trust because Oklahoma law makes a charging order against the LLC the sole means of realizing on the assets, relying on 18 Okla. Stat. §2034.  However, that statute is directed to a judgment creditor's effort to realize on a judgment creditor's "membership and capital interest".  Here, SDM is not a judgment debtor and petitioner is not seeking a realize on SDM's membership or capital interests as such.  Rather, it is seeking to establish that SDM is not, in substance, the legitimate owner of the assets at issue.

While the court is persuaded that Universitas has made out the necessary trail of improper asset diversions to make imposition of a constructive trust plausible, it concludes the imposition of a trust is not presently warranted in the particular circumstances of this case.  This court's alter ego determination making Avon Capital (the Wyoming entity) subject to the judgment being collected is on appeal.  Therefore, the most pertinent concern now is protecting petitioner's ability to realize on those assets if, as expected, the alter ego determination is upheld either on appeal now or in further proceedings.  As alternate and more appropriate means exist for protecting petitioner's interest in the subject assets pending that appeal, the court concludes it is unnecessary to ultimately resolve now whether imposition of a constructive trust is warranted.  The motion for application of the insurance policies now will therefore be denied.

b. *Appointment of a receiver.*  Universitas also seeks the appointment of a receiver for Avon Capital LLC (the Wyoming entity) to aid in the collection of its judgment against Avon Capital.  Fed.R.Civ.P. 69 generally provides that execution and other

proceedings in aid of collection of a judgment shall be in accord with the procedures of the state where the court sits.  Petitioner relies on 12 Okla. Stat. § 1151, which authorizes the appointment of a receiver in various circumstances, including where a judgment creditor seeks to dispose of property in satisfaction of the judgment or to preserve it during the pendency of an appeal.  *See* § 1151(4).  It argues a receiver is warranted here because Avon Capital, along with the other Carpenter-related entities, has failed and refused to pay any portion of the judgment, that they have engaged in a sustained pattern of fraudulent transfers to avoid paying the judgment, and that Avon is insolvent apart from the insurance policies (and maybe even with them).  Respondents generally object on the basis that the court's prior alter ego and related determinations were incorrect and on the basis that there is no reason to believe the court's prior injunction orders restraining disposition of assets will not protect petitioner's claimed interest in the assets.

The court concludes appointment of a receiver is warranted.  Avon appears to be insolvent based on its own records.  Further, the somewhat exotic manner in which Avon has accounted for its finances leaves the court with little confidence in those records.[2] More importantly, the history of the Carpenter entities' efforts to avoid paying this judgment over the past six or seven years leaves the court with even less confidence that these assets will be maintained in place to satisfy the judgment if, at the conclusion of the process, Avon (Wyoming) is finally determined to be a judgment debtor.   As other

---

[2] *SDM's most recent annual balance sheet shows no entry of the life insurance policies which are its principal assets, instead showing "goodwill" which it apparently amortizes over time.  SDM's counsel, who indicates he is also a CPA, could not explain why it would have accounted for the transactions in that fashion.  The showing of a liability to "affiliates" for the acquisition cost of SDM also makes little sense.*

courts have observed, Mr. Carpenter has used hundreds of shell entities to hide assets from his or their creditors.  Further, he and his related/controlled entities have a long track record of improperly shifting assets from one entity to another for that purpose, as set out in considerable detail in Judge Mitchell's report.

Respondents contend that the injunctive orders previously entered by the court are sufficient protection for petitioner's claimed interest in the insurance policies.  In other circumstances, the court might find that argument persuasive.  But against the backdrop of sustained resistance to payment and improper conduct by Carpenter and his entities over several years, the court sees no reason to give respondents the benefit of the doubt on that issue.  Further, the court is mindful of the practical limitations on its ability to enforce its order via contempt or otherwise.  The orders are, at present, directed to entities rather than individuals and to entities which would otherwise be unable to respond to a judgment of contempt.  In those circumstances, normal penalties for violation of a court order have less bite.

In any event, the court concludes the appointment of a receiver for Avon is warranted.

Insofar as the scope of the receivership is concerned, the receiver will be appointed only for Avon Capital LLC, the entity formed under Wyoming law.  While the court's alter ego determination embraces the similarly named entities formed under Connecticut and Nevada law, it is only the Wyoming entity which owns SDM.  Further, the receiver will be appointed as to <u>all</u> aspects of Avon Capital (Wyoming) LLC's property and activities.  In other circumstances, such as where an out-of-state entity with

multiple properties and interests was involved, the court would normally impose appropriate limits on the scope of the receiver's authority tied to the properties or interests at issue.  Here, however, it is undisputed not only that SDM is an asset of Avon Capital (Wyoming) but that it is substantially the sole asset of that entity.  It is therefore appropriate that the receiver act as to Avon Capital (Wyoming) LLC's interests generally.

The receiver's authority shall extend to and include the right to exercise the membership rights of Avon Capital relative to SDM, including the right under the SDM operating agreement [Doc. #292-2] to replace the manager if the receiver concludes that is appropriate.   Absent further order of the court, however, and in light of the pending appeal, the receiver's authority shall not extend to causing or directing the sale by SDM of the various insurance policies at issue.  Should the receiver conclude that the sale of some or all of the policies is warranted, he must move for leave to do so and the court can then determine whether to permit the sale and what further steps should then be taken to protect the various interests of the parties.

The motion for appointment of a receiver will be granted.   Universitas has proposed Ryan Leonard Esq. to be the receiver.  Mr. Leonard has extensive experience acting as a court-appointed receiver (or counsel for the receiver), including receiverships for insurance companies, and Avon Capital and SDM indicated at the hearing they do not object to Mr. Leonard in the event the court concluded the appointment of a receiver to be appropriate.

c. *Motion to Stay*.  Avon Capital has moved to stay all post-judgment proceedings pending the resolution of the appeal to the Tenth Circuit.    Universitas objects,

contending Avon Capital is unlikely to prevail on appeal and that it would be harmed by a stay.  It indicates it would not object to a stay if the insurance policies were held in some sort of escrow arrangement, but objects otherwise.

The court is unpersuaded that petitioner would be harmed by a stay assuming an appropriate supersedeas bond is posted.   Further, as respondents have shown no interest in any sort of escrow arrangement as to the policies, the court concludes that a supersedeas bond is warranted and that it should be in the amount of the judgment sought to be collected plus interest and attorney fees.[3]

The motion to stay with therefore be granted, conditioned on the posting of a surety bond approved by the court.

<u>Conclusion</u>

For the reasons stated above:

(1) petitioner's motion for application of property [Doc. #287] is **DENIED**;

(2) petitioner's motion for appointment of receiver [Doc. #289] is **GRANTED**. Ryan Leonard, Esq. is appointed as Receiver of Avon Capital LLC (Wyoming), *instanter*, as set forth more fully by separate order.   The receiver will be required to post an appropriate receiver's bond in the amount of $10,000 within **seven (7) days**; and

---

[3] *There was evidence at the hearing that SDM estimated the value of the insurance policies at approximately $4.2 million some time ago.  However, the value can obviously fluctuate greatly based on the status of the persons covered by the policies.  In light of the limited nature of the evidence as to the value of the policies and the potential for the death of an insured greatly increasing their value in the meantime, the court concludes the bond should be based on the full amount of the judgment.*

(3)  respondent Avon's motion to stay [Doc. #295] is **GRANTED**, conditioned on and effective as of the approval by the court of a corporate surety bond in the amount of $11,100,000.00.[4]

**IT IS SO ORDERED**.

Dated this 22nd day of September, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[4] *This amount is based on the registered judgment amount of $6,710,065.92, plus approximate amounts estimating interest and attorney fees incurred since the registration of the judgment.*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,          )
                                     )
            Petitioner,          )
                                     )
vs.                                  )          NO. 14-FJ-0005-HE
                                     )
AVON CAPITAL, LLC, *et al.*,         )
                                     )
           Respondents.         )

## <u>ORDER</u>

For the reasons stated in the separate order entered this date, Ryan Leonard, Esq. is appointed as Receiver of Avon Capital LLC, a limited liability company formed under the laws of the State of Wyoming.  The court further **ORDERS** as follows:

1. The Receiver shall have the powers and duties ordinarily held by court-appointed receivers.  The Receiver is authorized to take possession of, manage, and operate Avon Capital LLC (Wyoming), its properties, and its activities in all aspects, subject to the supervision and control of the court.  This includes the authority to exercise the membership rights of Avon Capital LLC (Wyoming) as to SDM Holdings, LLC, including the right to replace its manager if the receiver concludes that is appropriate.

2. The Receiver is directed to identify and take such steps as may be appropriate to preserve the assets of Avon Capital LLC (Wyoming), including the insurance policies held through SDM Holdings, LLC.

3.      The Receiver is authorized to pay bills and expenses necessary to maintaining Avon Capital LLC (Wyoming) and its assets.

4.      The Receiver is authorized to enter into contracts for those services necessary to aid the Receiver in the administration of the Receivership, including, if necessary, the retention of attorneys and accountants and other professionals, with the reasonable expenses incurred in connection therewith deemed to be expenses of the receivership.

5.      Absent further order of the court, the Receiver's authority shall not extend to authorizing or directing, directly or indirectly, the sale or other disposition of the assets of SDM Holdings, LLC, including the insurance policies at issue in this case.

6.      The Receiver shall be entitled to reasonable compensation for his efforts as receiver, with the cost thereof to be an expense of the receivership.  The compensation shall be subject to the approval of the court.  Requests for compensation shall be made monthly.

7.      The Receiver is directed to file forthwith an Oath of Receiver, in substantially the form of the attachment to this order.  The Receiver is directed to file an appropriate receiver's bond, in the amount of $10,000, within seven days.

8.      The Receiver serves as such, and discharges his duties under this Order, as an officer of the court.  His actions as receiver are in a representative, rather than individual, capacity.  All persons dealing with the Receiver will look only to Avon Capital LLC (Wyoming), for satisfaction of all claims against, and obligations and liabilities of, the Receiver.

9.     The receiver is directed to file monthly reports of his findings and activities with the

court.

10.    The Receiver or any party may move to supplement and/or clarify this order of

appointment as necessary and appropriate.

**IT IS SO ORDERED**.

Dated this 22nd day of September, 2021.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

UNIVERSITAS EDUCATION, LLC,            )

3

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>vs.</td><td>)</td><td>NO. 14-FJ-0005-HE</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>AVON CAPITAL, LLC, <em>et al.</em>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondents.</td><td>)</td><td></td></tr>
</table>

## <u>OATH OF RECEIVER</u>

I, Ryan Leonard, the Receiver appointed by the court in the above-entitled cause on the _____ day of September, 2021, do solemnly swear as an officer of this court that I will faithfully discharge my duties as such Receiver, that I will well and faithfully account for all property and money that may come into my hands as Receiver, and that I will obey the orders of the court entered in this case.

_____

Ryan Leonard, Receiver

4

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming limited liability company,

      Intervenor.

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming limited liability company,

      Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor - Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

2

Respondent/Garnishee - Appellant.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

     Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

v.

 AVON CAPITAL, LLC,

     Respondent/Judgment Debtor,

and

 ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

     Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

     Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor -
     Appellee,

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

No. 22-6038
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

––––––––––––––––––––––––––

**ORDER AND JUDGMENT**[*]

––––––––––––––––––––––––––

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

––––––––––––––––––––––––––

    Appellee Universitas Education, LLC ("Universitas") seeks to enforce a

judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and

its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of

Oklahoma.  Universitas alleges that it was unable to recover the full judgment

––––––––––––––––––

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY.  The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021.  We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.  However, we remand the case to the district court to conduct further proceedings, now that Universitas has re-filed the judgment in the Western District of Oklahoma.

## I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007.  Each of these Avon entities was ninety-nine percent owned

by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million.  Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions.  One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account.  Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions."  Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM.  The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY.  Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer.  Universitas obtained a favorable award in arbitration.  Although the plan trustee sought to vacate the award in the U.S. District Court for the Southern District of New York, the award was confirmed on August 15, 2014.  The Southern District of New York found that Carpenter fraudulently transferred the $30 million in life insurance policies to hundreds of shell entities under his control.  Avon was one of

---

[1] Avon-WY was later reinstated.

6

these entities.  Thus, the Southern District of New York entered judgment for Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was only able to recover $6 million in funds.  Universitas filed the New York judgment in the Western District of Oklahoma on November 7, 2014.[2]  The Western District of Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow Universitas to execute the judgment against the insurance portfolio.  Universitas then attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of Avon-CT, the named debtor in the New York judgment.  The district court referred the matter to the MJ, who issued a Report and Recommendation finding that the entities were "one and the same for purposes of their liability to Universitas."  *Id.* at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the SDM insurance portfolio using stolen funds, the insurance portfolio was subject to garnishment.  The district court reviewed the MJ's recommendations de novo and agreed with all of them, granting summary judgment to Universitas on February 11, 2021.  The district court subsequently placed Avon-WY into a receivership pursuant to O.S. § 12-1551.

---

[2] This Order and Judgment uses the terms "register" and "file" interchangeably.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which states, "[a] judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date . . . [t]he last garnishment summons was issued." The district court denied SDM's motion and upheld the judgment in an order dated April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were consolidated by the Court on April 27, 2021.  Universitas re-filed the New York judgment in the Western District of Oklahoma on December 9, 2021.  Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00 (Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments for enforcement in other districts:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.  Such a judgment entered in favor of the United States may be so registered any time after judgment is entered.  A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on

> execution—and in proceedings supplementary to and in aid
> of judgment or execution—must accord with the procedure
> of the state where the court is located, but a federal statute
> governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law of the state where the judgment is filed, not the limitations period of the state where the federal district court that issued the judgment is located.  As Universitas is attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the state:

> A judgment shall become unenforceable and of no effect if
> more than five (5) years have passed from the date of:
> 1. The last execution on the judgment was filed with
>    the county clerk;
> 2. The last notice of renewal of judgment was filed
>    with the court clerk;
> 3. The last garnishment summons was issued; or
> 4. The sending of a certified copy of a notice of
>    income assignment to a payor of the judgment
>    debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217 (Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a second time in Oklahoma, after Oklahoma's limitation period has lapsed on the original judgment, the underlying original Colorado judgment which is enforceable for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the plaintiffs received a default judgment from the Colorado District Court in 2007 and filed it in Oklahoma District Court three days later.  *See id.* at 218–19.  Nine years

9

lapsed before they re-filed the judgment in Oklahoma.  *See id.* at 219.  The defendant

filed a Motion to Quash, arguing that it had been more than five years since the

Colorado judgment was entered, in violation of § 12-735(B).  *See id.*  The Oklahoma

Supreme Court concluded that "[a]lthough the Act does not address re-filing of

sister-state judgments, a judgment creditor may enforce a domesticated judgment in

Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for

enforcement of judgments has run on the original domesticated foreign judgment."

*Id.* at 223.

## b.

The MJ and the district court found that Universitas was entitled to enforce the

judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to

consider Oklahoma state procedural rules on the subject, as required by

F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after

five years unless one of the subsequent actions specified in the statute is taken.

Universitas's last relevant act was the issuance of a writ of garnishment to SDM on

December 3, 2015.  This means that Universitas's Oklahoma judgment expired five

years later, on December 3, 2020.  Contrary to the district court's statement in its

order denying SDM's motions to alter and amend the judgment, Universitas's active

attempts to enforce the judgment in Oklahoma were insufficient to render the

judgment enforceable under § 12-735(B).  There is no specified exception for active

attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment in Oklahoma anyway because the judgment has not yet expired in New York. However, the critical distinction between *Taracorp* and this case is that in *Taracorp*, the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement. *See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive issue of whether a Colorado judgment, which is enforceable in Colorado for twenty years after the judgment is entered, is also enforceable in Oklahoma when the first attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a foreign judgment creates a new local judgment which is governed by the local statute of limitations."  *Id.* at 221.  This language suggests that even though the Oklahoma Supreme Court permitted Taracorp to enforce its expired judgment after it had been re-filed, the court would not have allowed Taracorp to enforce its expired judgment without first utilizing one of the four methods specified in O.S. § 12-735(B). Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment."  *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

what Universitas seeks to do here—enforce a judgment that had previously been filed and expired in a particular state without re-filing said judgment in the same state. Because the re-filing of the judgment in *Taracorp* was a critical component of the Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by stating that:

> [T]o the extent that plaintiff wishes to refile its judgment as a protective matter and views leave of court as necessary to do so, leave is granted . . . . In the event of such re-refiling, all prior orders of this court addressing the substantive issues in this case will be deemed re-entered *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99. However, this blanket statement claiming that the order would extend to Universitas's potential future re-filing rendered the district court's judgment a legally impermissible advisory order. Though the district court initially had jurisdiction over this case, Universitas did not re-file its expired judgment before the district court entered its February 11, 2021 order. For the reasons explained above, that failure to re-file was fatal—there was no longer a judgment in existence for the district court to enforce at the time it entered the order. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). As the issue in this case was no longer live and

12

Universitas lacked a legally cognizable interest in the outcome once its judgment

expired in December 2020, the case became moot and the district court lacked

Article III jurisdiction to enter its order, rendering the order void.[4]

However, Universitas's re-filing of the expired judgment in the Western

District of Oklahoma on December 9, 2021 makes the judgment presently

enforceable under *Taracorp*.  We therefore vacate the district court's February 11,

2021 judgment because the district court did not have jurisdiction to enter its order

until Universitas re-filed its New York judgment in the Western District of

Oklahoma.[5]  And we remand the case to the district court to conduct further

proceedings, now that Universitas has re-filed the judgment.

## III.

For the foregoing reasons, we find that Universitas's expired judgment was

unenforceable and the case was moot at the time the district court entered its order.

But Universitas has since re-filed the judgment, vesting the Western District of

Oklahoma with jurisdiction once again.  Thus, we VACATE the district court's

February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte.").  Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

case to the district court to conduct further proceedings, now that Universitas has re-

filed the judgment in the Western District of Oklahoma.

Entered for the Court


Allison H. Eid
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                    Jane K. Castro
Clerk of Court                                                     Chief Deputy Clerk

July 13, 2023

Ms. Nanette Turner Kalcik
Mr. Alan L. Rupe
Mr. Francis Schneider
Lewis Brisbois Bisgaard & Smith
1605 North Waterfront Parkway, Suite 150
Wichita, KS 67206

Mr. Jeffrey R. Sandberg
Palmer Lehman Sandberg
8350 North Central Expressway, Suite 1111
Dallas, TX 75206

**RE:    21-6044, 21-6049, 21-6133, 21-6134, 22-6038, Universitas Education v.
Avon Capital, et al**
Dist/Ag docket: 5:14-FJ-00005-HE

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within
14 days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court


cc:      Joseph H. Bocock
         Joshua Clark Greenhaw
         Clayton D. Ketter
         Joseph L. Manson III
         Melvin R. McVay Jr.
         John Douglas Stiner


CMW/djd

2

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,    )
          )
       Petitioner,    )
          )
vs.          )     NO. 14-FJ-0005-HE
          )
AVON CAPITAL, LLC,    )
          )
       Respondent.    )

## <u>ORDER</u>

Per its decision entered this date, the Court of Appeals vacated the court's prior order of February 11, 2021 [Doc. #228] based on mootness and a resulting lack of subject matter jurisdiction but remanded the case for further proceedings in light of the court's reacquisition of jurisdiction based on petitioner's refiling of the foreign judgment.  In order to address the impact of the Court of Appeals' order on prior actions and to determine the course of further proceedings, this case is set for pretrial conference on **<u>August 15, 2023, at 1:30 p.m</u>**., in Courtroom No. 501, with the expectation that the parties may assert their respective positions by appropriate motions in the meantime.  In the interim, pending the conference, the court preliminarily readopts, *instanter*, the Report and Recommendation [Doc. #218] previously adopted and, based on the conclusions reached there, **ORDERS AND ENJOINS** Avon Capital LLC - Wyoming from transferring, alienating, concealing,

or encumbering its ownership or other interest in SDM Holdings, LLC, or authorizing or

permitting SDM Holdings, LLC, to dispose of its assets, pending further order of the court.[1]

**IT IS SO ORDERED**.

Dated this 13th day of July, 2023.

_____

JOE HEATON

UNITED STATES DISTRICT JUDGE

---

[1] *The court references the adoption as "preliminary" so as to leave open for discussion at the pretrial conference the nature and impact of the Tenth Circuit's decision on the R&R and other actions taken in the case.  In the meantime, however, it is the court's intention to freeze the status of all parties and their related interests in SDM, based on the facts and circumstances previously addressed, pending the pretrial conference.*

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

**August 4, 2023**

Christopher M. Wolpert
Clerk of Court

|  |  |
|---|---|
| UNIVERSITAS EDUCATION, LLC, | |
|     Petitioner/Judgment Creditor - Appellee, | |
| v. | No. 21-6044 |
| AVON CAPITAL, LLC, | (D.C. No. 5:14-FJ-00005-HE) (W.D. Okla.) |
|     Respondent/Judgment Debtor, | |
| ASSET SERVICING GROUP, LLC, | |
|     Respondent/Garnishee, | |
| and | |
| SDM HOLDINGS, LLC, | |
|     Respondent/Garnishee - Appellant, | |
| and | |
| AVON CAPITAL, LLC, a Wyoming limited liability company, | |
|     Intervenor. | |

_____

| UNIVERSITAS EDUCATION, LLC, | |
|---|---|
|     Petitioner/Judgment Creditor - Appellee, | |
| v. | No. 21-6049 |
| AVON CAPITAL, LLC, | (D.C. No. 5:14-FJ-00005-HE) (W.D. Okla.) |

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

Petitioner/Judgment Creditor -
Appellee,

v.

AVON CAPITAL, LLC,

Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee - Appellant.

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

2

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP, et al.,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

**ORDER**

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

These matters are before the court on the *Petition for Rehearing of Appellant SDM*

*Holdings, LLC*; *Intervenor/Appellant Avon Capital, LLC, A Wyoming Limited Liability*

*Company's Petition for Panel Rehearing*; and the *Partially Opposed Motion for Leave to Include a One-Document Appendix to the Petition for Rehearing by Appellant SDM Holdings, LLC*. Upon careful consideration, we direct as follows.

SDM Holdings, LLC's motion to include a one-document appendix to its petition for rehearing is GRANTED. Pursuant to Fed. R. App. P. 40, both petitions for panel rehearing are GRANTED IN PART to the extent of the modifications in the attached revised order and judgment. The court's July 13, 2023 order and judgment is withdrawn and replaced by the attached revised order and judgment, which shall be filed as of today's date.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 4, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

|  |
|---|
| No. 21-6044 |
| (D.C. No. 5:14-FJ-00005-HE) |
| (W.D. Okla.) |

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

|  |
|---|
| No. 21-6049 |
| (D.C. No. 5:14-FJ-00005-HE) |
| (W.D. Okla.) |

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant.

No. 21-6133
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

2

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Appellee Universitas Education, LLC ("Universitas") seeks to enforce a judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of Oklahoma.  Universitas alleges that it was unable to recover the full judgment amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY.  The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021.  We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.  We remand the case to the district court to conduct further proceedings.

## I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007. Each of these Avon entities was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million. Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions. One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account. Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions." Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM. The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY. Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer. Universitas obtained a favorable award in arbitration. Although the plan

---

[1] Avon-WY was later reinstated.

trustee sought to vacate the award in the U.S. District Court for the Southern District

of New York, the award was confirmed on August 15, 2014.  The Southern District

of New York found that Carpenter fraudulently transferred the $30 million in life

insurance policies to hundreds of shell entities under his control.  Avon was one of

these entities.  Thus, the Southern District of New York entered judgment for

Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was

against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was

only able to recover $6 million in funds.  Universitas filed the New York judgment in

the Western District of Oklahoma on November 7, 2014.[2]  The Western District of

Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of

SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow

Universitas to execute the judgment against the insurance portfolio.  Universitas then

attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of

Avon-CT, the named debtor in the New York judgment.  The district court referred

the matter to the MJ, who issued a Report and Recommendation finding that the

entities were "one and the same for purposes of their liability to Universitas."  *Id.*

at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the

SDM insurance portfolio using stolen funds, the insurance portfolio was subject to

---

[2] This Order and Judgment uses the terms "register" and "file"
interchangeably.

garnishment.  The district court reviewed the MJ's recommendations de novo and

agreed with all of them, granting summary judgment to Universitas on February 11,

2021.  The district court subsequently placed Avon-WY into a receivership pursuant

to O.S. § 12-1551.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which

states, "[a] judgment shall become unenforceable and of no effect if more than five

(5) years have passed from the date . . . [t]he last garnishment summons was issued."

The district court denied SDM's motion and upheld the judgment in an order dated

April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were

consolidated by the Court on April 27, 2021.  Universitas alleges that it re-filed the

New York judgment in the Western District of Oklahoma on December 9, 2021.

Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00

(Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments

for enforcement in other districts:

> A judgment in an action for the recovery of money or
> property entered in any court of appeals, district court,
> bankruptcy court, or in the Court of International Trade
> may be registered by filing a certified copy of the
> judgment in any other district or, with respect to the Court
> of International Trade, in any judicial district, when the
> judgment has become final by appeal or expiration of the
> time for appeal or when ordered by the court that entered
> the judgment for good cause shown.  Such a judgment

> entered in favor of the United States may be so registered
> any time after judgment is entered.  A judgment so
> registered shall have the same effect as a judgment of the
> district court of the district where registered and may be
> enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

> A money judgment is enforced by a writ of execution,
> unless the court directs otherwise.  The procedure on
> execution—and in proceedings supplementary to and in aid
> of judgment or execution—must accord with the procedure
> of the state where the court is located, but a federal statute
> governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law

of the state where the judgment is filed, not the limitations period of the state where

the federal district court that issued the judgment is located.  As Universitas is

attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on

the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the

state:

> A judgment shall become unenforceable and of no effect if
> more than five (5) years have passed from the date of:
> 1. The last execution on the judgment was filed with
>    the county clerk;
> 2. The last notice of renewal of judgment was filed
>    with the court clerk;
> 3. The last garnishment summons was issued; or
> 4. The sending of a certified copy of a notice of
>    income assignment to a payor of the judgment
>    debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217

(Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a

second time in Oklahoma, after Oklahoma's limitation period has lapsed on the original judgment, the underlying original Colorado judgment which is enforceable for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the plaintiffs received a default judgment from the Colorado District Court in 2007 and filed it in Oklahoma District Court three days later. *See id.* at 218–19.  Nine years lapsed before they re-filed the judgment in Oklahoma. *See id.* at 219.  The defendant filed a Motion to Quash, arguing that it had been more than five years since the Colorado judgment was entered, in violation of § 12-735(B). *See id.*  The Oklahoma Supreme Court concluded that "[a]lthough the Act does not address re-filing of sister-state judgments, a judgment creditor may enforce a domesticated judgment in Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for enforcement of judgments has run on the original domesticated foreign judgment." *Id.* at 223.

### b.

The MJ and the district court found that Universitas was entitled to enforce the judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to consider Oklahoma state procedural rules on the subject, as required by F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after five years unless one of the subsequent actions specified in the statute is taken. Universitas's last relevant act was the issuance of a writ of garnishment to SDM on December 3, 2015.  This means that Universitas's Oklahoma judgment expired five years later, on December 3, 2020.  Contrary to the district court's statement in its

order denying SDM's motions to alter and amend the judgment, Universitas's active attempts to enforce the judgment in Oklahoma were insufficient to render the judgment enforceable under § 12-735(B).  There is no specified exception for active attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment in Oklahoma anyway because the judgment has not yet expired in New York. However, the critical distinction between *Taracorp* and this case is that in *Taracorp*, the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement. *See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive issue of whether a Colorado judgment, which is enforceable in Colorado for twenty years after the judgment is entered, is also enforceable in Oklahoma when the first attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a foreign judgment creates a new local judgment which is governed by the local statute of limitations." *Id.* at 221.  This language suggests that even though the Oklahoma Supreme Court permitted Taracorp to enforce its expired judgment after it had been

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment." *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

re-filed, the court would not have allowed Taracorp to enforce its expired judgment

without first utilizing one of the four methods specified in O.S. § 12-735(B).

Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do

what Universitas seeks to do here—enforce a judgment that had previously been filed

and expired in a particular state without re-filing said judgment in the same state.

Because the re-filing of the judgment in *Taracorp* was a critical component of the

Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass

this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by

stating that:

> [T]o the extent that plaintiff wishes to refile its judgment
> as a protective matter and views leave of court as
> necessary to do so, leave is granted . . . . In the event of
> such re-refiling, all prior orders of this court addressing the
> substantive issues in this case will be deemed re-entered
> *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99.  However, this blanket statement claiming that the

order would extend to Universitas's potential future re-filing rendered the district

court's judgment a legally impermissible advisory order.  Though the district court

initially had jurisdiction over this case, Universitas did not re-file its expired

judgment before the district court entered its February 11, 2021 order.  For the

reasons explained above, that failure to re-file was fatal—there was no longer a

judgment in existence for the district court to enforce at the time it entered the order.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

11

purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up).  As the issue in this case was no longer live and Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the district court lacked Article III jurisdiction to enter its order, rendering the order void.[4]

We therefore vacate the district court's February 11, 2021 judgment because the district court did not have jurisdiction to enter its order.[5]  And we remand the case to the district court to conduct further proceedings.

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte.").  Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

### III.

For the foregoing reasons, we find that Universitas's expired judgment was unenforceable and the case was moot at the time the district court entered its order. Thus, we VACATE the district court's February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the case to the district court to conduct further proceedings.

Entered for the Court

Allison H. Eid
Circuit Judge

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 4, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNIVERSITAS EDUCATION, LLC,

       Petitioner/Judgment Creditor -
       Appellee,

v.

AVON CAPITAL, LLC,

       Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

       Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

       Respondent/Garnishee - Appellant,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

       Intervenor.

No. 21-6044
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

UNIVERSITAS EDUCATION, LLC,

       Petitioner/Judgment Creditor -
       Appellee,

v.

AVON CAPITAL, LLC,

No. 21-6049
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee,

and

AVON CAPITAL, LLC, a Wyoming
limited liability company,

Intervenor - Appellant.

_____

UNIVERSITAS EDUCATION, LLC,

Petitioner/Judgment Creditor -
Appellee,

v.

AVON CAPITAL, LLC,                                No. 21-6133
                                                        (D.C. No. 5:14-FJ-00005-HE)
Respondent/Judgment Debtor,                    (W.D. Okla.)

ASSET SERVICING GROUP,

Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

Respondent/Garnishee - Appellant.

2

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.

No. 21-6134
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **EID**, **BALDOCK**, and **CARSON**, Circuit Judges.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Appellee Universitas Education, LLC ("Universitas") seeks to enforce a judgment obtained in New York against Appellant Avon Capital, LLC ("Avon"), and its subsidiary, Appellant SDM Holdings, LLC ("SDM"), in the Western District of Oklahoma.  Universitas alleges that it was unable to recover the full judgment amount from Avon in New York, so it seeks to pierce Avon's corporate veil and collect a garnishment from SDM, an Oklahoma LLC that nominally holds legal title to one of Avon's potential assets, an insurance portfolio.

The district court adopted the magistrate judge's ("MJ") Report and Recommendation finding that Avon's Wyoming-based LLC ("Avon-WY") had fraudulently acquired the SDM insurance portfolio using stolen funds, as well as the MJ's conclusion that the insurance portfolio was subject to garnishment because it was beneficially owned by Avon-WY.  The district court then granted Universitas summary judgment and placed Avon-WY into a receivership pursuant to Oklahoma Statute ("O.S.") § 12-1551.

Avon-WY and SDM appealed to this Court, and their appeals were consolidated on April 27, 2021.  We vacate the district court's February 11, 2021 order for lack of jurisdiction; we find the underlying dispute was moot at the time of decision due to the expiration of Universitas's Western District of Oklahoma judgment.  We remand the case to the district court to conduct further proceedings.

# I.

Between 2006 and 2007, three Avon LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007. Each of these Avon entities was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.

Universitas was the sole beneficiary of two life insurance policies totaling $30 million. Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions. One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account. Although Avon-NV's tax identification number was used to open the TD Bank account, "Avon-CT was the entity involved with the . . . transactions." Aplt. App'x Vol. X at 1743.

Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM. The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY. Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.[1]

When Universitas's benefits came due, its claim to the benefits was denied by the insurer. Universitas obtained a favorable award in arbitration. Although the plan

---

[1] Avon-WY was later reinstated.

trustee sought to vacate the award in the U.S. District Court for the Southern District

of New York, the award was confirmed on August 15, 2014.  The Southern District

of New York found that Carpenter fraudulently transferred the $30 million in life

insurance policies to hundreds of shell entities under his control.  Avon was one of

these entities.  Thus, the Southern District of New York entered judgment for

Universitas in the amount of $30,181,880.30.  $6,710,065.92 of the judgment was

against Avon.

Of Universitas's $6,710,065.92 judgment against Avon, it alleges that it was

only able to recover $6 million in funds.  Universitas filed the New York judgment in

the Western District of Oklahoma on November 7, 2014.[2]  The Western District of

Oklahoma traced the fraudulently transferred funds to Avon-WY's acquisition of

SDM's life insurance portfolio and pierced Avon-WY's corporate veil to allow

Universitas to execute the judgment against the insurance portfolio.  Universitas then

attempted to collect a garnishment from SDM.

The parties disputed whether Avon-NV and Avon-WY were alter egos of

Avon-CT, the named debtor in the New York judgment.  The district court referred

the matter to the MJ, who issued a Report and Recommendation finding that the

entities were "one and the same for purposes of their liability to Universitas."  *Id.*

at 1794.  The MJ also determined that, because Avon-WY fraudulently acquired the

SDM insurance portfolio using stolen funds, the insurance portfolio was subject to

---

[2] This Order and Judgment uses the terms "register" and "file"
interchangeably.

garnishment.  The district court reviewed the MJ's recommendations de novo and agreed with all of them, granting summary judgment to Universitas on February 11, 2021.  The district court subsequently placed Avon-WY into a receivership pursuant to O.S. § 12-1551.

SDM filed a motion to alter the judgment, relying on O.S. § 12-735(B), which states, "[a] judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date . . . [t]he last garnishment summons was issued." The district court denied SDM's motion and upheld the judgment in an order dated April 8, 2021.  Avon-WY and SDM appealed to this Court; their appeals were consolidated by the Court on April 27, 2021.  Universitas alleges that it re-filed the New York judgment in the Western District of Oklahoma on December 9, 2021. Aple. Supp. App'x Vol. I at 32; Oral Argument, No. 21-6044, at 16:54–17:00 (Sept. 27, 2022).

## II.

### a.

28 U.S.C. § 1963 instructs the following regarding registration of judgments for enforcement in other districts:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.  Such a judgment

7

entered in favor of the United States may be so registered
any time after judgment is entered.  A judgment so
registered shall have the same effect as a judgment of the
district court of the district where registered and may be
enforced in like manner.

Additionally, Federal Rule of Civil Procedure ("F.R.C.P.") 69(a)(1) states:

A money judgment is enforced by a writ of execution,
unless the court directs otherwise.  The procedure on
execution—and in proceedings supplementary to and in aid
of judgment or execution—must accord with the procedure
of the state where the court is located, but a federal statute
governs to the extent it applies.

This indicates that the statute of limitations period for a judgment is based on the law

of the state where the judgment is filed, not the limitations period of the state where

the federal district court that issued the judgment is located.  As Universitas is

attempting to enforce the judgment in Oklahoma, we must apply Oklahoma law on

the registration of judgments.

O.S. § 12-735(B) states the following regarding judgments registered in the

state:

A judgment shall become unenforceable and of no effect if
more than five (5) years have passed from the date of:
  1. The last execution on the judgment was filed with
     the county clerk;
  2. The last notice of renewal of judgment was filed
     with the court clerk;
  3. The last garnishment summons was issued; or
  4. The sending of a certified copy of a notice of
     income assignment to a payor of the judgment
     debtor.

The Oklahoma Supreme Court held in *Taracorp, Ltd. v. Dailey*, 419 P.3d 217

(Okla. 2018), that "when a judgment creditor seeks to enforce a Colorado judgment a

second time in Oklahoma, after Oklahoma's limitation period has lapsed on the
original judgment, the underlying original Colorado judgment which is enforceable
for twenty years may be enforced in Oklahoma." *Id.* at 218.  In *Taracorp*, the
plaintiffs received a default judgment from the Colorado District Court in 2007 and
filed it in Oklahoma District Court three days later. *See id.* at 218–19.  Nine years
lapsed before they re-filed the judgment in Oklahoma. *See id.* at 219.  The defendant
filed a Motion to Quash, arguing that it had been more than five years since the
Colorado judgment was entered, in violation of § 12-735(B). *See id.*  The Oklahoma
Supreme Court concluded that "[a]lthough the Act does not address re-filing of
sister-state judgments, a judgment creditor may enforce a domesticated judgment in
Oklahoma.  Enforcement may be done, even if Oklahoma's limitation period for
enforcement of judgments has run on the original domesticated foreign judgment."
*Id.* at 223.

### b.

The MJ and the district court found that Universitas was entitled to enforce the
judgment in Oklahoma under 28 U.S.C. § 1963.  But they incorrectly failed to
consider Oklahoma state procedural rules on the subject, as required by
F.R.C.P. 69(a).  Under O.S. § 12-735(B), a judgment becomes unenforceable after
five years unless one of the subsequent actions specified in the statute is taken.
Universitas's last relevant act was the issuance of a writ of garnishment to SDM on
December 3, 2015.  This means that Universitas's Oklahoma judgment expired five
years later, on December 3, 2020.  Contrary to the district court's statement in its

order denying SDM's motions to alter and amend the judgment, Universitas's active attempts to enforce the judgment in Oklahoma were insufficient to render the judgment enforceable under § 12-735(B).  There is no specified exception for active attempts at enforcement anywhere in the text of § 12-735(B), and this Court declines to read one in.[3]

Universitas cites *Taracorp* for the proposition that it may enforce the judgment in Oklahoma anyway because the judgment has not yet expired in New York. However, the critical distinction between *Taracorp* and this case is that in *Taracorp*, the expired judgment was re-filed in Oklahoma prior to the attempt at enforcement. *See Taracorp*, 419 P.3d at 218 ("We retained this cause to address the dispositive issue of whether a Colorado judgment, which is enforceable in Colorado for twenty years after the judgment is entered, is also enforceable in Oklahoma when the first attempt is abandoned and it is *re-filed* after Oklahoma's five year limitation period lapsed." (emphasis added)).  The *Taracorp* court explained that "[t]he filing of a foreign judgment creates a new local judgment which is governed by the local statute of limitations." *Id.* at 221.  This language suggests that even though the Oklahoma Supreme Court permitted Taracorp to enforce its expired judgment after it had been

---

[3] Universitas invokes *Wishon v. Sanders*, 467 P.3d 721 (Okla. Civ. App. 2020), to argue that "active attempts at enforcement[] of a judgment" are sufficient to satisfy the requirements of § 12-735(B).  *Id.* at 724.  However, the next sentence of the opinion specifies that "[a] party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment." *Id.*  This explanation makes clear that the *Wishon* court intended to limit "active attempts at enforcement" to one of the four methods specified in § 12-735(B).

re-filed, the court would not have allowed Taracorp to enforce its expired judgment

without first utilizing one of the four methods specified in O.S. § 12-735(B).

Moreover, neither *Taracorp* nor any of the cases it cites involves an attempt to do

what Universitas seeks to do here—enforce a judgment that had previously been filed

and expired in a particular state without re-filing said judgment in the same state.

Because the re-filing of the judgment in *Taracorp* was a critical component of the

Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass

this case without further instruction from the Oklahoma Supreme Court.

The district court attempted to circumvent Universitas's failure to re-file by

stating that:

> [T]o the extent that plaintiff wishes to refile its judgment
> as a protective matter and views leave of court as
> necessary to do so, leave is granted . . . . In the event of
> such re-refiling, all prior orders of this court addressing the
> substantive issues in this case will be deemed re-entered
> *instanter* as to the renewed filing.

Aplt. App'x Vol. XI at 2098–99.  However, this blanket statement claiming that the

order would extend to Universitas's potential future re-filing rendered the district

court's judgment a legally impermissible advisory order.  Though the district court

initially had jurisdiction over this case, Universitas did not re-file its expired

judgment before the district court entered its February 11, 2021 order.  For the

reasons explained above, that failure to re-file was fatal—there was no longer a

judgment in existence for the district court to enforce at the time it entered the order.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for

11

purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up).  As the issue in this case was no longer live and Universitas lacked a legally cognizable interest in the outcome once its judgment expired in December 2020, the case became moot and the district court lacked Article III jurisdiction to enter its order, rendering the order void.[4]

We therefore vacate the district court's February 11, 2021 judgment because the district court did not have jurisdiction to enter its order.[5]  And we remand the case to the district court to conduct further proceedings.

---

[4] This Court is obligated to consider questions of Article III jurisdiction sua sponte.  *See Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004) ("[T]his court has an affirmative obligation to consider th[e] question [of Article III mootness] sua sponte."); *see also Frias v. Chris the Crazy Trader, Inc.*, 604 F. App'x 638, 641 (10th Cir. 2015) (unpublished) ("We are obligated to raise and resolve [] questions of Article III jurisdiction sua sponte.").  Thus, it is of no consequence whether Universitas is correct that SDM lacks standing to appeal the district court's judgment on jurisdictional grounds.

[5] For this reason, we also DENY SDM's March 17, 2022 Motion for Leave to File a Second Supplemental Appendix as moot.

## III.

For the foregoing reasons, we find that Universitas's expired judgment was unenforceable and the case was moot at the time the district court entered its order. Thus, we VACATE the district court's February 11, 2021 order for lack of jurisdiction due to mootness and REMAND the case to the district court to conduct further proceedings.

Entered for the Court

Allison H. Eid
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

August 4, 2023

Nanette Turner Kalcik
Alan L. Rupe
Francis Schneider
Lewis Brisbois Bisgaard & Smith
1605 North Waterfront Parkway, Suite 150
Wichita, KS 67206

Jeffrey R. Sandberg
Palmer Lehman Sandberg
8350 North Central Expressway, Suite 1111
Dallas, TX 75206

**RE:**   **21-6044, 21-6049, 21-6133, 21-6134, Universitas Education v. Avon Capital, et al**
Dist/Ag docket: 5:14-FJ-00005-HE

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court


cc:     Joseph H. Bocock
        Joshua Clark Greenhaw
        Clayton D. Ketter
        Joseph L. Manson III
        Melvin R. McVay Jr.
        John Douglas Stiner


CMW/sls

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

The court's order entered July 13, 2023, [Doc. #500] is reaffirmed and considered

reentered as of the date of this order.

**IT IS SO ORDERED**.

Dated this 7th day of August, 2023.

_____

JOE HEATON

UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,            )
                                       )
              Petitioner,              )
                                       )
vs.                                    )        NO. 14-FJ-0005-HE
                                       )
AVON CAPITAL, LLC, *et al.*,           )
                                       )
              Respondents.             )

### ORDER

The court held a pretrial conference on August 15, 2023, to address issues or potential issues arising from the Tenth Circuit's vacation of this court's order of February 11, 2021, and the remand of the case for further proceedings.  The court heard argument from all parties and "interested parties" as to the impact of the decision.  In particular, the court heard argument as to and considered the procedural posture of the case against the backdrop of the underlying dispute involving allegedly "stolen assets," assets being transferred to avoid the legitimate claims of creditors and the like.  The court did so mindful of the fact that the mandate has not yet issued from the Court of Appeals and any substantive decision reached now is necessarily contingent on, and effective as of, the issuance of the mandate by the Court of Appeals as to its August 4, 2023, Order and Judgment.

For the reasons stated more fully at the conclusion of the pretrial conference, the court **ORDERS** as follows:

1.  Effective as of the issuance of the mandate, the pending motions to dismiss [Doc. Nos. 513 and 516] are **DENIED**.  The court concludes it reacquired subject matter jurisdiction upon the re-filing of the foreign judgment in this case on August 7, 2023 — prior to the issuance of the Court of Appeal's mandate — and that neither the remand order of the Court of Appeals nor the law generally requires dismissal of the case in the particular circumstances existing here.  The court further concludes that Oklahoma law does not require, for the validity of a re-filed foreign judgment, that it be filed in a different case or under a different case number from that of any earlier filing.

2.  Effective as of the issuance of the mandate, this court's order of February 11, 2021, is **READOPTED**.  Subject to the reacquisition of subject matter jurisdiction, which the court concludes has occurred, and in the absence of any other material change of circumstances, there is no reason to revisit or belabor the earlier determinations. Accordingly, the alter ego determinations as to Avon Capital, LLC (Wyoming), Avon Capital, LLC (Connecticut), and Avon Capital, LLC (Nevada) are re-adopted and made the findings/conclusions of the court.  Further, the February 11, 2021, order's injunction to Avon Capital LLC (Wyoming) against the transfer or encumbrance of its ownership or other interest in SDM Holdings, LLC is re-adopted.

3.  Within **<u>twenty-one (21) days</u>** from issuance of the mandate, the parties are directed to file any appropriate motions as to any reappointment of a receiver or of other matters related to the past receivership as impacted by the Tenth Circuit's order.

2

4.  The responses of Avon Capital LLC (Wyoming) and Phoenix Charitable Trust to plaintiff's motion for imposition of a constructive trust [Doc. #506] are due within **twenty-one (21) days** from issuance of the mandate.

5.  Within **twenty-one (21) days** from issuance of the mandate, the parties and/or interested persons are granted leave to file a supplemental brief addressing the impact of the Court of Appeals decision, if any, on the pending motions for sanctions [Doc. Nos. 236, 273, & 275].

6.  Within **seven (7) days** from issuance of the mandate, Universitas is directed to take whatever formal post-judgment collection steps it relies on in its efforts to collect the judgment at issue (issuance of writ of execution or garnishment, order for hearing on assets, etc.).

**IT IS SO ORDERED.**

Dated this 15th day of August, 2023.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNIVERSITAS EDUCATION, LLC,        )
                                   )
                    Petitioner,    )
                                   )
vs.                                )        NO. 14-FJ-0005-HE
                                   )
AVON CAPITAL, LLC, *et al.*,       )
                                   )
                    Respondents.   )

## ORDER

Following the Tenth Circuit's reversal and vacation of this court's earlier order of February 11, 2021 [Doc. #228], this court conducted further proceedings in the case. Those proceedings resulted in the issuance of a further order by this court on August 15, 2023 [Doc. #521] which, among other things, concluded that the court had reacquired subject matter jurisdiction as to this dispute based on the re-filing of the underlying foreign judgment, re-adopted the court's prior alter ego determination as to the various Avon Capital entities, and re-adopted the injunction directed to Avon Capital LLC (Wyoming) prohibiting any transfer or encumbrance of its interest in SDM Holdings, LLC. The August 15, 2023, order has since been re-appealed to the Tenth Circuit by Avon Capital and SDM, which suspends this court's jurisdiction to make further determinations going to the substantive merits of the case. The court retains, however, the authority to address collateral matters not involved in the appeal. Lancaster v. Ind. Sch. Dist. 5, 149 F.3d 1228, 1237 (10th Cir. 1998). A number of such collateral matters are at issue, some of which have been pending for an extended period, and are addressed in this order.

1.   <u>Motions for sanctions against SDM Holdings, LLC [Doc. Nos. 236 & 273]</u>.

Universitas originally sought a sanctions order precluding SDM Holdings from filing any further motions in the case without leave of court.   It did so on the basis that SDM's filings in this case were against the backdrop of the long-running delay and other bad faith tactics of the Carpenter financial entities, of which it was one, that the filings were false or vexatious in various respects, and that it had persisted in pursuing positions that have been rejected by this court or are otherwise without a colorable basis in the law. A principal focus of the motion was the contention that SDM's challenge to the jurisdiction of the court, based on expiration of the filing of the judgment, was frivolous.  In light of the Tenth Circuit's conclusion that the jurisdictional challenge was correct, Universitas has now withdrawn its request for sanctions against SDM and seeks to pursue only those sought as to its counsel, Mr. Sandberg.  [Doc. #537]

The original motion for sanctions [Doc. #236] and its supplement [Doc. #273] will therefore be stricken in light of the withdrawal.

2.   <u>Motion for sanctions as to Mr. Sandberg [Doc. Nos. 275 & 539]</u>.

Universitas contends that Mr. Sandberg should be sanctioned for various pleadings filed and/or positions taken on behalf of SDM Holdings.  Its post-appeal supplemental filing acknowledges that, as with the SDM motion, one of the arguments advanced by Mr. Sandberg which Universitas viewed as frivolous — expiration of the filing of the judgment — prevailed on appeal and is therefore plainly not frivolous.  It nonetheless pursues sanctions based on other positions Sandberg advanced on behalf of SDM.

An attorney may be subject to sanctions in a proper case, including where positions are advanced for purposes of harassment, delay or some other improper purpose, or where frivolous arguments are advanced. Fed.R.Civ.P. 11(b). Here, after considering the various arguments advanced in the Universitas motion, the court concludes a sufficient basis for sanctions has not been shown as to Mr. Sandberg. In reaching that conclusion, the court is not oblivious to the past history of Mr. Carpenter and his multiple entities, one of which is SDM. However, while that background provides ample reason to be skeptical of any filing on behalf of him or any of his entities, the court's determination here must ultimately focus on the nature of the positions taken in this case by Mr. Sandberg. As to one of those challenged positions, as noted above, the position he advanced prevailed on appeal. As to the others, relating to the sufficiency of the pleadings to frame an alter ego theory, the scope of discovery for post-judgment assets hearings and the like, the positions he took were unpersuasive but not sufficiently unwarranted as to make them frivolous or to suggest bad faith in asserting them.[1]

The motion for sanctions as to Mr. Sandberg [Doc. #275] and its supplement [Doc. # 539] will be denied for the reasons indicated. In light of this conclusion, it is unnecessary to resolve the question of whether the intervening decision of the Court of Appeals deprived the court of the authority to sanction.[2]

---

[1] *The most troubling assertion as to SDM's positions involves false denials of Mr. Carpenter's involvement in the Avon Wyoming/SDM transaction, but those appeared in a summary judgment response not signed by Mr. Sandberg and filed prior to his appearance.*

[2] *Universitas contends the conduct sought to be sanctioned occurred while subject matter jurisdiction existed and that, in any event, the court had jurisdiction to sanction conduct occurring before it. Mr. Sandberg and Phoenix Charitable Trust assert the*

3.  Motions to approve compensation of Receiver [Doc. Nos. 494, 502, and 508].

At the time of the Tenth Circuit's decision concluding this court lacked subject matter jurisdiction after December 3, 2020, motions were pending for approval of the Receiver's compensation for the months of April, May and June of 2023.  As the receiver was appointed after December 3, 2020, the receivership appointment was invalid and there is therefore no basis for approving the referenced fee requests.  The motions [Doc. Nos. 494, 502 and 508] will therefore be denied.

4.  Motion for appointment of a Receiver [Doc. #540].[3]

The court previously appointed Ryan Leonard, Esq. as the receiver of Avon Capital-WY.  Per the Tenth Circuit's conclusion that this court lacked subject matter jurisdiction at the time of his appointment, that appointment was invalid.  However, in the wake of the re-filing of the foreign judgment sought to be collected, this court determined that subject matter jurisdiction had been reacquired and re-adopted its earlier determinations/orders as to the alter ego status of the Avon entities and as to injunctive relief preventing the impairing of assets by Avon Capital.  Order, August 15, 2023 [Doc. #521].  In that order, the court directed the parties to file any appropriate motions as to the potential reappointment of the receiver or other collection efforts within specified times.  Universitas has now timely filed a motion for re-appointment of Mr. Leonard as receiver on

_____

*absence of subject matter jurisdiction at the time the motions were filed makes them a nullity.*

[3] *The court grants petitioner's motion to amend the memorandum in support of the motion [Doc. #551].  The proposed amended memorandum [Doc. #551-1] is deemed filed with the court.*

4

substantially the same grounds as were advanced previously, but supplemented by additional information suggesting Mr. Carpenter views the history and ownership of SDM differently than has been determined in this court.  Objections to the motion have been filed by Avon Wyoming and by Phoenix Charitable Trust as an "interested party" as to SDM.[4]

The threshold question is whether, in light of the pending appeals from the court's August 15, 2023, order, this court has the authority to appoint a receiver if it is otherwise warranted.  The court concludes it does.  The appointment of a receiver to conserve assets during the pendency of an appeal is ordinarily viewed as a collateral matter over which the trial court retains authority notwithstanding the appeal.  Grant v. Phoenix Mut. Life Ins. Co., 121 U.S. 118, 121 (1887) (lower courts retain the jurisdiction to issue post-appeal orders "strictly confined to the preservation of property in litigation"); *see, also*, 4 C.J.S. Appeal and Error § 518. ("A trial court retains jurisdiction over collateral issues . . . such as contempt, the appointment of a receiver and an injunction, during the pendency of an appeal.").  Further, the order and/or judgment being appealed has not been stayed via the posting of an appeal bond or otherwise, hence efforts to collect the judgment are not precluded by the appeal.  Strong v. Laubach, 443 F.3d 1297, 1299-1300 (10th Cir. 2006).

The objection of Phoenix Charitable Trust (more or less the objection of SDM), is based on multiple grounds.  It reasserts the jurisdictional objections it urged earlier to

---

[4] *Phoenix Charitable Trust has appeared as an "interested party" in light of the court's determination that, based on the receiver's replacement of the manager of SDM, Mr. Sandberg was no longer authorized to make filings in this case on behalf of SDM.  In light of the invalidity of the receivership appointment, SDM could presumably appear now directly, by Mr. Sandberg or otherwise.*

preserve its positions as to those issues (i.e., the impact of the expired judgment, the Circuit's order, etc.).  Its remaining objections center on the contention that the court cannot and should not appoint a receiver over the assets of SDM, since it is not a judgment debtor.

Although the Universitas motion represents what it would like to do as to the appraisal and sale of the insurance policies held by SDM, the court does not understand the motion to be seeking the appointment of a receiver over those assets in any direct sense. Rather, it presumably seeks the appointment of the receiver over Avon Capital – Wyoming as was previously the case, with the hope and expectation that the receiver would replace the manager of SDM, as he did previously, and that the new manager of SDM would then proceed to sell the assets.  That possibility is consistent with a request for appointment of a receiver over Avon Capital – Wyoming.  But if the motion is intended to seek more than that, i.e., a receiver over SDM's assets directly, no basis for that is apparent.  As Phoenix argues, SDM is not the judgment debtor.  Rather, based on the prior determinations of this court (and the representations that some of the Carpenter entities have sometimes made), SDM is an asset wholly owned by Avon Capital – Wyoming.[5]  It is also a potential garnishee and potentially within reach of other equitable remedies sought by petitioners.

---

[5] *In places, petitioner's briefing appears to assume that this court has already determined the insurance polices owned by SDM are in fact the property of Avon Capital – Wyoming or that SDM is an alter ego of one or all of the Avon Capital entities.  The court's earlier reference to SDM being "nominally" owned by Avon Capital – Wyoming simply recognized that ownership was nominally held by it.  It did not constitute a formal determination that SDM was an alter ego of the Avon entities or that, on some other theory, the insurance policies owned by SDM should be viewed as the property of Avon Capital – Wyoming.  Perhaps there is a basis for so concluding, but the court has not made that determination yet.*

In any event, the Phoenix objections are not a persuasive basis for avoiding the appointment of a receiver as to Avon Capital - Wyoming if it is otherwise justified.

The objection of Avon Capital – Wyoming is based largely on the arguments previously rejected by the court in connection with the most recent motions to dismiss (i.e., lack of subject matter jurisdiction, mootness, effect of judgment re-filing under Oklahoma law) and those argument are therefore not a basis for denying the motion if it is otherwise sufficient.[6]

As the court has previously rejected the jurisdictional and related arguments as a basis for not going forward in this case and as the circumstances which previously justified the appointment of a receiver continue to be present at this time, the court concludes the motion should be granted and Mr. Leonard re-appointed as receiver over Avon Capital – Wyoming.[7]

The receiver's authority shall extend to and include the right under the SDM operating agreement [Doc. #292-2] to replace the manager if the receiver concludes that is appropriate.  Absent further order of the court, however, and in light of the pending appeal, the receiver's authority shall not extend to causing or directing the sale by SDM of the

---

[6] *Respondent also continues to object to the appointment of a receiver arguing that a charging order is the only means to collect on a judgment against an LLC.  In this case, however, the court appointed the receiver for the preservation of assets, not as a collection mechanism.  The court also notes that, because equitable principles still apply when dealing with limited liability companies in Oklahoma, a charging order is not the sole possible remedy for petitioners.  See, e.g.,* Mattingly Law Firm, P.C. v. Henson, *466 P.3d 590, 594-98 (Okla. Civ. App. 2019).*

[7] *Neither of the objecting parties have objected to Mr. Leonard as the receiver if the appointment of one is ordered by the court.*

various insurance policies at issue without further order of the court.  Should the receiver conclude that the sale of some or all of the policies is warranted, he must move for leave to do so and the court can then determine whether to permit the sale and what further steps should then be taken to protect the various interests of the parties.

     4.  <u>Motion for imposition of a constructive trust [Doc. 506]</u>.

     Universitas has again moved for the imposition of a constructive trust.  As it did previously, the court concludes the imposition of a constructive trust is unnecessary to preserve the status quo pending resolution of the pending appeals.  To the extent Universitas seeks that relief on more expansive grounds, the court concludes it lacks the authority to grant it in light of the pending appeals.  The motion for imposition of a constructive trust [Doc. #506] will therefore be denied, but without prejudice to its renewal when and if the pending appeals are resolved in a fashion permitting such further relief.

     5.  <u>Motion for writ of garnishment [Doc. #535]</u>.

     As noted above, the judgment in this case has not been stayed via the posting of an appeal bond or otherwise, hence efforts to collect the judgment are not precluded by the appeal.  While, generally, "[a] money judgment is enforced by a writ of execution," the court may direct otherwise.  Fed.R.Civ.P. 69(a)(1).  The motion for issuance of a writ of garnishment [Doc. #535] will be granted.  The Clerk of Court is authorized to issue the Non-Continuing Garnishment Summons [Doc. #535-2].

     6.  <u>Motion for hearing on assets [Doc. #534]</u>.

     The motion for a hearing on assets will be denied.  A hearing on assets was held on June 8, 2021, and a receiver over Avon Capital – Wyoming was appointed by the court on

September 22, 2021.  As a result, the receiver has been in place for the bulk of the time since the prior HOA.  Further, in the meantime, injunctive relief has been in place prohibiting the dissipation of Avon's assets, including SDM.  In the absence of a showing of some likelihood that Avon Capital – Wyoming's assets have been altered in some significant manner, the court concludes that petitioner has adequate knowledge of the assets at this time to pursue collection of its judgment.

7.  <u>Motion for order vacating prior receivership [Doc. #543]</u>.

Avon Capital – Wyoming has moved to vacate all orders previously entered as to the receivership and to charge the expenses of the receivership to petitioner.  Universitas acknowledges that the various receivership orders should be vacated in light of the Circuit's determination as to jurisdiction, but objects to the shifting of costs in the circumstances existing here.  In light of the jurisdictional determination and the consequent invalidity of the previous appointment of receiver, the various orders entered in connection with it will be deemed vacated except as they or their rationale may have been re-adopted in some fashion by subsequent orders.

Insofar as the expenses of the prior receivership are concerned, the court concludes Universitas, as the party seeking the receivership, should be responsible for the costs of it.[8] However, in the particular circumstances existing here, including the full background of litigation involving the efforts to collect the underlying judgment from Mr. Carpenter and his various entities and including the fact that Avon Capital – Wyoming is the owner of

---

[8] *There appears to be no dispute as to the amount of those expenses being $96,324.*

SDM and therefore, absent some further determination of ownership by others, the beneficiary of any amounts paid directly to SDM, the court concludes Universitas' liability for receivership expenses should be deemed owed to Avon Capital – Wyoming rather than to SDM directly.  *See* Resolution Trust Corp. v. Alhambra Holdings, Inc., 980 F.Supp. 363, 369 (D. Kan. 1997) (it is within the court's equitable discretion of determine a fair and reasonable allocation of fees among the parties).  The amount owed by Universitas will therefore be subject to offset against any amounts otherwise owing to it by Avon Capital – Wyoming.

## Summary

For the reasons stated above, the court orders as follows: (1) the motion for sanctions against SDM [Doc. Nos. 236 and 273] is **STRICKEN**; (2) the motion for sanctions against Mr. Sandberg [Doc. #275] is **DENIED;** (3) the pending motions for approval of compensation for the former receiver [Doc. Nos. 494, 502, and 508] are **DENIED**; (4) the motion for appointment of a receiver [Doc. #540] is **GRANTED** as stated more fully above; (5) petitioner's motion to amend [Doc. #551] is **GRANTED**; (6) the motion for imposition of a constructive trust [Doc. #506] is **DENIED**; (7) the motion for issuance of writ of garnishment [Doc. #535] is **GRANTED**; (8) the motion for hearing on assets [Doc. #534] is **DENIED**; and (9) the motion to vacate orders and shifts costs [Doc. #543] is **GRANTED** to the extent stated above.  Per that discussion, Avon Capital – Wyoming shall be entitled to recover the costs of the receivership, in the amount of $96,323, from petitioner Universitas Education, LLC, subject to offset as indicated, at the conclusion of the case.

10

**IT IS SO ORDERED.**

Dated this 4th day of January, 2024.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

For the reasons stated in the separate order entered this date, Ryan Leonard, Esq. is appointed as Receiver of Avon Capital LLC, a limited liability company formed under the laws of the State of Wyoming.  The court further **ORDERS** as follows:

1.     The Receiver shall have the powers and duties ordinarily held by court-appointed receivers.  The Receiver is authorized to take possession of, manage, and operate Avon Capital LLC (Wyoming), its properties, and its activities in all aspects, subject to the supervision and control of the court.  This includes the authority to exercise the membership rights of Avon Capital LLC (Wyoming) as to SDM Holdings, LLC, including the right to replace its manager if the receiver concludes that is appropriate.

2.     The Receiver is directed to identify and take such steps as may be appropriate to preserve the assets of Avon Capital LLC (Wyoming), including the insurance policies held through SDM Holdings, LLC.

3.      The Receiver is authorized to pay bills and expenses necessary to maintaining Avon Capital LLC (Wyoming) and its assets.

4.      The Receiver is authorized to enter into contracts for those services necessary to aid the Receiver in the administration of the Receivership, including, if necessary, the retention of attorneys and accountants and other professionals, with the reasonable expenses incurred in connection therewith deemed to be expenses of the receivership.

5.      Absent further order of the court, the Receiver's authority shall not extend to authorizing or directing, directly or indirectly, the sale or other disposition of the assets of SDM Holdings, LLC, including the insurance policies at issue in this case.

6.      The Receiver shall be entitled to reasonable compensation for his efforts as receiver, with the cost thereof to be an expense of the receivership.  The compensation shall be subject to the approval of the court.  Requests for compensation shall be made monthly.

7.      The Receiver is directed to file forthwith an Oath of Receiver, in substantially the form of the attachment to this order.  The Receiver is directed to file or reaffirm his earlier receiver's bond, in the amount of $10,000, within **seven (7) days**.

8.      The Receiver serves as such, and discharges his duties under this Order, as an officer of the court.  His actions as receiver are in a representative, rather than individual, capacity.  All persons dealing with the Receiver will look only to Avon Capital LLC (Wyoming), for satisfaction of all claims against, and obligations and liabilities of, the Receiver.

2

9.     The receiver is directed to file monthly reports of his findings and activities with the court.

10.    The Receiver or any party may move to supplement and/or clarify this order of appointment as necessary and appropriate.

**IT IS SO ORDERED**.

Dated this 4th day of January, 2024.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>OATH OF RECEIVER</u>

I, Ryan Leonard, the Receiver appointed by the court in the above-entitled cause on

the _____ day of January, 2024, do solemnly swear as an officer of this court that I will

faithfully discharge my duties as such Receiver, that I will well and faithfully account for

all property and money that may come into my hands as Receiver, and that I will obey the

orders of the court entered in this case.


_____
Ryan Leonard, Receiver


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 14-FJ-0005-HE |
| | ) | |
| AVON CAPITAL, LLC, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>ORDER</u>

The court-appointed receiver of Avon Capital, LLC, a Wyoming limited liability company ("Avon-Wyoming"), previously sought clarification of the court's prior determinations and orders as they relate to the status and relationship of Avon-Wyoming, SDM Holdings, LLC ("SDM Holdings"), and the portfolio of insurance policies managed for SDM Holdings by Asset Servicing Group ("ASG") [Doc. #571]. Avon Wyoming and SDM's purported owner/successors filed objections to the requested relief, contending, among other things, that this court lacked jurisdiction to entertain the motion based on their pending appeals to the Tenth Circuit Court of Appeals from the order appointing the receiver. This court concluded it should proceed on the assumption that it lacked jurisdiction to address the motion in light of the appeals and invoked the procedure contemplated by Fed.R.Civ.P. 62.1(a)(3) and Fed.R.App.P. 12.1, issuing an indicative ruling as to how it would rule on various of the matters referenced in the receiver's motion for clarification. Order, February 5, 2024 [Doc. #582]. Thereafter, the receiver sought a limited remand from the Tenth Circuit to permit this court to decide the motion

for clarification.  The Tenth Circuit has since remanded the case to this court for the limited purpose of ruling on the receiver's motion to clarify.  Order, February 16, 2024 [Doc. #591 in this case].  Following the remand, Phoenix Charitable Trust, representing what it represents are the owners/successors of SDM Holdings, and Avon-Wyoming filed further responses (termed "post-advisory opinions") objecting to the receiver's request.

As previously noted in the court's February 5, 2024 order, the objecting parties' grounds for objection are largely restatements, for record preservation purposes, of positions they have previously advanced and which have been rejected by this court on one ground or another.   It is therefore unnecessary to re-address those arguments here. To the extent that Phoenix Charitable Trust now contends, or contends with more vigor, that SDM itself no longer exists, based on a purported merger with another Carpenter-controlled entity in 2017, the court continues to reject any such notion.  The court's prior determinations as to the status of SDM and its ownership by Avon-Wyoming were based, in substantial part, on repeated explicit and implicit representations in this case by Avon-Wyoming and SDM, entities controlled by Mr. Carpenter.   Those representations occurred over several years following the purported 2017 merger upon which Phoenix and Mr. Carpenter now base their changed positions.  If those prior representations do not conclusively establish the falsity of Phoenix's current assertions as to the status of SDM Holdings, they at least provide ample grounds for equitable relief precluding the bait and switch tactics now being attempted.  In any event, the assertions as to the non-existence of SDM Holdings are no basis for avoiding the conclusions and determinations previously reached by this court.

Those determinations, as pertinent to the receiver's request for clarification, are restated here:

1. SDM Holdings is owned by Avon-Wyoming;

2. Ryan Leonard, Esq. is the court-appointed receiver of Avon-Wyoming, with the authority to manage the affairs of Avon-Wyoming consistent with the terms of the receivership order;

3. The receiver's authority extends to exercising Avon-Wyoming's rights as the sole member of SDM Holdings, including the right to replace the manager of SDM Holdings if he concludes that is warranted;

4. The receiver has so concluded and has appointed Nicole Jacobsen as the manager of SDM Holdings; and

5. That, in light of these determinations,[1] ASG should proceed on the assumption that Ms. Jacobsen is the duly appointed manager of SDM Holdings.  If ASG declines to act consistently with her instructions, it does so at its peril.  The potential reach of the court's contempt powers is not altogether clear in the somewhat unusual circumstances of this case, but the issue would be pursued and explored.  Further, the possibility of claims against ASG by petitioner or others exists if non-compliance with the court's orders results in injury to a third party.

---

[1] *The court's various orders reflecting these determinations are disputed and on appeal but have not been stayed by the posting of a supersedeas bond or otherwise.*

The receiver's Motion to Clarify Authority [Doc. #571] is **GRANTED**, clarifying or re-stating the court's determinations as set out above.[2]

**IT IS SO ORDERED.**

Dated this 22nd day of February, 2024.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[2] *Other motions pending include ASG's motion for interpleader, the receiver's motion for payment of fees and costs, and petitioner's motion for modification of injunction. Those motions are not at issue and will be dealt with in due course.*